UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE ZAK,
an individual,

          Plaintiff,               CIV. NO. 15-13437

        v.                     HON. TERRENCE G. BERG

FACEBOOK, INC.,
a Delaware corporation,

          Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (DKT. 19)**

      This is a patent infringement case.  Plaintiff Bruce Zak ("Plaintiff"), a computer programmer from Oakland County, Michigan alleges that Defendant Facebook, Inc. ("Defendant" or "Facebook") is infringing two of his software patents—United States Patent Nos. 8,713,134 (" the '134 patent") and 9,141,720 ("the '720 patent"). Facebook now moves for summary judgment (Dkt. 19) arguing that the subject matter of the two patents is not eligible for patent protection under Section 101 of the Patent Act.  See 35 U.S.C. § 101.    Plaintiff filed a response to Defendant's motion. (Dkt. 21), and Defendant filed a reply. (Dkt. 22).  The Court heard oral argument on Defendant's motion on June 22, 2016. (Dkt. 30).  For the reasons set forth below, Defendant's motion for summary judgment is **DENIED**.

# I. PREFACE

At the outset, the Court notes that the Plaintiff did not follow the Court's practice guidelines in filing its response to Defendant's motion for summary judgment. The Court's practice guidelines for motions for summary judgment are available on the Court's website, and provide as follows:

> A Rule 56 motion must begin with a "Statement of Material Facts." Such a Statement is to be included as the first section of the Rule 56 Motion. The Statement must consist of separately numbered paragraphs briefly describing the material facts underlying the motion, sufficient to support judgment. Proffered facts must be supported with citations to the pleadings, interrogatories, admissions, depositions, affidavits, or documentary exhibits. Citations should contain page and line references, as appropriate.... The Statement of Material Facts counts against the page limit for the brief. No separate narrative facts section shall be permitted.

> The response to a Rule 56 Motion must begin with a "Counter-statement of Material Facts" stating which facts are admitted and which are contested. The paragraph numbering must correspond to moving party's Statement of Material Facts. If any of the moving party's proffered facts are contested, the non-moving party must explain the basis for the factual disagreement, referencing and citing record evidence. Any proffered fact in the movant's Statement of Material Facts that is not specifically contested will, for the purpose of the motion, be deemed admitted. In similar form, the counter-statement may also include additional facts, disputed or undisputed, that require a denial of the motion.[1]

Plaintiff's response failed to comply with the Court's practice guidelines because it did not begin with a Counter-Statement of Material Facts indicating which facts were admitted and which were contested.

The Court nonetheless conducted a thorough review of the record and gleaned the following facts, which are viewed in a light most favorable to the non-moving party. Plaintiff is cautioned, however, to follow carefully the Court's

---

[1] Available at -- https://www.mied.uscourts.gov/index.cfm?pageFunction=chambers&judgeid=37

practice guidelines going forward.  Any future non-conforming briefs will be stricken from the docket.

## II. FACTUAL BACKGROUND

In the early 2000s, Plaintiff, a computer programmer, started a company called Everyware, Inc. (Dkt. 21, p. 10).  This company was focused primarily on a new software product called 7Ware, developed by Plaintiff with assistance from co-inventor Regina Zak. (*Id.* at 10-11).  The purpose of 7Ware was to allow users to maintain a dynamic website by giving users the ability to manage the content of a website without having to depend on a person skilled in HTML computer programming. (*Id.* at 11).  During creation of the software to enable users to post content without third party assistance, Plaintiff realized that the software would be more useful if users could control which other users could *view* content on the website and which other users could *post* content on certain web pages. (*Id.*).  In order to achieve these functions, Plaintiff developed software that "generate[d] user-configurable links based upon user-configurable business rules to control the functionality of web pages with respect to permission to view and/or post certain content." (*Id.*).

On February 13, 2003, Plaintiff filed a patent application for the invention. The United States Patent and Trademark Office issued three patents stemming from the parent patent. (Dkt. 19, p. 12).  The dispute in this case centers on patent infringement claims by Plaintiff against Defendant regarding two of the patents derived from Plaintiff's original application: the '134 patent and the '720 patent.

3

(*Id*.).  The patents teach a system that permits users to input characteristics into configurable applications generated by the computer and to act as administrators for different sets of web pages within the same website.  The claims of these patents are directed to enabling users, without third-party assistance, to post content to a website and to control which users can view the posted content. (Dkt. 21, p. 8).  In their briefs, both parties direct their analysis of patent eligibility toward claim 2 of the '720 patent. (Dkt. 22, p. 9).  The Court accepts claim 2 as a representative claim.  Claim 2 states:

> A system, including a computer and a web site, for managing content displayable on the web site to multiple users of the system who have profiles stored on the system, comprising:
>
> at least a first configurable application and a second configurable application, wherein each of the first and second configurable applications includes content that is stored on the computer and that is displayable to the users of the web site, and wherein one of the applications is a biography application that is managed by the computer and that displays biographical information that is received from and that is about one of the users of the system;
>
> wherein at least one of the configurable applications is generated by the computer at least in part based on inputs received from multiple users of the system, the inputs including at least one of text, graphics, sounds, documents, and multi-media content;
>
> an administrator portal through which users of the system are permitted to act in the role of an administrator of certain web pages, wherein a user acting in the role of an administrator may manage business rules that utilize profiles of the users of the system to control interaction of the users with the certain web pages, wherein each user of the system is permitted to act in the role of an administrator at least with respect to a subset of web pages on the web site; and
>
> at least one configurable link on the web site that points to at least one of the plurality of configurable applications,

wherein the at least one configurable link is generated by the computer based at least in part on a profile attributed to at least one user of the system and at least one rule that is configurable by a user acting in the role of an administrator and which applies user profiles to select what content stored on the computer can be viewed by which of the users of the system.

'720 patent, 22:52-23:20.

In the "Background of the Invention," the '720 patent states that large and small entities experienced difficulties keeping their websites updated with information and functionality due to the lack of available personnel with the technological skills necessary to manage and create websites. *Id.* at 1:27-63. Consequently, to avoid the potentially embarrassing problem of having an outdated website, most companies did not provide content-rich websites, which decreased the utility of those websites. *Id.* 37-40. Additionally, due to the large number of people involved in website management with existing art, there was a greater possibility both of errors resulting in content and of style inconsistences due to miscommunication. *Id.* at 1:64-2:1. Given how useful the Internet nonetheless was, small and large entities required the ability to create and configure their websites in an automated manner. *Id.* at 2: 13-15.

In response to this need, the '720 patent describes its invention as providing non-technical users control over the content of a website without the need for more technical personnel to assist and as also providing users the ability to create, modify, or delete content automatically. *Id.* at 2:25-46. The claimed invention allows users to customize not only who can view the content but also who can post content. In these systems, users have stored profiles. The profiles consist of at

least a first configurable application and a second configurable application, one of which is a biography application. *Id.* at 22:56-64.  Users, acting as administrators, manage business rules using the profiles of other users in the system to control interactions between users and web pages. *Id.* at 23:3-11.  There is at least one configurable link that directs users to configurable applications. *Id.* at 23:12-13. The configurable link generated by the computer utilizes user profiles to determine what content on the computer can be viewed by each of the other users of the system. *Id.* at 23:14-20.

To summarize, the users of the system create profiles containing biographical information.  The user can control the interaction other users have with her web page by altering business rules that utilize the biographical information from other users' profiles.  The system receives a request to view and/or post content to a website and uses the configured rule to determine whether the user can view or post content.  The '720 patent states that not only was there no existing art resolving challenges regarding customizable and automated features, but also that technology actually required an increasing amount of sophistication, making the invention an advancement in existing art. *Id.* at 2:4-14.  Defendant claims that the patents relate to "techniques for group collaboration and targeted communication." (Dkt. 19, p. 12). Defendant, therefore, asserts that the patents are not patent-eligible because the claim is directed to abstract ideas with no inventive concept. (*Id.* at 10).  Plaintiff contends, however, that the invention is patent-eligible because the claim improves the functioning of a computer. (Dkt. 25).  Plaintiff also argues that Defendant

overgeneralizes the claims, and that the representative claims are not directed to an abstract idea. (Dkt. 21, p. 24).  Plaintiff also argues in the alternative that, even if claim 2 were directed at an abstract idea, the inventions are still patent-eligible because the claim includes an inventive concept. (*Id.* at 8-9).  Additionally, Plaintiff argues that Facebook's website utilizes similar software "to enable its users to control which of the other Facebook users can view content on his or her "About" and "Timeline" applications, as well as which of the other users can post content on the first user's "Timeline." (Dkt. 22, p. 12).  Furthermore, Plaintiff states that the '720 patent is patent-eligible because it was examined, approved, and issued after the Supreme Court set out its framework for considering eligibility challenges in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) and *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S.Ct. 1289 (2012). (Dkt. 21, p. 12).  Defendant disagrees and states that there is no indication that the Patent Office actually considered whether the subject matter was patent-eligible because the issue was never raised during prosecution of the '720 patent. (Dkt. 22, p. 7).

## III. LEGAL STANDARDS

### A.  The Standard for Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).  A fact is material only if it might affect the outcome of the case under the governing law.  *See Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 249 (1986).  On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita*, 475 U.S. at 587.  The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law.  *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff").

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989).  Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact."  *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

8

**B. The <u>Mayo/Alice</u> Test for Patent Eligibility**

Determining whether the subject matter of an invention is patent-eligible

turns on the application of 35 U.S.C. § 101, which states:

> Whoever invents or discovers any new and useful process, machine,
> manufacture, or composition of matter, or any new and useful
> improvement thereof, may obtain a patent therefor, subject to the
> conditions and requirements of this title.

35 U.S.C. § 101. Consistent with the statute's requirement that patents be limited

to "new and useful" processes and machines, for over 150 years courts have

recognized three exceptions to the otherwise broad scope of patent eligibility:

subject matters not eligible for patent protection include "laws of nature, physical

phenomena, and abstract ideas." *Bilski v. Kappos*, 561 U.S. 593, 601-02 (2010).

Since "all inventions at some level embody, use, reflect, rest upon, or apply laws of

nature, natural phenomena, or abstract ideas[,]" it is not enough to ask whether the

claims merely *involve* a subject matter that is excepted from patent eligibility. *Mayo*

*Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012).

Instead, it is necessary to examine the entire character of a patent to determine

whether it is "*directed* to excluded subject matter," *Internet Patents Corp. v. Active*

*Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015) (emphasis added), which would

make it ineligible, or whether it is applying an abstract idea to a new and useful

end, *Gottschalk v. Benson*, 93 S. Ct. 253 (1972), which would render it eligible.

Courts evaluate patent eligibility questions using the two-step analytical

framework developed by the Supreme Court in *Mayo Collaborative Services v.*

9

*Prometheus Laboratories, Inc.* 132 S. Ct. 1289, 1296-97 (2012) and *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Step one of the *Mayo/Alice* test "determin[es] whether the computer-implemented claims at issue here are 'directed to' a patent-ineligible abstract idea." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257-58 (Fed. Cir. 2014) (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014)). If the court concludes at step one that the claims are directed to an abstract idea, the court must then ask at step two whether the elements of each claim, both individually and "as an ordered combination," include an inventive concept such that it transforms the nature of the claim into a patent-eligible application. *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S.Ct. at 1298, 1297).

### 1. *Evaluating Claims Under Step One*

Determining whether a patent's claims are "directed" to an abstract idea can be difficult because the Supreme Court and the Federal Circuit have not defined precisely what an abstract idea entails. Consequently, district courts look to previous decisions to help define the type of claims that would qualify as directed toward an abstract idea. The following categories have been recognized by either the Supreme Court or the Federal Circuit as abstract ideas: (1) something that could "be performed in the human mind, or by a human using a pen and paper," (2) "fundamental economic practices long prevalent," (3) methods of organizing human activity, or (4) mathematical formulas. See *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011); *In re Bilski*, 545 F.3d 943, 1013 (Fed. Cir.

2008); *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, No. 2015-1763, 2016 WL 3514158 (Fed. Cir. June 27, 2016); *Parker v. Flook*, 437 U.S. 584, 594-95 (1978).

In addition to considering whether a patent is directed to any of the subject matters that other courts have found to be abstract ideas, in applying step one of the *Alice/Mayo* test, courts also look to whether the representative claim is directed to the improvement of the functioning of the computer itself. *Enfish, LLC v. Microsoft Corp.*, No. 2015-1244, 2016 WL 2756255, at *4-*5 (Fed. Cir. May 12, 2016). If the claims are directed to the improvement of the functioning of the computer itself, rather than to an abstract idea, they may be found eligible for patent protection at step one. *Enfish*, 2016 WL 2756255, at *5.   Improvements to computer technology are not limited to hardware; software can also improve computer technology by non-abstract means. *Id.* at *4.  Hardware and software technology can create improvements in speed, storage, and flexibility. *Id.* at *3.  If the claims do not result in an improvement, the Court assesses whether the claims are directed to an abstract idea. *Id.* at *4.

### 2.  *Evaluating Claims Under Step Two*

If the claims at issue do not improve the function of a computer itself but instead are directed to a patent-ineligible abstract idea, courts look to step two of the *Mayo/Alice* test.  Step two of the *Mayo/Alice* test searches for an "inventive concept," which is "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon

the [ineligible concept] itself.'" *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1294).  Although, patents that claim an abstract idea are not patent-eligible, *Mayo*, 132 S. Ct. at 1297, if the claims include an inventive concept, the ineligible abstract idea transforms to a patent-eligible application. *Alice*, 134 S. Ct. at 2355.

Courts look for an inventive concept in order to "provide practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself." *Mayo*, 132 S. Ct. at 1292.  It is not enough to state an abstract idea and try to make it patentable by adding the words "apply it with a computer" or by limiting its use to a "particular technological environment." *Alice*, 134 S. Ct. at 2350; *Diamond v. Diehr*, 450 U.S. 175, 191 (1981).  Furthermore, courts look for more than "routine activity" to transform an abstract idea to a patent-eligible application. *Ultramercial, Inc. v. Hulu LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). "The notion that post-solution activity, no matter how conventional or obvious in itself, can transform an unpatentable principle into a patentable process exalts form over substance." *Parker*, 437 U.S. at 590.

Where a patent arguably directed toward an abstract idea nevertheless addresses a technological problem and offers a new solution for that problem, it may be recognized as including an inventive concept which will make it eligible for patent protection.  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014); *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, No. 2015-1763, 2016 WL 3514158 (Fed. Cir. June 27, 2016).

# IV. ANALYSIS

## A.  *Arguments of the Parties*

Defendant contends that the '134 and '720 Patents are ineligible under the *Mayo/Alice* framework. (Dkt. 19) because they are directed to an abstract idea. (*Id.* at 10).  Defendant further argues that the patents do not improve the functioning of the computer itself. (Dkt. 26).  Finally, Defendant argues that the patents do not include an inventive concept because the claim merely recites generic computer functions that are routine and conventional. (Dkt. 19, p. 10).  During oral arguments, Defendant emphasized that Plaintiff never specified precisely how the system functions, which could have added the inventive concept needed to take the patent out of the realm of a patent-ineligible abstract idea. (Dkt. 30, p. 15).

In response, Plaintiff asserts that the patents are patent-eligible under 35 U.S.C. § 101 and that Defendant impermissibly over-generalizes and integrates the claims of the patents. (Dkt. 21, p. 24).  Using the *Mayo/Alice* test, Plaintiff first asserts that the claim improves the functioning of a computer and is not directed to an abstract idea. (*Id.* at 27).  To explain how the claim improves the functioning of the computer, Plaintiff says the software is more efficient and usable for non-technical people. (Dkt. 30, p. 29).  Second, Plaintiff claims that although the patents do not constitute an abstract idea, if they did, the patents nonetheless include an inventive concept because "[c]ontrolling a computer to generate a link based on business rules that are configurable or modifiable by users to control which other users can view and/or post content on the website is . . . a technical solution that is

13

'rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.'" (Dkt. 21, p. 10-11) (quoting *DDR Holdings*, 773 F.3d at 1257 (Fed. Cir. 2014)).  Plaintiff emphasized that the claim does not merely recite generic steps but rather describes *how* the idea is executed. (Dkt. 30, p. 24).

### B. Applying Step One of the <u>Mayo/Alice</u> Test

Claim 2 is directed to allowing non-technical individuals to control who is able to (1) post content and (2) view content on a number of websites.  In applying step one of the *Mayo/Alice* test, the Court will first look to whether claim 2 is directed to the improvement of the functioning of the computer itself rather than to an abstract idea.  In *Enfish*, the patents at issue were for a logical model for a computer database described by the patents as a "self-referential model." *Enfish*, 2016 WL 2756255, at *1.  The self-referential model was an improvement on the prior relational model because it could "store all entity types in a single table and . . . define the table's columns by rows in that same table." *Id.* at *2.  The Federal Circuit held that the claims were patent-eligible because they improved the functioning of the computer by permitting "faster searching of data", "more effective storage of data," and "more flexibility in configuring the database." *Id.* Furthermore, the Federal Circuit determined that "the claims [were] directed to a specific implementation of a solution to a problem in the software arts." *Id.* at 8. Because the claims were not directed to an abstract idea, the Federal Circuit did not proceed to step two of the *Mayo/Alice* test. *Id.*

14

Unlike the claims in *Enfish*, the claim in the present case, in consideration of its limitations, does not unambiguously purport to increase speed, improve storage, or improve functionality of the computer itself. Plaintiff argues that the claim improves the functioning of the computer due to "the user-configured business rules and configurable/application links." (Dkt. 25, p. 3). However, the claim language of the patent does not clearly state *how* these features improve the functioning of the computer itself. The claims describe a method to manage and control posting content and viewing content; they do not suggest that a computer's functioning would be improved, but rather that a user's ability to harness that functionality would be improved. Since the claim language is less than completely clear, the Court cannot conclude with any certainty that the claim and its limitations improve the functioning of the computer itself.

If the claims cannot be said to improve computer functionality, are they directed to an abstract idea? The patent eligibility issues raised in the recent case of *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, No. 2015-1763, 2016 WL 3514158 (Fed. Cir. June 27, 2016) closely parallel those of the patents in this case. *Id.* at *1. In *BASCOM*, the Federal Circuit determined that the purpose of the patent was to filter content on the Internet. *Id.* at *3. The Federal Circuit held that "filtering content is an abstract idea because it is a long-standing, well-known method of organizing human behavior . . . ." *Id.* at *5. Indeed, filtering "is a method of organizing human activity, not a 'truth' about the natural world 'that has always existed.'" *Alice*, 134 S. Ct. at 2356 (quoting *Flook*, 437 U.S. at 593, n. 15).

15

In this case, the purpose of 7Ware was to provide users the opportunity to maintain a dynamic website by being able to manage who posts and views content of their website without the need for specialized assistance.  The claim states that the system "manag[es] content displayable on the web site to multiple users of the system who have profiles stored on the system . . . ." '720 patent, 22:53-54.  The claim further states "wherein a user acting in the role of an administrator may manage business rules that utilize profiles of the users of the system to control interaction of the users with the certain web pages . . . ." *Id.* at 23:5-8.  Plaintiff's patents are directed to group collaboration with targeted communication and restricting public access, which—like filtering data—are arguably methods of organizing human behavior. Consequently, the Court concludes that the representative claim of the '134 and '720 patents is directed to the abstract idea of organizing human behavior and does not clearly improve the functioning of a computer.

### C.  Applying Step Two of the *Mayo/Alice* Test

Because the Court has found that the representative claim of the patents at issue is directed to an abstract idea, the *Mayo/Alice* test requires the Court to consider whether the representative claim, taken as a whole, nonetheless has an inventive concept.  Merely applying an abstract idea to the field of computers is not sufficient to transform the patent-ineligible abstract idea to a patent-eligible innovative or inventive application. *Alice*, 134 S. Ct. at 2350.

16

A few cases illustrate what it means for a claim to include an inventive concept.   In *Ultramercial, Inc. v. Hulu LLC*, the abstract idea was receiving copyrighted material in exchange for watching an advertisement. 772 F.3d at 715. The additional steps included "updating an activity log, requiring a request from the consumer to view the ad, restrictions on public access, and use of the Internet . . . ." *Id.* at 716.  The Federal Circuit determined in that case that the claim did not include an inventive concept because the steps "both individually and 'as an ordered combination'" did not amount to anything significantly more to transform the abstract idea to a patent-eligible subject matter. *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1298).  In other words, the additional steps simply consisted of routine and conventional activity. *Ultramercial*, 772 F.3d at 715.

By contrast, in *DDR Holdings*, although it was difficult for the Federal Circuit to determine the precise nature of the abstract idea, it determined that the patents nonetheless contained an inventive concept. *DDR Holdings*, 773 F.3d at 1257.  The representative claim 19 of the '399 patent stated that the invention created a system that would use existing computer technology to create a hybrid web page between the host web page and the commerce web page. *Id.* at 1249.  The claim began by describing how a computer will contain data for a plurality of first web pages with at least one active link to a selected merchant's website. *Id.*  When the link is clicked, the computer server at the outsource provider will receive a signal indicating that the link has been activated. *Id.* Once activated, a second web

17

page will be generated with information from the merchant's web page and elements visually corresponding to the source page. *Id.* at 1250.

Regardless of whether the underlying abstract idea was "making two web pages look the same" or "syndicated commerce on the computer using the Internet," the claims were patent-eligible because they contained an inventive concept to resolve the Internet-centric problem of retaining website visitors. *Id.* at 1257. The claims at issue "d[id] not broadly and generically claim 'use of the Internet' to perform an abstract business practice (with insignificant added activity). . . . [T]he claims at issue here specif[ied] how interactions with the Internet are manipulated to yield a desired result . . . ." *Id.* at 1258. Rather than the routine, conventional activities that would occur when a hyperlink for an advertisement is clicked (namely being transported away from a host website to the advertisement), the claim stated that the user was transported to a hybrid web page of the host website and the third-party website. *Id.* at 1257. As a result, the claim did not preempt an abstract idea because the steps went beyond routine and convention to obtain the desired result to the business challenge of retaining website visitors. *Id.* at 1259.

Furthermore, in *BASCOM*, the Federal Circuit determined that although the claims of a patent might argue improvements in computer technology, in cases where there was a close call in determining what the claims were directed to, asserting that a patent improves computer technology was not sufficient to deem a patent non-abstract under step one. *BASCOM*, 2016 WL 3514158, at *5. The claims of the '606 patent in *BASCOM* were directed to filtering content on the Internet. *Id.*

18

The Federal Circuit determined that, unlike the patent in *Enfish*, which was held not to be directed to an abstract idea because the claim and its limitations led to an improvement in the functioning of the computer itself, it was difficult to determine in *BASCOM* whether the claims were directed to an improvement in computer capabilities. *Id.* As a result, the *BASCOM* court could not conclude under step one that the claims were directed to a non-abstract idea and deferred its determination to its analysis in step two. *Id.*

In order to determine whether the subject matter was nonetheless patent-eligible, the Federal Circuit in *BASCOM* moved to step two to analyze whether the claim limitations included an inventive concept. *Id.* The Federal Circuit explained that "some inventions' basic thrust might more easily be understood as directed to an abstract idea, but under step two of the *Alice* analysis, it might become clear that the specific improvements in the recited computer technology go beyond 'well-understood, routine, conventional activit[ies]' and render the invention patent-eligible." *Id.* (quoting *Mayo*, 132 S. Ct. at 1294). The Federal Circuit stated that although the individual limitations may recite generic computer and Internet components that are not inventive alone, the ordered combination of limitations extend beyond routine and convention. *Id.* at *6. Since the filtering system is "more dynamic and efficient" given the claim limitations, the software improves the computer itself. *Id.* at *7. The Federal Circuit held that the claims are patent eligible because they do not preempt all methods of filtering content on the Internet but rather "recite a specific, discrete implementation of the abstract idea." *Id.*

19

Unlike the claims in *Ultramercial*, which contain the routine and conventional step of restricting public access and use of the Internet, claim 2 in this case specifies how the websites may be manipulated to achieve a desired result. Representative claim 2 states that the system stores profiles from multiple users. '720 patent, 22:53-54. The users input text, graphics, sounds, and more to create at least one configurable application that displays biographical information about the users. *Id.* at 22:56-23:2. Each user can act as an administrator to manage business rules that permit the user to control the interaction of other users with his or her web page(s), creating a configurable link. *Id.* 23:3-18. The link will utilize user profiles to determine what content can be viewed by which users. *Id.* 23:18-20.

The representative claim at issue in this case is similar in specificity to claim 19 in *DDR Holdings*, which was held to include an inventive concept. In *DDR Holdings*, the claim did not "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *DDR Holdings*, 773 F.3d at 1257. Instead, the claim offered a solution to the business challenge of retaining website visitors, which was a problem "arising in the realm of computer networks." *Id.* Likewise, in the present case, the claim does not merely permit a known business practice to be performed on the Internet. Instead, the claim here specifies how a solution will be implemented that addresses a business challenge particular to the Internet, namely allowing ordinary users to maintain dynamic websites by managing the content of websites and controlling users' interactions with web pages.

Additionally, similar to the claims in *BASCOM*, although the limitations to the claim in this case are not inventive alone, the ordered combination of these limitations is inventive because, taken together, the limitations are not routine and conventional.  The claim does not simply dictate that communication must be targeted and access restricted.  Instead, the claim states that users themselves will be able to control interactions on their web pages by managing business rules that will utilize profiles of other users to generate configurable links to determine how other users may interact with his or her web page. '720 patent, 22:52-23:20.  The claim and its limitations "recite a specific, discrete implementation of the abstract idea." *BASCOM*, 2016 WL 3514158, at *7.  This is a sufficiently inventive concept to allow the conclusion that the patent is not directed to an ineligible subject matter under the *Mayo/Alice* test.

Although, as Defendant asserts, the claim could be compared to applying the concept of a bulletin board to a computer, it is more accurate to say, as the Federal Circuit did in *BASCOM*, that the claim and its limitations offer "a technical way to satisfy an existing problem for website hosts and viewers."  *BASCOM*, 2016 WL 3514158, at *7.  Just as in *BASCOM*, where the court found that the patent was directed to more than simply filtering data, here the patent is directed to more than merely targeting and restricting communications on a computer.  As in BASCOM, here it could be said that the patent is instead claiming:  "a technology-based solution (not an abstract-idea-based solution implemented with generic technical components in a conventional way) . . . that overcomes existing problems . . ." *Id.*

21

Regardless of whether the subject matter of the patent is characterized as group collaboration with targeted communication or as restrictions on public access, the claim contains enough inventive elements to be aimed at more than a patent on the abstract idea itself. *Mayo*, 132 S. Ct. at 1294.

Consequently, Defendant's challenge to the eligibility of the patent under § 101 of the Patent Act must be rejected.

## V.   CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment (Dkt. 19) is **DENIED**.

**SO ORDERED.**

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  September 12, 2016

## Certificate of Service

I hereby certify that this Order was electronically submitted on September 12, 2016, using the CM/ECF system, which will send notification to each party.

s/A. Chubb
Case Manager

22