UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVSION

| | |
|---|---|
| **BRUCE ZAK**, <br><br> Plaintiff, <br><br> v. <br><br> **FACEBOOK, INC.**, <br><br> Defendant. | 4:15-cv-13437 <br><br> HON. TERRENCE G. BERG <br><br> **ORDER CONSTRUING DISPUTED CLAIM LIMITATIONS** |

This is a patent-infringement case. Plaintiff Bruce Zak alleges that Defendant Facebook, Inc. ("Facebook") has infringed U.S. Patent No. 9,141,720, named "System and Method for Managing Content on a Network Interface" (the "'720 Patent"). In accordance with this Court's standard procedures, the parties identified those claim limitations within the '720 Patent they believe are material to the infringement and validity issues, and which the Court should therefore construe. After working with the Court's technical advisor, the parties reached agreement on the construction of some of the claim limitations that were previously disputed, and they have filed a corresponding stipulation. ECF No. 70. There are four claim limitations in the '720 Patent that remain in dispute and that the Court will need to construe consistent with *Markman v. Westview Instruments*, 517 U.S. 370 (1996).

## PROCEDURAL HISTORY

Zak filed this case in 2015 alleging that Facebook infringed two patents he holds: (1) U.S. Patent No. 8,713,134; and (2) U.S. Patent No. 9,141,720 (the "'720 Patent"). ECF No. 1. On August 16, 2018, Zak agreed to dismiss his claim regarding the first patent, No. 8,713,134, with prejudice. ECF No. 31. His second claim alleging infringement of the '720 Patent remains pending. *Id*.

In 2016, after the parties filed opening briefs on claim construction, Facebook filed four separate Petitions for Inter Partes Review ("IPR") of the '720 Patent with the United States Patent and Trademark Office ("USPTO") challenging the validity of the '720 Patent. *See* 35 U.S.C. § 311 (outlining IPR procedure). The parties then filed a joint motion to stay this case pending the outcome of the IPRs, which this Court granted on November 9, 2016. ECF Nos. 42, 43. The United States Patent Trial and Appeal Board ("PTAB") issued decisions denying institution of all four of Facebook's IPRs on April 4, 2017. ECF No. 46. In response, Facebook filed requests for rehearing of the PTAB's decisions, which the PTAB denied on October 31, 2017 (IPRs 2017-00002 and 2017-00003) and March 28, 2018 (IPRs 2017-00004 and IPR 2017-00005). *Id*. The Court then lifted the stay upon a joint motion by the parties and permitted supplemental briefing outlining additional arguments on claim construction. ECF Nos. 47, 49, 53.

After discussion between the parties facilitated by the Court's Technical Advisor, Christopher G. Darrow, the parties reached a consensus on some of the disputed claim limitations. That consensus is reflected in their joint stipulation of October 12, 2018. ECF No. 70. Four claim limitations now remain for this Court to construe. The Court has considered the parties' oral arguments on the disputed claim limitations, as well as supplemental briefing on a modified construction raised by Facebook during the October 17, 2018 hearing. *See* ECF Nos. 71, 72. Though the parties attended a full-day facilitation on April 12, 2019 and have engaged in subsequent settlement discussions, those efforts have not yet borne fruit.

## BACKGROUND

The '720 Patent is directed to a computer system for managing web site content. More specifically, the '720 Patent is directed to a system for enabling users, without third-party assistance, to post content to a web site and to control which other users can view the posted content. The system includes at least two "configurable applications," which are comprised of one or more units of content, such as text, graphics, sounds, documents, and multi-media content, that are displayable to users of the web site. One of the configurable applications is a "biography application," which displays biographical information about a "user" of the web site. The system enables users of the web site to manage "business rules" that control the interaction of other users with certain

web pages of the web site. In some embodiments, this is done through an "administrative portal."

The system further includes generating at least one "configurable link" or "application link" that points to a configurable application. The "configurable link" is configurable by a user of the web site. The user configures a business rule that applies profiles of other users to select which content stored on the computer can be viewed by the other users of the web site. The computer then generates the configurable link based on this user-configured business rule. In this way, the system provides a way to implement privacy-related business rules in a web site environment.

The parties agree that Claim 2 of the '720 Patent is representative of the claims asserted in this case. Claim 2 states:

> 2. A system, including a computer and a web site, for managing content displayable on the web site to multiple users of the system who have profiles stored on the system, comprising:
>
> at least a first configurable application and a second configurable application, wherein each of the first and second configurable applications includes content that is stored on the computer and that is displayable to the users of the web site, and wherein one of the applications is a biography application that is managed by the computer and that displays biographical information that is received from and that is about one of the users of the system;

wherein at least one of the configurable applications is generated by the computer at least in part based on inputs received from multiple users of the system, the inputs including at least one of text, graphics, sounds, documents, and multi-media content;

an administrator portal through which users of the system are permitted to act in the role of an administrator of certain web pages, wherein a user acting in the role of an administrator may manage business rules that utilize profiles of the users of the system to control interaction of the users with the certain web pages, wherein each user of the system is permitted to act in the role of an administrator at least with respect to a subset of web pages on the web site; and

at least one configurable link on the web site that points to at least one of the plurality of configurable applications,

wherein the at least one configurable link is generated by the computer based at least in part on a profile attributed to at least one user of the system and at least one rule that is configurable by a user acting in the role of an administrator and which applies user profiles to select what content stored on the computer can be viewed by which of the users of the system.

## DISCUSSION

Determining if there is an infringement of a patent is a two-step inquiry. "[A] court must first construe disputed claim terms, and then compare the properly construed claims to the accused device." *Nazomi*

*Comm., Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1367–68 (Fed. Cir. 2005) (citation omitted). *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc). Because claim construction will in turn inform the factfinder's assessment of the patent's validity, and whether the patent has been infringed, construction of key claim terms is critical. The judge, not the jury, is responsible for determining the meaning of the disputed claim limitations. *See Markman*, 517 U.S. at 372, 391; *Info-Hold, Inc. v. Applied Media Techs. Corp.*, 783 F.3d 1262, 1265 (Fed. Cir. 2015) (Such "[s]ubsidiary factual determinations based on extrinsic evidence are reviewed for clear error.") (citing *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015)). The Court's claim construction ruling will later form the basis for jury instructions.

As explained by the Federal Circuit, "[t]he construction of claims is simply a way of elaborating the normally terse claim language[ ] in order to understand and explain, but not to change, the scope of the claims." *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) (quoting *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991)). Claim construction involves determining "how a person of ordinary skill in the art would understand a claim term 'in the context of the entire patent, including the specification.'" *Tr.'s of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1362 (Fed. Cir. 2016) (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)).

The Court may utilize numerous sources for guidance in determining the proper construction of a claim. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). It is well-settled that courts should begin the claim-construction analysis by examining the patent itself, including the language of the claims, the specification, and, if relevant, the prosecution history. *Id.* at 1582; *Tr.'s of Columbia Univ.*, 811 F.3d at 1362–63. The specification is "the single best guide to the meaning of a disputed term" and therefore "the primary basis for construing the claims." *Tr.'s of Columbia Univ.*, 811 F.3d at 1362 (internal quotations omitted) (quoting *Vitronics Corp.*, 90 F.3d at 1582 and *Phillips*, 415 F.3d at 1315). Courts may also examine extrinsic evidence to construct claims limitations, including relevant dictionary definitions, "so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Phillips*, 415 F.3d at 1322–23 (quoting *Vitronics Corp.*, 90 F.3d at 1584 n.6). Extrinsic evidence in the form of expert testimony may likewise prove helpful to ensure that the court's construction of technical aspects of the patent is "consistent with that of a person of skill in the art, or to establish that a particular term in a patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318 (citing *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308–09 (Fed. Cir. 1999); *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998)). But courts should discount expert testimony that is

conclusory or unsupported, or that is "clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent." *Phillips*, 415 F.3d at 1318 (quoting *Key Pharms.*, 161 F.3d at 716).

Courts may not use the accused product or device as a form of extrinsic evidence to supply limitations for the patent claim. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326–1327 (Fed. Cir. 2006). Such a practice would permit a court to tailor claim construction to fit the dimensions of the accused product or process, and thereby "to reach a preconceived judgment of infringement or noninfringement." *Id.* at 1331. Courts may, however, look to the accused product or process as context to inform the parameters and scope of the infringement analysis, including claim construction. *Id.* For example, in *Wilson Sporting Goods Company. v. Hillerich & Bradsby Company*, the Federal Circuit struggled to understand how the term "rigid" fit into the claim construction at issue and found it appropriate to examine "the full infringement context, including some record evidence about the accused devices," to inform claim construction. 442 F.3d at 1331. "While a trial court should certainly not prejudge the ultimate infringement analysis by construing claims with an aim to include or exclude an accused product or process, knowledge of that product or process provides meaningful context for the first step of the infringement analysis, claim

construction." *Id.* at 1326–1327. The Federal Circuit has held that without "the vital contextual knowledge of the accused products," a court's claim construction decision "takes on the attributes of something akin to an advisory opinion." *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445 F.3d 1348, 1350 (Fed. Cir. 2006).

The "prosecution history" of a patent is the complete public record of USPTO proceedings concerning it. *Phillips*, 415 F.3d at 1317. Like the specification, a patent's prosecution history is evidence of how the USPTO and the inventor understood the patent at issue. *Id.* Because the prosecution history "represents an ongoing negotiation" between the USPTO and the applicant "rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* (citing *Inverness Med. Switz. GmbH v. Warner Lambert Co.*, 309 F.3d 1373, 1380–82 (Fed. Cir. 2002)). Prosecution history may nonetheless offer insight into the meaning of claim language by illustrating how the inventor understood the nature of the invention and whether the inventor narrowed the scope of the invention in the course of prosecution. *Id.* In practice, the prosecution history of a patent frequently becomes relevant where, during prosecution, the inventor, in response to an official rejection by the USPTO, sets forth a definition or explanation regarding what the claim is intended to cover. *Id.* Such a definition or explanation may or may not be accompanied by a narrowing amendment to the claims. Where the

patentee gives such a definition or explanation, the definition or explanation limits the scope of the claim, preventing the patentee from later recapturing what was previously surrendered. *See Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'") (quoting *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed. Cir. 1988)).

The Federal Circuit, in *Omega Engineering, Inc. v. Raytek Corporation*, 334 F.3d 1314, 1323 (Fed. Cir. 2003), explained that it would refer to narrowing amendments in a patent's prosecution history as the "doctrine of prosecution disclaimer." Under this doctrine, if an inventor unequivocally disavows a broader plain and ordinary meaning of claim language during prosecution in favor of a narrower meaning to obtain or confirm a patent, courts should construe the claim language to have the narrower meaning. *Id.* at 1325. Statements made by a patent owner during an IPR proceeding may also fit within the doctrine of prosecution disclaimer. In a recent case, *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017), the Federal Circuit held that such statements made during the IPR process, "whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer." *See also Signal IP, Inc. v. Fiat U.S.A., Inc.*, No. 14-cv-13864, 2016 WL 5027595,

at *16 (E.D. Mich. 2016) (finding that statements made during IPR proceedings disavowed the plain and ordinary meaning of the word "switch" to mean "magnetic switch."). Critically, prosecution statements that are vague or ambiguous do not qualify as a disavowal of claim scope. *Omega Engineering Inc.*, 334 F.3d at 1324. Such disavowing statements must be both clear and deliberate. *Id.*

Consistent with the foregoing, the parties have requested that the Court construe four claim limitations or terms in the '720 patent. The Court will address each disputed claim limitation below.

### A. "Configurable Link" and "Application Link"

| Claim Term | Facebook's Proposed Constructions | Zak's Proposed Constructions | Court's Constructions |
|---|---|---|---|
| "configurable link" / "application link" | "A mechanism by which a user of a web site activates an application, where the mechanism can be modified or configured by the user as permitted by any relevant business rules, by acting on the mechanism itself and not an icon, shortcut or other visual representation | "A mechanism by which a user of a web site activates an application, where the mechanism can be modified or configured by the user as permitted by any relevant business rules." | A mechanism by which a user of a web site activates an application, where the mechanism can be modified or configured by the user as permitted by any relevant business rules. |

| | associated with it." | | |
|---|---|---|---|

The parties first request that the Court construe the claim limitations "configurable link" and "application link." They agree that the Court's construction of both limitations should contain the following language: a "mechanism by which a user of a web site activates an application, where the mechanism can be modified or configured by the user as permitted by any relevant business rule." ECF No. 71, PageID.1841 n.1 (Zak's Suppl. Br.); ECF No. 49, PageID.1147 (Facebook's Suppl. Br.). Facebook originally sought to add the following two sentences to the end of the agreed-upon language: "Additionally, to activate the application, the user must act directly on the actual mechanism and not on a visual representation associated with the mechanism, such as an icon or shortcut. The mechanism itself must be configurable (as opposed to the application to which the mechanism refers)." ECF No. 49, PageID.1147. But at oral argument Facebook proposed a slightly modified alternative construction:

> A mechanism by which a user of a web site activates an application, where the mechanism can be modified or configured by the user as permitted by any relevant business rules, <u>by acting on the mechanism itself and not an icon, shortcut or other visual representation associated with it</u>.

The parties have stipulated to the first (non-underlined) portion of Facebook's construction, which comes directly from the '720 Patent

specification. '720 Pat. col. 5 ll. 53-64. Facebook, however, urges that the additional underlined phrase is required under the doctrine of prosecution disclaimer.

According to Facebook, Zak represented in IPR proceedings that a "configurable link" can only be activated by a user clicking on the alphanumeric link itself, and not on an icon, shortcut or other visual representation that covers the link for aesthetic purposes. Though Zak denies making any such representation, Facebook says Zak's statements necessarily limited the scope of these disputed claims because he acknowledged "it is not enough for a user to act indirectly on a link by using an associated visual representation." ECF No. 49, PageID.1149. In support of its proposed claim construction, Facebook cited the following statements made by Zak during IPR proceedings:

- "Facebook's argument that Boyce discloses or teaches a 'configurable link'/'application link' hinges on a false premise that a graphical icon or shortcut is a 'link.' It is not . . . . Rather an icon or shortcut is simply a graphical object that may be associated with a link."

- "[Boyce's] clickable icons or shortcuts are associated with – but separate and distinct from – underlying links to the various applications . . . ."

- ". . . graphical icons or shortcuts are not 'links' at all . . . ."

- "The Clickable Icons or Shortcuts in Boyce Are Not 'Links'"

- "A PHOSITA understands that graphical icons or shortcuts are simply not mechanisms that 'point to' and 'activate' configurable applications. Rather, they are merely images that are associated

with – but separate and distinct from – the underlying links that actually point to and are used to active the applications."

ECF No. 72, PageID.1849 (Facebook's Resp. to Zak's Suppl. Cl. Constr. Br. 1) (citing ECF No. 49-1, PageID.1167, 1172–73 (Zak's Prelim. IPR Resp.)). Under the doctrine of prosecution disclaimer, Facebook averred, these statements by Zak necessarily narrowed the scope of his invention. ECF No. 72, PageID.1849.

In its IPR petitions, Facebook in contrast urged that the claims of the '720 Patent are invalid because Zak's invention was "obvious" by a combination of prior art documents, specifically: (1) a publication or manual for Microsoft Outlook version 2002 authored by Jim Boyce; and (2) U.S. Patent No. 5,729,734, issued to inventor Parker. *See, e.g.,* ECF No. 49-1, PageID.1167 (Zak's Prelim. IPR Resp.). The prior art generally disclosed clickable graphical icons or shortcuts with underlying links or addresses to various applications, i.e., the Boyce manual. *Id.* at PageID.1172–73. But Facebook asserted that the Boyce manual also disclosed "configurable links" because the graphical icons or shortcuts were selectively displayed to users depending upon the particular user's status as a "delegate" and the specific rights given to the "delegate." *Id.*

Zak, in turn, disagreed with Facebook's contention that the prior art disclosed "configurable links" and claims that Facebook misconstrued statements he made in opposing the IPRs. *Id.* He drew contrast between graphical icons, on one hand, and links, on the other, to argue the prior

art did not disclose a link that was configurable. *See id.* at PageID.1167–68, 1172–74, 1178–79, 1183–84. More specifically, Zak highlighted the difference between graphical icons overlaying a link, and a link itself, which he averred contains the address or location of the application. *Id.* Essentially, Zak's position was that graphical icons overlaying a link are not links because the graphical icons are not the "mechanisms" that "point to" and "activate" applications. *Id.* A link instead contains the actual address or location for the application. *Id.* For example, the '720 Patent states that links can contain "an URL (uniform resource locator), a TCP/IP address, or other form of identifying location of applications 30 on the network site 34." '720 Pat. col. 5 ll. 54–57. According to Zak, graphical icons typically seen by and clicked on by a user were not links but rather graphical objects "associated with" a link. ECF No. 49-1, PageID.1173–74 (Zak's Prelim. IPR Resp.).

The Court agrees with Zak, finding that proper construction of these claim limitations should not contain the additional sentence or alternative phrase proposed by Facebook, specifically that "[t]o activate the application, the user must act directly on the actual mechanism and not on a visual representation associated with the mechanism, such as an icon or shortcut." None of the statements cited by Facebook include a clear and unambiguous statement that "[t]o activate the application, the user must act directly on the actual mechanism and not on a visual representation associated with the mechanism, such as an icon or

shortcut" or the alternative phrasing that a "configurable link" can only be activated by a user clicking on the alphanumeric link itself, and "not on an icon, shortcut or other visual representation" that covers the link for aesthetic purposes. Accordingly, the Court agrees with Zak that his statements in the IPRs did not specify whether a user clicks indirectly on the graphical icon or directly on the hyperlink. Accordingly, the doctrine of prosecution disclaimer does not apply.

### B. "Computer"

| Claim Term | Facebook's Proposed Constructions | Zak's Proposed Constructions | Court's Constructions |
|---|---|---|---|
| "computer" | Invokes 35 U.S.C. § 112(f), should be interpreted as a means-plus-function claim element, indefinite for lack of specification support | 35 U.S.C. §112(f) does not apply, not a means-plus-function claim element; to the extent that §112 applies, the term is not indefinite because it is supported by specification | The disputed claim limitations containing the term "computer" are not means-plus-function claim limitations. |

The parties next ask the Court to determine whether the disputed claim limitations containing the term "computer" are means-plus-function claim limitations within the meaning of 35 U.S.C. § 112(f). Facebook urges that these limitations are indeed means-plus-function claim limitations while Zak contends they are not.

A means-plus-function claim is one drafted in a manner that invokes 35 U.S.C. § 112(f), which provides that an element in a claim "may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015). By enacting this provision, Congress balanced the interest in allowing inventors to express a claim limitation by reciting a function to be performed (rather than a structure for performing that function) while also constraining the manner in which such a limitation would be construed, "namely, by restricting the scope of coverage to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Id.* (citing *Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1346, 1350 (Fed. Cir. 2003)). Put another way, a means-plus-function claim limitation is a type of claim that allows an inventor to set forth a function to be performed without setting forth the specific structure to accomplish the function. The flexibility built into this type of claim comes at a price for the inventor as means-plus-function claims are construed to cover only "the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Williamson*, 792 F.3d at 1347–48.

To determine whether § 112(f) applies, the Federal Circuit emphasizes the importance of "the presence or absence of the word 'means.'" *Id.* at 1348. Inclusion of the word "means" in a claim element produces a "rebuttable presumption" that § 112(f) applies. *Id.* (citing *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 703–04 (Fed. Cir. 1998) (collecting cases)). Absence of the word "means" likewise creates a rebuttable presumption that § 112(f) does not apply. *Id.* But it is not only the presence or absence of "means" that informs the means-plus-function inquiry. The Federal Circuit has also emphasized the importance of "whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996). Where the word "means" is included, courts should look to "the meaning of the language of the limitation in assessing whether the presumption is overcome." *Williamson*, 792 F.3d at 1348. And where "means" does not appear in a claim, the presumption against application of § 112(f) can be overcome "if the challenger demonstrates that the claim term fails to 'recite[ ] sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)). A claim limitation may fail to recite sufficiently definite structure when it uses a generic placeholder or "nonce" word, similar to "means," such as mechanism, element, device, or module.

18

*Mass. Inst. of Tech. & Elecs. For Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006). A word is a nonce word if it fails to recite sufficiently definite structure to a person of ordinary skill in the art. *Id.* at 1349. Nonce words reflect nothing more than verbal constructs that may be used as a substitute for the word "means" because they "'typically do not connote sufficiently definite structure.'" *Williamson*, 792 F.3d at 1350 (quoting *Mass. Inst. of Tech. & Elecs. For Imaging, Inc.*, 462 F.3d at 1354).

If these claim limitations are construed as means-plus-function claim limitations, Facebook argues the asserted claims will necessarily be rendered invalid for being "indefinite" within the meaning of 35 U.S.C. § 112(b), which requires that a specification "shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." Essentially, Facebook asserts that the specification at issue fails to disclose a specific algorithm for the functions to be performed by the computer.

The relevant portion of Claim 2 of the '720 Patent, representative of the asserted claims, is reproduced below with the disputed claim limitations underlined:

> 2. A system, including a computer and a web site, for managing content displayable on the web site to multiple users of the system who have profiles stored on the system, comprising:

at least a first configurable application and a second configurable application, wherein each of the first and second configurable applications includes content that is stored on the computer and that is displayable to the users of the web site, and wherein one of the applications is a biography application that is managed by the computer and that displays biographical information that is received from and that is about one of the users of the system;

wherein at least one of the configurable applications is generated by the computer at least in part based on inputs received from multiple users of the system, the inputs including at least one of text, graphics, sounds, documents, and multi-media content;

. . .

wherein the at least one configurable link is generated by the computer based at least in part on a profile attributed to at least one user of the system and at least one rule that is configurable by a user acting in the role of an administrator and which applies user profiles to select what content stored on the computer can be viewed by which of the users of the system.

Applying the means-plus-function framework articulated by the Federal Circuit, this Court finds that the claim limitations reciting a "computer" do not contain "means" language. Accordingly, there is a presumption that the claim limitation is not a means-plus-function limitation. *See Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800

F.3d 1366, 1371 (Fed. Cir. 2015). Yet Facebook can overcome this presumption by proving that the claim limitation "fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* at 1372 (internal quotations marks omitted) (citing *Williamson*, 792 F.3d at 1349–50). "[T]o help determine whether a claim term recites sufficient structure, [the Court] examine[s] whether it has an understood meaning in the art." *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004).

Facebook seeks to rebut the presumption that the claim limitations are not means-plus-function claim limitations by arguing that the term "computer" is a "nonce" word that triggers 35 U.S.C. § 112(f). *Williamson*, 792 F.3d at 1349–1350. Examining the claim language, the Court finds that the term "computer" by itself connotes some degree of structure, though computers are certainly a broad class of products. The word "computer" is in every dictionary and is understood to be a programmable electronic device. ECF No. 40-1 ¶ 43 (Klausner Decl.) The word "computer" is a broad term because computers come in all shapes and sizes. And Zak in fact intended a broad definition for the term "computer." *Id.* at ¶ 44. He defined the word as follows in the written description section of the patent:

> The computer or computer system (collectively the "'computer") is any device capable of housing the

> programming logic that allows the system to
> function. The computer can be a stand alone
> computer, a server, a mainframe computer, a mini-
> computer, a web server, an Internet server, an
> intranet server, an extranet server, a local area
> network (WAN), a wireless network, or any other
> form of computational device.

'720 Pat. col. 4-5 ll. 64-4 (reference numbers omitted). Though the term "computer" is a broad term there is no question that a computer is understood to be structure. The Court notes that there is nothing improper or unusual in an inventor using a broad term in his or her patent claims; if an inventor has created a novel invention, the inventor should be allowed to claim the full scope of invention as long as he or she satisfies the other requirements of patentability, such as enablement. The Court accordingly disagrees with Facebook's argument that the term "computer," as used in the disputed claims, is a "nonce" word that triggers 35 U.S.C. § 112(f). *Williamson*, 792 F.3d at 1349–1350. The asserted claims of the '720 Patent use the term computer in the context of a well-described system for managing the content of a web site.

Turning now to the language in the claims surrounding the word "computer," the Court finds that the surrounding claim language describes sufficient structure to avoid the claim limitations being categorized as means-plus-function claim limitations. The claims of the '720 patent are directed to a computer used for managing the content displayed on a web site. They "recite a number of functions carried out by

a 'computer', including, among other things, generating an 'application link' or a 'configurable link,' generating and displaying content, etc." ECF No. 40-1, ¶ 46 (Klausner Decl.). For example, Claim 1 of the '720 Patent states:

> a plurality of configurable applications administered by the computer, wherein each configurable application includes a category of content stored by the computer and displayable to users of the web site . . . .

'720 Pat. col. 22 ll. 25–28. The presence of these various functions turns the broad conception of a general-purpose computer into a specific-purpose computer having sufficient structure to avoid 35 U.S.C. § 112(f). Moreover, the written description section of the '720 Patent is detailed and sets forth definitions and context concerning the invention of the claims. The Court finds that a person of ordinary skill in the art would recognize that a computer that performs the various functions set forth in the claims, such as generating or administering content for a web site, has sufficient structure.

Zak asserts that the Federal Circuit case *Inventio AG v. Thyssenkrupp Elevator Ams. Corp.*, 649 F.3d 1350 (Fed. Cir. 2011) supports his position. In that case the Federal Circuit held that the claim limitation "computing unit" for efficiently controlling the operation of elevators in a building was a sufficiently definite structure to avoid being a means-plus-function claim limitation. *Id.* at 1359. Facebook responds

that *Inventio* was overruled by the Federal Circuit's 2015 *en banc* decision in *Williamson v. Citrix Online,* 792 F.3d 1339. The Court agrees that until the Federal Circuit reaffirms its holding in *Inventio*, the precedential value of its ultimate holding that the "computing unit" was not a means-plus-function claim limitation is minimal. In *Inventio*, the Federal Circuit applied a since-overruled standard holding that absence of the word "means" creates a "strong presumption" that the claim limitation is not a means-plus-function claim limitation. *Inventio*, 649 F.3d 1360. Subsequently, however, in *Williamson*, the Federal Circuit specifically overruled that line of cases holding that absence of the word "means" creates a strong presumption of a means-plus-function claim limitation. *Williamson*, 792 F.3d at 1349. *Inventio's* ultimate holding was thus based on a now-outdated standard.

Yet *Linear Technology Corporation v. Impala Linear Corporation*, 379 F.3d 1311, a 2004 Federal Circuit case, supports the Court's decision that the disputed claim limitations containing the term "computer" are not means-plus-function claim limitations. In that case, the Federal Circuit reversed the district court's finding that various claim limitations reciting "circuits" for performing specific functions were means-plus-function claim limitations. *Id*. at 1322. For example, one representative claim limitation stated: "a first circuit for monitoring a signal from the output terminal to generate a first feedback signal . . . ." *Id*. at 1316. The Federal Circuit began its analysis by looking to the dictionary definition

of "circuit" and found the term "circuit" would by itself be considered structural in nature. *Id.* at 1320. The Federal Circuit then examined the recited function of the circuit and concluded that a person of ordinary skill would understand that the term "circuit", when coupled to the circuit's claimed functions, was sufficiently structural to avoid classification as a means-plus-function claim limitation. *Id.* at 1320–21.

The Court finds the present case similar to *Linear Technology* in that: (1) the claim term "computer" in the '720 Patent is structure just as the claim term "circuit" was in *Linear Technology*; and (2) the functions recited in the claims of the '720 Patent that are to be performed by the "computer" more fully define the structure of the computer just as the claimed functions in *Linear Technology* fleshed out the claim term "circuit." In other words, a person of ordinary skill in the art would consider a computer that performs the various functions set forth in the claims of the '720 Patent, such as generating or administering content for a web site, to be structure.

In its response brief Facebook argues that to avoid 35 U.S.C. § 112(f) the claims must set forth the programming or describe in detail the software for performing the functions recited in the claims. ECF No. 40. The Court disagrees that specific programming must be recited in the claims or written description to avoid 35 U.S.C. § 112(f). Under the facts of this case a computer that performs the various functions listed in the claims in the context of managing the content of a web site is sufficiently

definite structure to a person of ordinary skill in the art to avoid means-plus-function classification.

The recent Federal Circuit case *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1008–09 (Fed. Cir. 2018) further guides the Court's analysis. In that case, the Federal Circuit vacated a contrary finding by a district court and held that claim limitations containing the terms "program" and "user interface code" related to a graphical user interface for a computer were not means-plus-function claim limitations. More specifically, the district court had held that the claim limitations "program . . . that can operate the movement of the pointer (0)" and "user interface code being configured to detect one or more locations touched by a movement of the user's finger on the screen without requiring the exertion of pressure and determine therefrom a selected operation" were not means-plus-function claim limitations. *Id*. at 1006–07. The Federal Circuit first noted that, because the claim limitations do not contain the word "means," it must be presumed that the claim limitations are not means-plus-function claim limitations. *Id*. at 1007. The Federal Circuit then concluded that the terms "program" and "user interface code" were not used as generic terms or nonce words "but rather as specific references to conventional graphical user interface programs or code, existing in prior art at the time of the inventions." *Id*. at 1008. Because conventional graphical user interfaces were known in the art, the Federal Circuit held that a person of ordinary skill in the art would recognize the claim limitations as

having a sufficiently definite meaning as the name for structure. *Id.* at 1008–09.

The present case is similar to *Zeroclick*. As discussed above, in *Zeroclick* the Federal Circuit held that a person of ordinary skill in the art would recognize that the terms "program" and "user interface code" in the context of the claims referring to conventional structure or programming for a graphical user interface were not nonce words. *Id.* at 1008. Similarly, in the present case the Court finds that a person of ordinary skill in the art would recognize that the term "computer" in the context of the claims referring to conventional structure or programming for managing the content displayed on a web site as having a sufficiently definite meaning as the name for structure. The claims of the '720 patent "recite a number of functions carried out by a 'computer' including, among others, generating and administering a plurality of applications, generating an "application link" or a 'configurable link," generating displayable content, etc." ECF No. 40-1, ¶ 46 (Klausner Decl.). The Court finds that a person of ordinary skill in the art would have recognized these claim limitations as having sufficiently definite meaning as the name for structure. The Court accordingly concludes that the various claim limitations containing the term "computer" are not means-plus-function claim limitations.

## C.    "Administrator Portal"

| Claim Term | Facebook's Proposed Constructions | Zak's Proposed Constructions | Court's Constructions |
|---|---|---|---|
| "administrator portal" | Invokes 35 U.S.C. §112(f), should be interpreted as a means-plus-function claim element, indefinite for lack of specification support | 35 U.S.C. §112(f) does not apply, not a means-plus-function claim element; to the extent that §112 applies, the term is not indefinite because it is supported by specification | This claim limitation is not a means-plus-function claim limitation |

Like its arguments concerning the "computer" claim limitation, Facebook requests that the Court construe the claim language "an administrator portal" in Claims 2, 7, and 30 as means-plus-function claim limitations. If the claim limitations are construed in this manner, Facebook argues, Claims 2 and 7 will become "indefinite" within the meaning of 35 U.S.C. § 112(b) and therefore invalid because the specification fails to disclose the specific structure or algorithm for creating the "administrator portal." Zak in opposition contends that the claim limitation "administrator portal" is not a means-plus-function claim limitation. Both parties have stipulated that if the Court does not construe "administrator portal" as a means-plus-function claim limitation that is indefinite within the meaning of 35 U.S.C. § 112(b), it

should be construed to mean "interface used to manage applications and/or business rules." ECF No. 70.

Claims 2, 7, and 30 recite the term "administrator portal." Claim 2 of the '720 Patent, representative of the asserted claims, is reproduced below with the disputed claim limitation and other relevant claim language underlined:

> 2. A system, including a computer and a web site, for managing content displayable on the web site to multiple users of the system who have profiles stored on the system, comprising:
>
> . . .
>
> <u>an administrator portal through which users of the system are permitted to act in the role of an administrator of certain web pages, wherein a user acting in the role of an administrator may manage business rules that utilize profiles of the users of the system to control interaction of the users with the certain web pages, wherein each user of the system is permitted to act in the role of an administrator at least with respect to a subset of web pages on the web site</u>; and

'720 Pat. col. 22-23 ll. 20.

Facebook and Zak disagree regarding whether this claim limitation is a means-plus-function type claim limitation pursuant to 35 U.S.C. § 112(f). The Court will apply the same test and procedure discussed above to determine whether the "administrator portal" claim limitations

are means-plus-function claim limitations. In this instance, the claim limitations reciting "administrator portal" do not contain the word "means." Accordingly, there is a presumption that this claim limitation is not a means-plus-function claim limitation. *See Media Rights*, 800 F.3d at 1371. Facebook seeks to rebut the presumption that this claim limitation is a means-plus-function claim limitation by arguing that "administrator portal" does not convey sufficiently definite structure to a person of ordinary skill in art. Facebook's principal argument is that the term "administrator portal" is a broad term and that no specific structure or algorithm is disclosed in the patent for the "administrator portal." Zak responds that "administrator portal" is sufficiently definite structure to avoid a mandatory finding that the term is a means-plus-function claim limitation.

The Court begins its analysis by assessing the intrinsic evidence of the claim language itself. The claim sets forth a detailed description of the function and role of the "administrator portal." It describes the "administrator portal through which users of the system are permitted to act in the role of an administrator of certain web pages, wherein a user acting in the role of an administrator may manage business rules that utilize profiles of the users of the system to control interaction of the users with certain web pages." '720 Pat. col. 23 ll. 3–8. This language is very clear in specifying the role and function of the administrator portal.

The written description section of the patent also discusses the administrator portal. In a sub-section of the patent entitled "Administrator-View," the patent describes how the system can have an "administrator console 60 or administrator portal" that "is used to manage the applications 30 and/or business rules of the system 20." *Id.* at col. 7 ll. 20–22. The written description also states that there can be a content interface 26 capable of receiving input 24 from the content provider 34. The written description explains that "[i]n the preferred embodiment, the content interface 26 includes a *portal* that allows the content provider to access the input view and output view in a simultaneous or substantially simultaneous manner." *Id.* at col. 4 ll. 44–47 (emphasis added.)

Figure 2 shows the administrator console 60 or administrator portal:



**Figure 2**

The Court finds that a person of ordinary skill in the art would find the term "administrator portal," in the context of managing the content of a web site, connotes sufficient structure to avoid § 112(f). In the context of the claim language and written description, it is clear that an administrator portal is simply a user interface where users can "act in the role of administrator of certain web pages, wherein a user acting in the role of an administrator may manage business rules that utilize profiles of the users of the system to control interaction of the users with certain web pages." Claim 2, '720 Pat. col. 23 ll. 3–8. The Court's understanding that the administrator portal is a user interface is

32

supported by Figure 2, which shows that a user can use the administrator console 60 or administrator portal to interface with the various applications. The fact that this claim limitation may be a broad term does not mandate that the term be a means-plus-function claim limitation.

The Court's conclusion is supported by case law. For example, in *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580 (Fed. Cir. 1996), the Federal Circuit held that the claim limitation "detent mechanism" was not a means-plus-function claim limitation even though the term is defined in functional terms and even though the term did not call to mind a single well-defined structure. The Federal Circuit explained that "[w]hat is important is not simply that a 'detent' or 'detent mechanism' is defined in terms of what it does, but that the term, as the name for structure, has a reasonably understood meaning in the art." *Id*. at 1583. Like in *Greenberg*, the Court finds that the term "administrator portal" in the context of managing content for a web page would be understood by a person of ordinary skill in the art as the name for structure.

Likewise, in *Personalized Media Communications v. ITC*, 161 F.3d 696, 705 (Fed. Cir. 1998), the Federal Circuit held that the claim limitation "digital detector" did not implicate § 112(f) because "[e]ven though the term 'detector' does not specifically evoke a particular structure, it does convey to one knowledgeable in the art a variety of structures known as 'detectors.'" Similarly to *Personalized Media Communications*, the Court finds that the term "administrator portal"

would evoke, when read in light of the other claim language and written description, a class of structures for an administrator to interface with in managing the content of a web site.

Facebook also relies on *Advanced Group Information Systems, Inc. v. Life360, Inc.*, 830 F.3d 1341 (Fed. Cir. 2016). In that case, the Federal Circuit held that the claim limitation "symbol generator" for generating symbols on a computer screen was a means-plus-function claim limitation. *Id.* at 1348. In reviewing that case, the Court finds that the present case is distinguishable. In *Life360*, the Federal Circuit determined that the term "symbol generator" was abstract and did not identify a structure by its function. In contrast, the Court here concludes that the claim limitation "administrator portal," when read in the context of its function set forth in the claims and the written description of the '720 Patent, connotes a sufficiently definite structure, specifically an interface for managing the content and business rules of the web site. The Court therefore concludes that the claim limitations containing "administrator portal" are not means-plus-function claim limitations.

### D. Alleged Indefiniteness of Claim 11 Pursuant to IPXL Holdings Doctrine

| Claim Term | Facebook's Proposed Constructions | Zak's Proposed Constructions | Court's Constructions |
|---|---|---|---|
| "wherein the system uses the first business rule and information in user profiles to determine which content of the second configurable application is viewable by which of the other users of the system" | The claim recites a method step within a system claim and is therefore indefinite under *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F. 3d 1377 (Fed. Cir. 2005). | The claim is not indefinite because it does not recite a method step within a system claim. Instead, the claim uses permissible functional language to describe the capabilities of the system. *See, Mastermine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1315 (Fed. Cir. 2017). | This claim limitation is not indefinite. |
| "wherein the system uses the second business rule and information in user profiles to determine which of the other users of | The claim recites a method step within a system claim and is therefore indefinite under *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F. 3d | The claim is not indefinite because it does not recite a method step within a system claim. Instead, the claim uses permissible functional language to | This claim limitation is not indefinite. |

| | | | |
|---|---|---|---|
| the system are permitted to provide content to the second configurable application" | 1377 (Fed. Cir. 2005). | describe the capabilities of the system. *See, Mastermine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1315 (Fed. Cir. 2017). | |

Facebook further asserts that Claim 11 of the '720 Patent is indefinite within the meaning of 35 U.S.C. § 112(b) and therefore invalid because it is written improperly. Specifically, Facebook argues that although the claim is directed to a system it is written in a way that the system can only be infringed if it is used in a particular manner by the user. Facebook's reasoning relies on *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005), in which the Federal Circuit held that a system claim that recited a method of using that system performed by the user was invalid as being indefinite.

Consistent with *IPXL*, Facebook argues that Claim 11 of the '720 Patent recites a system that includes two-method steps that render the claim indefinite:

- "wherein the system uses the first business rule and information in user profiles to determine which content of the second configurable application is viewable by which of the other users of the system. . . ."

- "wherein <u>the system uses</u> the second business rule and information in user profiles to determine which of the other users of the system are permitted to provide content to the second configurable application . . . ."

'720 Patent col. 25 ll. 1–10 (emphasis added). According to Facebook, these limitations do no merely recite a capability of the system, they employ "active voice" ("the system uses"), indicating that the limitations describe affirmative steps rather than capabilities. Facebook points out that Zak could and should have written these limitations to state, for example, "wherein the system is capable of using." In response, Zak argues that the language of Claim 11 specifies that the business rule is "configurable" by the administrator, not that the user must actually use the feature.

35 U.S.C. § 112(b) mandates that a patent must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." The Supreme Court has held that this definiteness provision "require[s] that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). Indefiniteness is a question of law that is reviewed on appeal *de novo*, though any factual findings by the district court based on extrinsic evidence are reviewed for clear error. *Alfred E.*

*Mann Found. for Sci. Research v. Cochlear Corp.*, 841 F.3d 1334, 1341 (Fed. Cir. 2016).

In *IPXL*, 430 F.3d at 1384, a case of first impression, the Federal Circuit held that a claim covering both a system and a method of actually using that system was indefinite. The Federal Circuit was concerned that claiming both the system and a method of using the system within a single claim can make it unclear whether infringement occurs when one creates an infringing system, or whether infringement occurs when the user actually uses the system in an infringing manner. *UltimatePointer, L.L.C. v. Nintendo Co.,* 816 F.3d 816, 826 (Fed. 2016) (quotations and citations omitted). The claim in *IPXL* provided:

> The system of claim 2 [including an input means] wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with that transaction type, and *the user uses the input means* to either change the predicted transaction information or accept the displayed transaction type and transaction parameters.

*IPXL*, 430 F.3d at 1384. The Federal Circuit held that "it is unclear whether infringement of claim 25 occurs when one creates a system that allows the user to change the predicted transaction information or accept the displayed transaction, or whether infringement occurs when the user actually uses the input means to change transaction information or uses the input means to accept a displayed transaction." *Id.* The Federal

Circuit concluded that "[b]ecause claim 25 recites both a system and the method for using that system, it does not apprise a person of ordinary skill in the art of its scope, and it is invalid." *Id.*

In *Mastermine Software, Inc. v. Microsoft Corporation*, 874 F.3d 1307 (Fed. Cir. 2017), the Federal Circuit again faced the issue of whether a claim was invalid for including a method step in a system claim. The pertinent claim stated:

> "A system comprising:
>
> . . .
>
> a reporting module installed within the CRM software application . . . ;
>
> . . .
>
> wherein the reporting module installed within the CRM software application *presents* a set of user-selectable database fields as a function of the selected report template, *receives from the user* a selection of one or more of the user-selectable database fields, and *generates* a database query as a function of the user selected database fields . . . ."

*Id.* at 1315. After reviewing cases addressing the same issue it had decided since *IPXL*, the Federal Circuit distinguished between situations: (1) where the system or apparatus claim contains active verbs (e.g., presents, receives, and generates) but was intended to mean that the system "is capable of" performing a function; and (2) where the

system or apparatus claim contains language that specifies that a user must actually perform a function. *See id.* Claims falling in the former category are definite and thereby valid while claims falling in the latter category are indefinite and thereby invalid. *Id.* at 1316. The Federal Circuit looked to the disputed claim language and held that "[b]ecause the claims merely use permissible functional language to describe the capabilities of the claimed system," and "do not claim activities performed by the user," the claims were definite. *Id.*

Applying the Federal Circuit's guidance in *Mastermine* to the facts of the case at bar, the Court finds that the disputed claim limitations are describing the capabilities of the claimed system and not requiring actual performance of a function by a user or the system. Claim 11 of the '720 Patent is reproduced below with the relevant claim limitations highlighted:

> 11. A system, including a computer, for managing content displayable on a collection of web pages to multiple users of the system who have profiles stored on the system, the users including an administrator of the collection of web pages, comprising:
>
> a plurality of configurable applications that are managed by the computer, including at least a first configurable application and a second configurable application, wherein the first and second configurable applications each includes content displayable on the collection of web pages, wherein

the content includes at least one of text, graphics, sounds, documents, and multi-media content;

wherein the first configurable application is a biography application that displays biographical information about the administrator of the collection of web pages;

wherein the second configurable application is generated by the computer at least in part based on content received from the administrator and at least in part based on content received from one or more of the other users of the system;

at least one application link on at least one of the web pages that points to at least one of the plurality of configurable applications so as to enable the users to selectively activate the configurable application to which the application link points;

a first business rule that <u>is configurable by the administrator,</u> <u>wherein the system uses the first business rule and information in user profiles to determine which content of the second configurable application is viewable by which of the other users of the system</u>; and

a second business rule that <u>is configurable by the administrator, wherein the system uses the second business rule and information in user profiles to determine which of the other users of the system are permitted to provide content to the second configurable application</u>.

Read in context, the Court finds that the active voice in Claim 11 is merely describing the capability of the system, specifically how the

system is setup and designed, and is not requiring that a user perform steps. The claim language states that the business rule "is configurable" by the administrator, and then the system "uses" the business rule and information in the user profile. The Court finds this language is merely stating what the system is designed to do. The Court also finds that the facts of this case are similar to the facts of *Mastermine*. Accordingly, the Court does not find Claim 11 to be invalid for indefiniteness.

**SO ORDERED.**


Dated: February 6, 2020     s/Terrence G. Berg
                                     TERRENCE G. BERG
                                     UNITED STATES DISTRICT JUDGE


**Certificate of Service**

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on February 6, 2020.

                                s/A. Chubb
                                Case Manager