UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **BRUCE ZAK**, an individual, | **4:15-CV-13437-TGB-MJH** |
| Plaintiff, | |
| vs. | **ORDER DENYING MOTIONS TO EXCLUDE EXPERT TESTIMONY (ECF NOS. 109, 120)** |
| **FACEBOOK, INC.**, a Delaware corporation, | |
| Defendant. | |

The Court assumes familiarity with the procedural history and underlying facts of this long-running dispute. Pending before the Court are two motions: (1) Defendant's *Daubert* Motion to Exclude the opinion of Plaintiff's damages expert Joel Wacek (ECF No. 120), and (2) Plaintiff's *Daubert* Motion to Exclude certain portions of the testimony of Facebook's technical expert Dr. Jon Weissman and Facebook's damages expert Michael Chase. (ECF No. 109).

## I.    ADMISSIBILITY STANDARD

In determining whether to admit expert testimony, district courts serve a "gatekeeping role" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but

1

reliable." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 589 (1993). This gatekeeping function applies to scientific expert testimony and other expert testimony involving technical or specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S., 137, 147 (1999). Federal Rule of Evidence 702 codified these requirements, which are as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)   The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)   The testimony is based on sufficient facts or data;

(c)   The testimony is the product of reliable principles and methods; and

(d)   The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In evaluating the reliability of expert testimony, *Daubert* provided a non-exclusive list of factors, which include: "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593-94)). A district court "has 'considerable leeway in deciding . . . how to go about determining whether particular expert testimony

2

is reliable.'" *United States v. Sanders*, 59 Fed. App'x 765, 767 (6th Cir. 2003) (quoting *Kumho*, 526 U.S. at 152). *Daubert*'s factors are not dispositive in every case and should be applied only "'where they are reasonable measures of reliability of expert testimony.'" *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529 (6th Cir. 2008). "[R]ejection of expert testimony is the exception, rather than the rule." *Id.* at 530. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## II.   ANALYSIS

Both parties have moved to exclude the testimony of the other's damages expert. Defendant moves to exclude the testimony of Mr. Joel Wacek. Plaintiff moves to exclude the testimony of Dr. Jon Weissman and Mr. Michael Chase. The Court will consider each motion in turn.

### a. Defendant's motion to exclude expert testimony of Mr. Wacek

Reduced to its simplest form, Mr. Wacek's opinion involved examining the factors set out in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1122 (S.D.N.Y. 1970), in an attempt to determine the reasonable royalty to use the technology at issue that Facebook would have paid Zak for the duration of the

3

patent. In line with *Georgia Pacific*, Mr. Wacek considered a hypothetical negotiation conducted in September 2015 (when Zak's '720 patent was issued, and the alleged infringement began). *See* Wacek Rep., ECF No. 119, PageID.5882 (filed under seal). To that end, Mr. Wacek examined all of the patent acquisition and license agreements to which Facebook has been a party, determining— with the aid of Zak's technical expert—which transactions were both economically and technically comparable. *Id.* at PageID.5883-84. Having selected three comparable agreements, Mr. Wacek calculated an "effective running royalty," on a "per user" and "per advertising click" basis, in an effort to account for the ups and downs of Facebook's business over time. *Id.* at PageID.5886.

Facebook does not challenge Mr. Wacek's knowledge or credentials, nor does it dispute whether Mr. Wacek's proposed testimony would help the trier of fact understand the evidence or determine any fact in issue. Instead, Facebook argues that aspects of Mr. Wacek's proposed testimony are the product of unreliable methods or are not supported by facts.

### i.  Mr. Wacek's core calculation

Facebook first argues that Mr. Wacek "conducted his core calculation using an unreliable methodology." Def.'s Mot., ECF No. 120, PageID.6091. The thrust of Facebook's argument is that Mr. Wacek has impermissibly reversed and thus misapplied the "relief

4

from royalty" method. While Facebook contends that method is usually used to calculate the value of existing technology using market royalty rates for comparable technology, Mr. Wacek instead used the market valuations of various patents acquired by Facebook to determine a royalty rate for the technology at issue here. *Id.* at PageID.6091-92. Facebook further argues that Mr. Wacek "fails to tie his novel application of the 'relief from royalty' method to the facts of this case," as Mr. Wacek did not substantiate his opinions as to how Facebook values patents when considering a licensing or purchase agreement. *Id.* at PageID.6093.

Zak responds that Mr. Wacek's method of calculating an effective royalty rate from a lump sum payment for comparable technology has been widely accepted by courts. Pl.'s Opp'n, ECF No. 136, PageID.8038-39. Zak further argues that Mr. Wacek's consideration of monthly average users and advertising clicks did tie his opinion to the facts of the case, as those are the "key metrics" used by Facebook in financial evaluations. ECF No. 136, PageID.8045-46.

While generally, "lump sum payments . . . should not support running royalty rates without testimony explaining how they apply to the facts of the case." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 30 (Fed. Cir. 2012), calculating a royalty rate by considering lump sums paid for similar patents is an accepted

practice. *See, e.g., T-Rex Prop. AB v. Regal Ent. Grp.*, No. 6:16-CV-927-JDK-KNM, 2019 WL 4940763, at *7 (E.D. Tex. July 16, 2019); *Fujitsu Ltd. v. Belkin Int'l, Inc.*, No. 10-CV-03972-LHK, 2012 WL 5835741, at *2-3 (N.D. Cal. Nov. 16, 2012); *Ameritox, Ltd. v. Millennium Health, LLC*, No. 13-CV-832-WMC, 2015 WL 1520821, at *16 (W.D. Wis. Apr. 3, 2015); *Turnkey Sols. Corp. v. Hewlett Packard Enter. Co.*, No. 15-CV-01541-CMA-MLC, 2018 WL 571877, at *7 n.1 (D. Colo. Jan. 26, 2018).[1] Here, Mr. Wacek's report explained how the agreements he considered relate to the facts of the case. Mr. Wacek explained how he adjusted the lump sum payments on a per-advertising-click and per-user basis to account for Facebook's commercial activity over time in order to determine a reasonable royalty for the technology at issue here. Wacek Rep., ECF No. 119, PageID.5886 (filed under seal). Mr. Wacek explained

---

[1] Although not addressed in its brief, at the August 13, 2021 hearing on these and other motions, Facebook argued that the above cases are distinguishable, as they dealt only with lump sums paid for licenses, rather than lumps paid to acquire entire patents, as in this case. 8/13/2021 Mot. Hr'g Tr., 109:18-25, 110:1-6, ECF No. 162, PageID.10291-92. But, like Facebook's other arguments, this too goes to whether the comparators Mr. Wacek used were truly comparable and thus is a matter suitable for cross-examination, not a basis for exclusion. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012). Moreover, Mr. Wacek specifically addressed how his methodology accounts for the comparability of patent acquisitions and licenses. Wacek Rep., ECF No. 119, PageID.5885-86 (filed under seal).

why he selected these metrics, given their importance to Facebook's advertising business and use as a "key metric" within Facebook. *Id*. at PageID.5887. Whether Mr. Wacek's per-click and per-user calculations fairly represent how Facebook values the intellectual property it acquires or licenses is a factual matter that may be explored on cross-examination, but does not render Mr. Wacek's methodology unreliable or subject to exclusion.

Ultimately, Facebook's criticisms of Mr. Wacek's conclusions in converting various allegedly comparable intellectual property transactions go to the weight that should be afforded to Mr. Wacek's testimony, not its admissibility. *See Ameritox*, 2015 WL 1520821 at *16. Therefore, the Court will not exclude Mr. Wacek's calculations as based on an unreliable methodology.

### ii. Comparable transactions

### 1. Company One Transaction

Facebook argues that Mr. Wacek inappropriately used a patent transaction with another company (identified under seal at Def.'s Sealed Mot., ECF No. 118, PageID.5849 and referred to in this order as "Company One") as a comparator. Facebook argues that Mr. Wacek's conclusions as to the valuation of the Company One transaction are not based on fact, because Mr. Wacek inappropriately compared the several patent families acquired in the Company One transaction to the single patent at issue here.

Zak responds that Mr. Wacek's conclusions are based on information in the public domain that just one of the patents from Company One accounted for most of the value of the transaction, and that any dispute as to the degree of compatibility goes to the weight that should be afforded to Mr. Wacek's testimony, not its admissibility. ECF No. 136, PageID.8047-49.

Mr. Wacek has provided a basis for his conclusion that one of the Company One patents was the primary economic driver of the Company One transaction. ECF No. 119 PageID.5889-90 (filed under seal). Courts have held that disputes with an expert's conclusion apportioning relative value among patents in a transaction go to the weight that should be afforded an expert's opinion, not its admissibility. *See Immersion Corp. v. HTC Corp.*, No. CV 12-259-RGA, 2015 WL 834209, at *2-3 (D. Del. Feb. 24, 2015) (argument that expert's calculation rested "on the premise that the patents-in-suit are the most valuable in the portfolio" went to weight, not admissibility); *Intell. Ventures II LLC v. Sprint Spectrum, L.P.*, No. 2:17-CV-0661-JRG-RSP, 2019 WL 1877309, at *6 (E.D. Tex. Apr. 26, 2019) (rejecting argument that testimony on comparable transaction should be excluded because that transaction involved "a license for thousands of patents, the vast majority of which [the expert witness] does not assign value," and explaining that "such arguments should be reserved for cross-

8

examination at trial."). The remainder of Facebook's criticism of Mr. Wacek's analysis of the Company One transaction appears to the Court to challenge whether or not that transaction was sufficiently comparable to the patent at issue here. As the Court of Appeals for the Federal Circuit has explained, "the degree of comparability of . . . license agreements as well as any failure [by an expert witness] to control for certain variables are factual issues best addressed by cross examination and not by exclusion." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012). Therefore, the Court will not exclude Mr. Wacek's testimony regarding the Company One agreement.

### 2. Company Two Agreement

Facebook argues that Mr. Wacek erroneously considered a settlement between Facebook and another company (identified under seal at ECF No. 118, PageID.5832 and referred to in this Order as "Company Two") as a comparator. Facebook argues that Company Two's technology is not technologically comparable, and that settlement agreements only should be relied upon in damages calculations under limited circumstances, none of which apply here. ECF No. 120, PageID.6098-99. Zak responds that, while the patent involved in the Company Two Agreement may be less comparable than other patents Mr. Wacek considered, "degree of technological comparability goes to the weight of the evidence, not its

admissibility." ECF No. 136, PageID.8050. Zak further argues that, although the Company Two Agreement arose from litigation, it does not bear the hallmarks of unreliability that courts have identified as potential issues when valuations derived from settlement agreements are incorporated into the *Georgia Pacific* analysis. ECF No. 136, PageID.8051-52.

Prior settlements can be relevant to determining damages, but such settlements must be "sufficiently comparable for evidentiary purposes, and any differences in circumstances must be soundly accounted for." *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1299 (Fed. Cir. 2019). Here, Mr. Wacek acknowledged the limitations inherent to using settlement agreements as part of the hypothetical negotiation exercise. ECF No. 119, PageID.5899 (filed under seal). Mr. Wacek acknowledged the relevant Federal Circuit precedent on how and when settlement agreements may be used in the hypothetical negotiation context. *Id.* at PageID.5900. And Mr. Wacek analyzed the specific factual and procedural backdrop against which the Company Two settlement was reached and accorded it weight based on that analysis. *Id.* at PageID.5904. The Court is satisfied that Mr. Wacek has considered the Company Two settlement "in its proper context within the hypothetical negotiation framework," *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012), such that

10

his opinion testimony clears the bar set by *Daubert*. Furthermore, Facebook's contention that the patent in this case and the patents subject to the Company Two settlement are not technologically comparable is not a basis for exclusion under *Daubert*. Instead, it bears on the weight that should be afforded to Mr. Wacek's conclusions, and may thus be explored on cross-examination. *See ActiveVideo Networks*, 694 F.3d at 1333 (Fed. Cir. 2012).

### iii. The Atlas Agreement

Facebook argues that a purchase agreement between Facebook and Microsoft for certain technology (the "Atlas Agreement") should not have been used as a comparator, because the subject matter of that agreement is not technologically or economically comparable. Zak responds that Mr. Wacek did not consider the Atlas Agreement as part of his royalty opinion, and instead included references to it as background information. ECF No. 136, PageID.8052.

The Court agrees that Mr. Wacek did not use the Atlas transaction as a comparator in his royalty opinion. Mr. Wacek did not calculate a per-user or per-click valuation of the Atlas technologies, and did not incorporate the Atlas transaction into his calculation of an effective royalty rate. ECF No. 119, PageID.5884 (filed under seal). Mr. Wacek noted only that the Atlas Agreement "may be relevant to a discussion" of how Facebook values digital

11

advertising technologies. *Id*. Facebook's argument that testimony regarding the Atlas transaction might "skew the damages horizon for the jury," because of the large dollar values associated with that transaction, or might otherwise be unduly prejudicial, may be raised later on a motion *in limine* under Fed. R. Evid. 403 or in a request for a limiting instruction at trial if warranted.

### iv. References to Facebook's overall revenue, profits, and other "large numbers"

Facebook argues that Mr. Wacek's references to Facebook's total revenues and profits, and other "large numbers" during the relevant time period should not be admitted, as they would be highly prejudicial. ECF No. 120, PageID.6103. As with the Atlas Agreement, Zak contends that Mr. Wacek included these figures solely for background information, and did not rely on them in his royalty calculations. ECF No. 136, PageID.8052. Facebook does not appear to dispute that these figures were not incorporated into Mr. Wacek's royalty analysis. Thus, like Mr. Wacek's discussion of the Atlas agreement, challenges to this testimony are not germane to the *Daubert* analysis, and may instead be raised in a motion *in limine* or request for a limiting instruction in the event that such evidence is offered at trial.

### v. Whether Mr. Wacek offered technical opinions

Facebook argues that Mr. Wacek's report includes technical opinions on the feasibility and costs of non-infringing alternatives that Mr. Wacek is not qualified to provide. ECF No. 120, PageID.6104-7. Zak responds that Mr. Wacek has not offered technical opinions, but rather economic opinions as to damages that are "based upon technical information gathered from Facebook's own documents" and Zak's technical expert. ECF No. 136, PageID.8053-54.

"Consistent with Rule 703, patent damages experts often rely on technical expertise outside of their field" when evaluating feasible alternative designs. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014), (partially overruled on other grounds by *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015)). The Court agrees with Zak that Mr. Wacek is not offering a technical opinion. For each of the examples cited by Facebook, Mr. Wacek bases his opinion on depositions, Facebook documents, and Facebook's responses to interrogatories. *See generally* ECF No. 119, PageID.5910-13 (filed under seal). A damages expert's opinion that a proposed non-infringing alternative is or is not economically feasible "can be discussed on cross-examination as this addresses the weight of his opinion, not its admissibility." *Whitewater West*

13

*Indus., Ltd. v. Pac. Surf Designs, Inc.*, No. 317CV01118BENBLM, 2019 WL 2211897, at *9 (S.D. Cal. May 22, 2019) And as to the concern that Mr. Wacek may be asserting, based on his review of internal Facebook documents, that "he knows better than Facebook how long a technological engineering project will take," or whether an alternative would be economically feasible, that is precisely the sort of factual dispute that is best resolved through cross-examination, not exclusion. *Whitewater West*, 2019 WL 2211897 at *9.

### b. Plaintiff's motion to exclude expert testimony of Mr. Chase and Dr. Weissman

Like Zak's expert, Facebook's damages expert, Mr. Chase, attempted to estimate what reasonable royalty the parties would have settled on in a hypothetical negotiation. Chase Rep., ECF No. 114-1, PageID.5165 (filed under seal). To that end, Mr. Chase examined patent transactions to which Facebook had been a party, and attempted to identify comparable patents with the assistance of Facebook's technical expert, Dr. Weissman. Dr. Weissman identified six potentially comparable patents, but concluded that four of the six were "broader" than the patent at issue here. Weissman Rep., ECF No. 114-2, PageID.5403-9 (filed under seal). Therefore, Mr. Chase focused his comparative analysis on the remaining two transactions, not the four patents Dr. Weissman

14

considered "broader." ECF No. 114-1, PageID.5095-5101. Zak argues that Dr. Weissman's conclusion that four potentially comparable patents were broader than the patent at issue was not the product of reliable principles or methods, and involved legal conclusions that Dr. Weissman was not qualified to make. Pl.'s Mot., ECF No. 109, PageID.4078-79. Because Mr. Chase relied on Dr. Weissman's opinion and considered only the two patents that Dr. Weissman determined were not broader than the patent at issue, Zak argues that Mr. Chase's damages conclusions must be excluded too. *Id*. at PageID.4083-84.

On a fundamental level, as Zak concedes in his motion, ECF No. 109, PageID.4082, this dispute centers on the degree of comparability between the patent at issue in this case and the four patents Mr. Chase ultimately excluded from his analysis. The Federal Circuit has clearly commanded that the "degree of comparability [between] license agreements as well as any failure on the part of [an expert witness] to control for certain variables are factual issues best addressed by cross examination and not by exclusion." *ActiveVideo Networks*, 694 F.3d at, 1333. The Court has some concerns about Dr. Weisman's methodology of comparing the scope of claims in the patents. Determining whether one patent is "broader" than another is normally the kind of question that requires legal expertise and analysis of the claim scope, rather than

15

technological expertise. Rather than looking at claim scope, it is more reasonable to consider generally the area of technology to determine what is comparable and what is not. But nonetheless, the possible weaknesses of Dr Weisman's and Mr. Chase's methods may be inquired into on cross-examination, and the jury can decide how much weight to give their conclusions. Therefore, the Court will not exclude Dr. Weissman's conclusions as to the comparability of the four "broader" patents, nor Mr. Chase's opinions based on those conclusions.

## III.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Exclude (ECF No. 120) is **DENIED**. Plaintiff's Motion to Exclude (ECF No.109) is also **DENIED**.

**SO ORDERED.**

| | |
|---|---|
| Dated:  September 30, 2021 | s/Terrence G. Berg |
| | TERRENCE G. BERG |
| | UNITED STATES DISTRICT JUDGE |