UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **BRUCE ZAK,** an individual, | **4:15-CV-13437-TGB-MGH** |
| Plaintiff, | **OPINION AND ORDER DENYING ZAK'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON CERTAIN OF FACEBOOK'S INVALIDITY DEFENSES (AS TO AN ON-SALE BAR AND OBVIOUSNESS AS TO CERTAIN PRIOR ART COMBINATIONS) (ECF NOS. 111, 143, 148)** |
| vs. | |
| **FACEBOOK, INC.,** a Delaware corporation, | |
| Defendant. | |

In this patent infringement case, Plaintiff Bruce Zak ("Zak") alleges that Defendant Facebook, Inc. ("Facebook") infringes a patent on Zak's web site technology, U.S. Patent No. 9,141,720 (the "'720 Patent").

Presently before the Court is Zak's motion for partial summary judgment dismissing Facebook's affirmative defenses of an on-sale bar and obviousness as to certain prior art combinations.[1] The parties have

---

[1] Zak also moves for summary judgment dismissing Facebook's affirmative defense of patent ineligibility. Because both parties have moved for summary judgment regarding patent eligibility, the Court will decide Zak's motion as to patent eligibility in a separate opinion and order.

submitted written briefs explaining their positions on the on-sale bar and obviousness.[2] The Court held oral argument on August 13, 2021. *See* Notice of Mot. Hr'g, ECF No. 158; Mot. Hr'g Tr., ECF No. 162. For the reasons stated in this opinion and order, the Court will **DENY** Zak's motion for partial summary judgment dismissing Facebook's affirmative defenses as to an on-sale bar and obviousness as to certain prior art combinations.

## I. PROCEDURAL HISTORY

The '720 Patent, entitled "System and Method for Managing Content on a Network Interface," was filed in the United States Patent and Trademark Office ("USPTO") on July 11, 2014 and issued on September 22, 2015. The '720 Patent is a third-generation continuation in a patent "family" whose original "parent" application was filed on February 12, 2003. *See generally* Zak's Mot. Ex. 1 ("'720 Patent"), ECF No. 111-2.

On September 29, 2015, Zak filed this patent infringement case against Facebook, originally alleging that Facebook infringes the '720 Patent and another member of the same patent family, U.S. Patent No. 8,713,134 (the "'134 Patent"). Pl.'s Compl., ECF No. 1. On August 30,

---

[2] Pl.'s Mot. Partial Summ. J. Def.'s Invalidity Defenses ("Zak's Motion"), ECF No. 111; Def.'s Opp'n Pl.'s Mot. Partial Summ. J. Def.'s Invalidity Defenses ("Facebook's Opposition"), ECF No. 143; Pl.'s Reply Supp. Mot. Partial Summ. J. Def.'s Invalidity Defenses ("Zak's Reply"), ECF No. 148.

2016, by stipulation of the parties, Zak's infringement claims as to the '134 Patent were dismissed with prejudice. Stipulation, ECF No. 31; Order Granting Stipulation, ECF No. 32. Zak alleges that Facebook infringes Claims 2-13 of the '720 Patent in connection with its ubiquitous Facebook and Instagram web sites and native apps. Facebook answered on November 30, 2015, alleging that the '720 Patent is invalid and denying that it infringes the '720 Patent. Def's. Answer, ECF No. 9.

On September 12, 2016, the Court denied Facebook's original motion for summary judgment of patent ineligibility, holding that representative Claim 2 of the '720 Patent recites patent eligible-subject matter. Op. & Order Den. Def.'s Mot. Summ. J. ("Original Order"), ECF No. 36.

In response to this lawsuit, Facebook filed four petitions before the USPTO's Patent Trial and Appeal Board ("PTAB") seeking to challenge the non-obviousness of certain claims of the '720 Patent through a process known as *inter partes review* ("IPR"). On April 4, 2017, the PTAB denied Facebook's IPR petitions, and no IPRs were instituted. *See Facebook, Inc. v. Zak*, Nos. IPR2017-00002, IPR2017-00003, IPR2017-00004, IPR2017-00005 (P.T.A.B. Apr. 4, 2017).

On October 12, 2018, the parties filed a joint stipulation on the constructions of some claim terms within the '720 Patent. Stipulation, ECF No. 70. On February 6, 2020, the Court issued an order construing the disputed claim terms within the '720 Patent that are material to the

3

infringement and validity issues in this case, pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). Order Construing Disputed Claim Limitations ("*Markman* Order"), ECF No. 97.

## II. BACKGROUND

The Court provided an extensive background of the facts of this case in its original summary judgment order and elsewhere. *See* Original Order (reported at *Zak v. Facebook, Inc.*, 206 F. Supp. 3d 1262 (E.D. Mich. 2016)), ECF No. 36; *Markman* Order (reported at *Zak v. Facebook, Inc.*, 2020 WL 589433 (E.D. Mich. Feb. 6, 2020)), ECF No. 97. In summary, plaintiff Bruce Zak[3] was a skilled computer programmer who left his job at Microsoft in the early 2000s to start a new company in Michigan called EveryWare, Inc. ("EveryWare"). EveryWare was formed around 7Ware, a software product developed by Zak with input from coinventor Regina Wilson (who at the time of the invention was Regina Zak, Bruce Zak's wife). The original parent application of the '720 Patent was filed on 7Ware on February 12, 2003.

## III. '720 PATENT

### A. Patented System

The '720 Patent is directed to a system for managing web site content. The specification contemplates that prior to the '720 Patent, existing web site technology was focused on creating advanced features. These advanced features required technical personnel with increasingly

---

[3] Mr. Zak passed away at the age of 55 on July 14, 2021.

sophisticated levels of expertise in the information technology used to manage web sites. According to the specification, existing web site technology thus created problems with keeping web sites up to date. Even for large entities with substantial resources, there might be a limited number of technical personnel. Moreover, technical personnel might not be best situated to manage web sites from a content standpoint. Accordingly, even routine content management might require multiple interactions and communications between different personnel in different roles. The specification contemplates that the key to solving these problems is customizable and automated features that would allow non-technical users to control the information technology used to manage web sites. Allowing non-technical users to manage content without the assistance and intervention of technical personnel saves time, resources, and the possibility of errors, and supports the allocation of content responsibilities. '720 Patent 1:13-2:15, ECF No. 111-2 at PageID.4247.

## B. Claims

The parties have agreed that for purposes of patent eligibility, Claim 2 of the '720 Patent is representative of the asserted claims. Representative Claim 2 recites:

> **2**. A system, including a computer and a web site, for managing content displayable on the web site to multiple users of the system who have profiles stored on the system, comprising:
> at least a first configurable application and a second configurable application, wherein each of

the first and second configurable applications includes content that is stored on the computer and that is displayable to the users of the web site, and wherein one of the applications is a biography application that is managed by the computer and that displays biographical information that is received from and that is about one of the users of the system;

wherein at least one of the configurable applications is generated by the computer at least in part based on inputs received from multiple users of the system, the inputs including at least one of text, graphics, sounds, documents, and multi-media content;

an administrator portal through which users of the system are permitted to act in the role of an administrator of certain web pages, wherein a user acting in the role of an administrator may manage business rules that utilize profiles of the users of the system to control interaction of the users with the certain web pages, wherein each user of the system is permitted to act in the role of an administrator at least with respect to a subset of web pages on the web site; and

at least one configurable link on the web site that points to at least one of the plurality of configurable applications,

wherein the at least one configurable link is generated by the computer based at least in part on a profile attributed to at least one user of the system and at least one rule that is configurable by a user acting in the role of an administrator and which applies user profiles to select what content stored on the computer can be viewed by which of the users of the system.

*Id.* 22:52-23:20, ECF No. 111-2 at PageID.4257-4258.

Stripped of excess verbiage, representative Claim 2 recites a computer-based system for managing user interaction with web site content. In addition to the computer and the web site, the claim language involves user profiles, configurable applications, configurable business rules, configurable access rules, and configurable links. More specifically, the claim language centers on the relationship between a configurable application whose content is stored on the computer and displayable to users, a configurable access rule that applies user profiles to select what content can be viewed by which users, and a configurable link on the web site that points to the configurable application. According to the claim language, the configurable application is generated by the computer based on user inputs. Zak identifies the configurable link "in particular" as a point of novelty over the prior art. Zak's Mot. Br. 11, ECF No. 111 at PageID.4215. According to the claim language, the configurable access rule is configurable by an administrator via an administrator portal, and the configurable link is generated by the computer based on a user profile and the configurable access rule.

### C. Constructions

With respect to the various terms in representative Claim 2, the constructions of record largely incorporate generic definitions and descriptions from the specification. By stipulation of the parties, "profile," "user profile," and "profile information" mean "information about a user of the website." "Application" means "a unit of content provided on a web

site" and "configurable application" means "an application that can be modified and/or configured by a user of the web site." "Business rule(s)" and "rule" mean "any rule incorporated into a system that controls how the system functions." "Administrator portal" means "interface used to manage applications and/or business rules" and "administrator" means "any user of the web site that has the ability to create, update, delete, and/or schedule a business rule of the web site." Stipulation 1-2, ECF No. 70 at PageID.1833-1834. *See also* '720 Patent 10:27-28 (describing a "profile"), 5:20-21 (defining "application"), 5:45-46 (defining "configurable application"), 8:29-30 (defining "business rule"), 7:20-22 (describing an "administrator portal"), 9:22-27 (describing an "administrator"), ECF No. 111-2 at PageID.4249-4251.

At the claim construction stage of this case, among other terms in representative Claim 2, the parties requested that the Court construe the term "configurable link." The Court construed the term to mean "a mechanism by which a user of a web site activates an application, where the mechanism can be modified or configured by the user as permitted by any relevant business rules." *Markman* Order 11-12, ECF No. 97 at PageID.3178-3179. *See also* '720 Patent 5:53-54 (defining "link"), 5:62-64 (defining "configurable link"), ECF No. 111-2 at PageID.4249. As noted above, according to the claim language, the configurable access rule is configurable by an administrator, and the configurable link is generated by the computer based on a user profile and the configurable access rule.

Put together with the Court's construction, Zak reads the claim language as reciting that the configurable link can be modified or configured by an administrator by modifying or configuring the configurable access rule.

## IV. LEGAL STANDARDS

"Summary judgment is as available in patent cases as in other areas of litigation." *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed. Cir. 1991).

### A. Standard for Summary Judgment

Under Rule 56, summary judgment is proper when there is "no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a

genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

In order to succeed on its motion for summary judgment, the moving party must show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322. The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton*, 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment—the disputed factual issue must be material. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find . . . that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus

of proof is imposed.'" *Id.* at 252 (alteration in original) (citation omitted). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### B. Infringement

A patent is infringed when one "without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor." 35 U.S.C. § 271(a). Infringement of a patent, "whether literal or under the doctrine of equivalents, is a question of fact." *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129-30 (Fed. Cir. 2011). "Summary judgment of non-infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim is found in the accused device literally or under the doctrine of equivalents." *Advanced Steel Recovery, LLC v. X-Body Equip., Inc.*, 808 F.3d 1313, 1317 (Fed. Cir. 2015). "Where . . . the parties do not dispute any relevant facts regarding the accused product but disagree over which of two possible meanings of [a particular claim] is the proper one, the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment." *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996).

## C. Validity

The Patent Act establishes invalidity as a defense to infringement. 35 U.S.C. § 282(b). Under an invalidity defense, an accused infringer can "attempt to prove that the patent never should have issued in the first place." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 96 (2011). A patent enjoys a statutory presumption of validity, and the party asserting invalidity must prove invalidity by clear and convincing evidence. 35 U.S.C. § 282(a); *Microsoft*, 564 U.S. at 95.

Invalidity is proven when it is shown that any "condition for patentability" specified in part II of the Patent Act was lacking at the time the patent issued. 35 U.S.C. § 282(b)(2). As a condition for patentability, part II of the Patent Act requires that the claimed invention be novel and not barred under Section 102 and nonobvious under Section 103. *Id.* §§ 102 and 103.

Under the "on-sale bar" provision of Section 102(b), a patent is invalid when "the invention was . . . on sale in this country" prior to the "critical date" one year before the filing date in the USTPO. *Id.* § 102(b) (pre-AIA); *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55 (1998). The Supreme Court holds that the on-sale bar applies when two conditions are satisfied before the critical date: the invention was (1) "the subject of a commercial offer for sale" and (2) "ready for patenting." *Pfaff*, 525 U.S. at 67. The ready for patenting condition may be satisfied by proof of "reduction to practice" or that "the inventor had prepared drawings or other

descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Id.* at 67-68. Whether the on-sale bar applies is a question of law based on underlying factual findings. *Meds. Co. v. Hospira, Inc.*, 827 F.3d 1363, 1371 (Fed. Cir. 2016) (*en banc*).

Under Section 103, a patent is invalid as obvious when the "differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). Obviousness is a question of law based on underlying factual findings. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966). The relevant factual findings include (1) the scope and content of the prior art, (2) the differences between the prior art and the claims, (3) the level of ordinary skill in the art, and (4) any relevant secondary considerations. *Id.* at 17-18. Summary judgment of obviousness is appropriate if the relevant factual findings under the *Graham* factors "are not in material dispute, and the obviousness of the claim is apparent in light of these factors." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007).

## V. ON-SALE BAR ANALYSIS

Zak moves for summary judgment dismissing Facebook's affirmative defense of an on-sale bar, arguing that the evidence of record does not demonstrate that the invention of the '720 Patent was ready for

patenting before the '720 Patent's February 12, 2002 critical date (i.e., one year before the original parent application's filing date).

For the reasons set forth below, the Court finds that Zak is not entitled to summary judgment dismissing Facebook's affirmative defense of an on-sale bar.

## A. Background

Some rather extensive background is necessary to understand the parties' positions on the on-sale bar. The original parent application of the '720 Patent was filed on the 7Ware software product on February 12, 2003. Zak developed 7Ware with input from coinventor Ms. Wilson and sells 7Ware through his company EveryWare. Zak maintains that the 7Ware development process began in 2001 and that the first "working prototype" was completed in August 2002.

The dispute between the parties involves a particular 7Ware application, the "Document Library." As noted above, according to the claim language of representative Claim 2, the configurable link is generated by the computer based on a user profile and the configurable access rule. At the technology tutorial in this case, Zak represented that the links in today's Document Library correspond to the '720 Patent's configurable links. More specifically, Zak represented that the links include "MemID" and "DocHistoryID" parameters, and that by virtue of the MemIDs and DocHistoryIDs, the links are generated based on user

profiles and configurable access rules. *See* Facebook's Opp'n Ex. I ("Zak's Presentation"), ECF No. 143-10 at PageID.9271.

Zak's summary judgment argument centers on a report from Facebook's technical expert on validity, Ms. Frederiksen-Cross. On the issue of the on-sale bar, Ms. Frederiksen-Cross concludes that the Document Library was ready for patenting before the critical date. To reach this conclusion, Ms. Frederiksen-Cross studied "deposit materials" that Facebook obtained through discovery from the United States Copyright Office ("Copyright Office").

More specifically, in December 2001, EveryWare applied to register the copyright to 7Ware. Under the Copyright Act, applicants must "deposit" a copy of their "work," which the Copyright Office then publicly "catalogs." 17 U.S.C. §§ 408, 707. For "computer programs" like 7Ware, applicants must deposit the source code. 37 C.F.R. § 202.20(c)(2)(vii). In addition to 7Ware source code (the "deposited source code"), the deposit included a document titled "SevenWare Apps Detailed Design Deliverable" (the "deposited design specification") that describes 7Ware's applications, system architecture, and features. Facebook's Opp'n Ex. L ("Deposited Design Specification"), ECF No. 143-13. The parties and their technical experts variously refer to the deposited design specification both by its above title and by its file name, "ReusableApps Spec.Doc." The deposit materials were ultimately cataloged in April 2002.

Ms. Frederiksen-Cross describes that the deposited source code includes a file titled "Document Library.asp" that creates the URLs in the Document Library. Similar to the links in today's Document Library, the URLs include "MemID" and "DocHistoryID" parameters. Ms. Frederiksen-Cross describes that while the deposited source code "calls" or "invokes" the functions for setting the parameters, the source code for these functions is "missing." Ms. Frederiksen-Cross concludes that because the deposited source code was "designed to use" the parameters and "reference[s]" the missing source code, the missing source code "had already been developed" but was "omitted" from the deposited source code. *See* Facebook's Opp'n Br. 9-10 (reproducing sealed report and deposition testimony), ECF No. 143 at PageID.8971-8972.

### B. Arguments

Zak argues that because the source code for setting the DocHistoryIDs is missing from the deposited source code, summary judgment is appropriate as to both ways of establishing the *Pfaff* ready for patenting test. With respect to the first way of whether Zak reduced the invention to practice before the critical date, *Pfaff*, 525 U.S. at 67, Zak argues that in the absence of the missing code, no reasonable jury could find reduction to practice in the sense that the URLs are, in accordance with the claim language, generated based on configurable access rules. With respect to the second way "that prior to the critical date the inventor had prepared drawings or other descriptions of the

16

invention that were sufficiently specific to enable a person skilled in the art to practice the invention," *id.* at 67-68, Zak argues that no reasonable jury could find that the deposited design specification was a sufficiently specific enabling description because it does not speak to DocHistoryIDs or configurable access rules.

Facebook argues that summary judgment is not appropriate because the evidence of record as a whole creates a genuine dispute as to both ways of establishing that the invention was ready for patenting. More specifically, Facebook argues that in furtherance of Ms. Frederiksen-Cross' testimony, Ms. Wilson's testimony, EveryWare's marketing of the Document Library, the deposited design specification, and Zak's interrogatory responses create a genuine dispute as to the functionality of the Document Library before the critical date. *See* Facebook's Opp'n Ex. A ("Zak Interrogatory Responses"), ECF No. 143-2; Ex. G ("Wilson Deposition"), ECF No. 143-8; Ex. K ("7Ware Web Site"), ECF No. 143-12.

### C. Analysis

Having considered the evidence submitted by Facebook, the Court agrees that summary judgment is not appropriate. Initially, Ms. Frederiksen-Cross describes not just that the source code for setting the DocHistoryIDs is missing from the deposited source code, but reasons why she nonetheless concludes that the missing source code had already been developed. Consistent with Ms. Frederiksen-Cross' testimony, Ms.

Wilson testified that the Document Library was being tested in October 2001 when creating "samples of what [it] would look like and some of the features" that 7Ware salespersons would then have distributed to customers. Wilson Dep. 153:11-154:18, 157:12-158:14, ECF No. 143-8 at PageID.9196-9197, 9200-9201.

Moreover, EveryWare was marketing the Document Library at the time on the 7Ware website. EveryWare advertised that the documents in the Document Library "are secure and permission to view these documents is controlled based on user profiles or logins." 7Ware Web Site, ECF No. 143-11 at PageID.9278. Similarly, in a section on the Document Library, the deposited design specification explains that its "purpose . . . is to provide a mechanism to publish documents of various types within a customer's website for a targeted user or group of users." Deposited Design Specification, ECF No. 143-13 at PageID.9306. Finally, when Facebook directed an interrogatory to whether Zak practices the invention of the '720 Patent, Zak himself "direct[ed] Facebook to" the deposited design specification "[f]or a description of how the 7ware product practices the Asserted Claims." Zak Interrog. Resp. No. 9, ECF No. 143-2 at PageID.9001.

The Court's role on summary judgment is not "to weigh the evidence and determine the truth of the matter," but rather, "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. As to both the reduction to practice and the preparation of a sufficiently

specific enabling description ways of establishing the *Pfaff* ready for patenting test, viewing the evidence of record in the light most favorable to Facebook, *Sagan*, 342 F.3d at 497, Facebook has done "more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586. Accordingly, the Court finds that Zak is not entitled to summary judgment dismissing Facebook's affirmative defense of an on-sale bar.

## VI. OBVIOUSNESS ANALYSIS

Zak moves for partial summary judgment dismissing Facebook's affirmative defense of obviousness as to certain prior art combinations. Zak moves for summary judgment on two grounds. First, Zak argues that summary judgment is appropriate as to those of Facebook's alleged prior art combinations not supported by expert testimony (i.e., testimony from a person of ordinary skill in the art). Second, referring to the above-described deposit materials, Zak argues that summary judgment is appropriate as to a purported 7Ware–and–Design Specification prior art combination.

For the reasons set forth below, because Facebook has mooted the issues through its representations at oral argument, the Court finds that Zak is not entitled to summary judgment dismissing Facebook's affirmative defense of obviousness as to these prior art combinations.

## A. Expert Testimony

In its invalidity contentions, Facebook alleges that the asserted claims are obvious in light of hundreds of possible prior art combinations. *See* Zak's Mot. Ex. 7 ("Invalidity Contentions"), ECF No. 111-8. More specifically, Facebook first describes numerous prior art references in different categories. *Id.* 18-76, ECF No. 111-8 at PageID.4912-4970. Facebook then alleges that the asserted claims are obvious in light of multiple alternative combinations of "any one" and "any other" prior art references from the different categories. *Id.* 76-90, ECF No. 111-8 at PageID.4970-4984.

In a lengthy technology background section, Facebook's technical expert on validity, Dr. Weissman, similarly describes numerous prior art references. Zak's Mot. Ex. 3 ("Weissman Report") ¶¶ 43-105, ECF No. 111-4 at PageID.4294-4364. However, on the issue of obviousness, Dr. Weissman "identified and analyzed four prior art references," "Rasansky," "Douvikas," "LiveJournal," and "Taylor." *Id.* ¶ 155, ECF No. 111-4 at PageID.4391. Having analyzed the prior art references, Dr. Weissman concludes that the asserted claims are obvious in light of two prior art combinations: (1) Rasansky–and–Douvikas and (2) LiveJournal–and–Taylor. *Id.* ¶ 181, ECF No. 111-4 at PageID.4408-4409.

### 1. Arguments in the Written Briefs

Zak's summary judgment argument refers to Facebook's burden, "[s]ubsumed within the *Graham* factors," to "show by clear and

convincing evidence that a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007).

Zak argues that Facebook's alleged prior art combinations must be supported by expert testimony because this case involves complex technology. More specifically, Zak argues that Facebook's alleged prior art combinations cannot be presented to the jury for findings on obviousness without accompanying expert testimony because the motivation to combine and reasonable expectation of success factors are beyond the comprehension of ordinary laypersons. Zak argues that for this reason, Facebook must "live with" the Rasansky–and–Douvikas and LiveJournal–and–Taylor prior art combinations supported by Dr. Weissman's testimony. As to the remainder of Facebook's alleged prior art combinations, Zak argues that summary judgment is appropriate to preclude Facebook from presenting them to the jury.

Facebook argues that summary judgment is not appropriate because it would amount to the Court issuing a "declaration" of validity that would preclude others from challenging the validity of the asserted claims. Facebook also argues that instead of moving for summary judgment, Zak should have moved to preclude Dr. Weissman from offering new opinions at trial. To this end, Facebook offers a stipulation

that each party's technical expert on validity cannot offer new opinions at trial.

Zak argues in reply that, while preclusion would be appropriate, summary judgment is appropriate as well.

### 2. Analysis

In response to the Court's questioning at oral argument, Facebook represented that it will only present the Rasansky–and–Douvikas and LiveJournal–and–Taylor prior art combinations to the jury. Mot. Hr'g Tr. 57:4-59:12, ECF No. 162 at PageID.10239-10241. Because Facebook has thus mooted the issue, the Court finds that Zak is not entitled to summary judgment dismissing Facebook's affirmative defense of obviousness as to those of Facebook's alleged prior art combinations not supported by expert testimony.

To be clear, had Facebook not mooted the issue, the Court would agree with Zak that summary judgment is appropriate. Initially, to address Facebook's argument, a court does not "declare a patent valid," rather, it determines whether, under Section 282(b), the accused infringer can carry the "burden of establishing invalidity in the particular case before the court." *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1569 (Fed. Cir. 1987). Here, having considered the written briefs and the evidence of record, and noting in particular each party's use of technical experts on virtually every issue, the Court finds that this case involves "sufficiently complex" technology to require Facebook's alleged prior art

22

combinations to be supported by expert testimony. *Proveris Sci. Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1267 (Fed. Cir. 2008) (explaining that expert testimony is required where the "subject matter is sufficiently complex to fall beyond the grasp of an ordinary layperson"); *cf. Wyers v. Master Lock Co.*, 616 F.3d 1231, 1242 (Fed. Cir. 2010) (explaining that "expert testimony is not required when the references and the invention are easily understandable") (citing *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009)).

Accordingly, with the exception of the Rasansky–and–Douvikas and LiveJournal–and–Taylor prior art combinations supported by Dr. Weissman's testimony, Facebook has not come forward with clear and convincing evidence to support its affirmative defense of obviousness. *Celotex*, 477 U.S. at 325; *Microsoft*, 564 U.S. at 95. As to those of Facebook's alleged prior art combinations not supported by expert testimony, the Court therefore denies summary judgment without prejudice to Zak raising this issue at trial. *See Proveris*, 536 F.3d at 1267 (affirming JMOL of no anticipation or obviousness for lack of expert testimony); *Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1313 (Fed. Cir. 2011) (affirming summary judgment of no anticipation for lack of expert testimony).

## B. Deposit Materials

As noted above, having studied the deposited source code and the deposited design specification, Ms. Frederiksen-Cross concludes that the

Document Library was ready for patenting before the critical date. *See supra* Section V(A) (summarizing Ms. Frederiksen-Cross' testimony concerning the deposit materials in the context of an on-sale bar).

### 1. Arguments in the Written Briefs

Zak maintains that Ms. Frederiksen-Cross "attempts to fill in the holes" on the issue of the on-sale bar "by *combining* the source code in the copyright deposit with the teachings in the 7ware Design Specification." Zak's Mot. Br. 17 (emphasis added), ECF No. 111 at PageID.4221. As to a purported 7Ware–and–Design Specification prior art combination, Zak argues that summary judgment is appropriate because the deposit materials do not qualify as prior art references. More specifically, Zak argues that the deposit materials became "printed publications" after the critical date, in April 2002 when they were publicly cataloged by the Copyright Office. *See* 35 U.S.C. § 102(b) (pre-AIA).

Facebook argues that summary judgment is not appropriate because it does not actually allege a 7Ware–and–Design Specification prior art combination. Facebook explains that as opposed to relying on them as prior art references in the context of obviousness, it relies on the deposit materials as evidence of readiness for patenting in the context of an on-sale bar.

### 2. Analysis

In response to the Court's questioning at oral argument, Facebook represented that it will only present the deposit materials to the jury as

evidence of readiness for patenting in the context of an on-sale bar. Mot. Hr'g Tr. 59:13-60:17, ECF No. 162 at PageID.10241-10242. Because Facebook has thus mooted the issue, the Court finds that Zak is not entitled to summary judgment dismissing Facebook's affirmative defense of obviousness as to a purported 7Ware–and–Design Specification prior art combination. To address Zak's reply argument that summary judgment is appropriate to ensure that Facebook is precluded from presenting the deposit materials to the jury as prior art references, the Court denies summary judgment without prejudice to Zak raising this issue at trial. *See* Zak's Reply Br. 5-6, ECF No. 148 at PageID.9393-9394.

## VII. CONCLUSION

For the reasons stated in this opinion and order, the Court will **DENY** Zak's motion for partial summary judgment dismissing Facebook's affirmative defenses as to an on-sale bar and obviousness as to certain prior art combinations.

**SO ORDERED.**

Dated: September 30, 2021

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE