UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **BRUCE ZAK,**<br>an individual,<br><br>                    Plaintiff,<br><br>      vs.<br><br>**FACEBOOK, INC.,**<br>a Delaware corporation,<br><br>                    Defendant. | **4:15-CV-13437-TGB-MJH**<br><br>**OPINION AND ORDER DENYING ZAK'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF BARBARA FREDERIKSEN-CROSS (ECF NOS. 110, 141, 150) AND DENYING FACEBOOK'S MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. WILLIAM MANGIONE-SMITH (ECF NOS. 127, 140, 153)** |

In this patent infringement case, Plaintiff Bruce Zak ("Zak") alleges that Defendant Facebook, Inc. ("Facebook") infringes a patent on Zak's web site technology, U.S. Patent No. 9,141,720 (the "'720 Patent").

Presently before the Court are (1) Zak's motion to exclude certain testimony of Facebook's technical expert on validity, Ms. Frederiksen-Cross, and (2) Facebook's motion to exclude certain testimony of Zak's technical expert on validity, Dr. Mangione-Smith, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The parties have submitted written briefs explaining their

positions on the exclusion of Ms. Frederiksen-Cross' and Dr. Mangione-Smith's testimony.[1] The Court held oral argument on August 13, 2021. *See* Notice of Mot. Hr'g, ECF No. 158; Mot. Hr'g Tr., ECF No. 162. For the reasons stated in this opinion and order, the Court will **DENY** Zak's *Daubert* motion to exclude certain testimony of Ms. Frederiksen-Cross, and **DENY** Facebook's *Daubert* motion to exclude certain testimony of Dr. Mangione-Smith.

## I. PROCEDURAL HISTORY

The '720 Patent, entitled "System and Method for Managing Content on a Network Interface," was filed in the United States Patent and Trademark Office ("USPTO") on July 11, 2014 and issued on September 22, 2015. The '720 Patent is a third-generation continuation in a patent "family" whose original "parent" application was filed on February 12, 2003. *See generally* Facebook's Opp'n Ex. A ("'720 Patent"), ECF No. 141-2.

On September 29, 2015, Zak filed this patent infringement case against Facebook, originally alleging that Facebook infringes the '720

---

[1] Pl.'s Mot. Exclude Test. Frederiksen-Cross ("Zak's Motion"), ECF No. 110; Def.'s Opp'n Pl.'s Mot. Exclude Test. Frederiksen-Cross ("Facebook's Opposition"), ECF No. 141; Pl.'s Reply Supp. Mot. Exclude Test. Frederiksen-Cross ("Zak's Reply"), ECF No. 150; Def.'s Mot. Exclude Ops. Mangione-Smith Regarding '720 Patent ("Facebook's Motion"), ECF No. 127; Pl.'s Opp'n Def.'s Mot. Exclude Ops. Mangione-Smith Regarding '720 Patent ("Zak's Opposition"), ECF No. 140; Def.'s Reply Supp. Mot. Exclude Ops. Mangione-Smith Regarding '720 Patent ("Facebook's Reply"), ECF No. 153.

Patent and another member of the same patent family, U.S. Patent No. 8,713,134 (the "'134 Patent"). Pl.'s Compl., ECF No. 1. On August 30, 2016, by stipulation of the parties, Zak's infringement claims as to the '134 Patent were dismissed with prejudice. Stipulation, ECF No. 31; Order Granting Stipulation, ECF No. 32. Zak alleges that Facebook infringes Claims 2-13 of the '720 Patent in connection with its ubiquitous Facebook and Instagram web sites and native apps. Facebook answered on November 30, 2015, alleging that the '720 Patent is invalid and denying that it infringes the '720 Patent. Def.'s Answer, ECF No. 9.

On October 12, 2018, the parties filed a joint stipulation on the constructions of some claim terms within the '720 Patent. Stipulation, ECF No. 70. On February 6, 2020, the Court issued an order construing the disputed claim terms within the '720 Patent that are material to the infringement and validity issues in this case, pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). Order Construing Disputed Claim Limitations ("*Markman* Order"), ECF No. 97.

## II. BACKGROUND

The Court has previously set forth an extensive background of the facts of this case. *See* Op. & Order Den. Def.'s Mot. Summ. J. (reported at *Zak v. Facebook, Inc.*, 206 F. Supp. 3d 1262 (E.D. Mich. 2016)), ECF No. 36; *Markman* Order (reported at *Zak v. Facebook, Inc.*, 2020 WL 589433 (E.D. Mich. Feb. 6, 2020)), ECF No. 97. In summary, plaintiff Bruce Zak[2]

---

[2] Mr. Zak passed away at the age of 55 on July 14, 2021.

was a skilled computer programmer who left his job at Microsoft in the early 2000s to start a new company in Michigan called EveryWare, Inc. ("EveryWare"). EveryWare was formed around 7Ware, a software product developed by Zak with input from coinventor Regina Wilson (who at the time of the invention was Regina Zak, Bruce Zak's wife). The original parent application of the '720 Patent was filed on 7Ware on February 12, 2003.

### III. '720 PATENT

#### A. Patented System

The '720 Patent is directed to a system for managing web site content. The specification contemplates that prior to the '720 Patent, existing web site technology was focused on creating advanced features. These advanced features required technical personnel with increasingly sophisticated levels of expertise in the information technology used to manage web sites. According to the specification, existing web site technology thus created problems with keeping web sites up to date. Even for large entities with substantial resources, there might be a limited number of technical personnel. Moreover, technical personnel might not be best situated to manage web sites from a content standpoint. Accordingly, even routine content management might require multiple interactions and communications between different personnel in different roles. The specification contemplates that the key to solving these problems is customizable and automated features that would allow

4

non-technical users to control the information technology used to manage web sites. Allowing non-technical users to manage content without the assistance and intervention of technical personnel saves time, resources, and the possibility of errors, and supports the allocation of content responsibilities. '720 Patent 1:13-2:15, ECF No. 141-2 at PageID.8725.

**B. Claims**

The parties have agreed that Claim 2 of the '720 Patent is representative of the asserted claims. In this opinion and order, the Court will refer to representative Claim 2 unless the issues raised by the parties require distinguishing between the asserted claims. Representative Claim 2 recites:

> **2**. A system, including a computer and a web site, for managing content displayable on the web site to multiple users of the system who have profiles stored on the system, comprising:
>
> at least a first configurable application and a second configurable application, wherein each of the first and second configurable applications includes content that is stored on the computer and that is displayable to the users of the web site, and wherein one of the applications is a biography application that is managed by the computer and that displays biographical information that is received from and that is about one of the users of the system;
>
> wherein at least one of the configurable applications is generated by the computer at least in part based on inputs received from multiple users of the system, the inputs including at least

one of text, graphics, sounds, documents, and multi-media content;

an administrator portal through which users of the system are permitted to act in the role of an administrator of certain web pages, wherein a user acting in the role of an administrator may manage business rules that utilize profiles of the users of the system to control interaction of the users with the certain web pages, wherein each user of the system is permitted to act in the role of an administrator at least with respect to a subset of web pages on the web site; and

at least one configurable link on the web site that points to at least one of the plurality of configurable applications,

wherein the at least one configurable link is generated by the computer based at least in part on a profile attributed to at least one user of the system and at least one rule that is configurable by a user acting in the role of an administrator and which applies user profiles to select what content stored on the computer can be viewed by which of the users of the system.

*Id.* 22:52-23:20, ECF No. 141-2 at PageID.8735-8736.

Stripped of excess verbiage, representative Claim 2 recites a computer-based system for managing user interaction with web site content. In addition to the computer and the web site, the claim language involves user profiles, configurable applications, configurable business rules, configurable access rules, and configurable links. More specifically, the claim language centers on the relationship between a configurable application whose content is stored on the computer and displayable to

6

users, a configurable access rule that applies user profiles to select what content can be viewed by which users, and a configurable link on the web site that points to the configurable application. According to the claim language, the configurable application is generated by the computer based on inputs from multiple users. Zak identifies the configurable link in particular as a point of novelty over the prior art. According to the claim language, the configurable access rule is configurable by an administrator via an administrator portal, and the configurable link is generated by the computer based on a user profile and the configurable access rule.

### C. Constructions

With respect to the various terms in representative Claim 2, the constructions of record largely incorporate generic definitions and descriptions from the specification. By stipulation of the parties, "profile," "user profile," and "profile information" mean "information about a user of the website." "Application" means "a unit of content provided on a web site" and "configurable application" means "an application that can be modified and/or configured by a user of the web site." "Business rule(s)" and "rule" mean "any rule incorporated into a system that controls how the system functions." "Administrator portal" means "interface used to manage applications and/or business rules" and "administrator" means "any user of the web site that has the ability to create, update, delete, and/or schedule a business rule of the web site." Stipulation 1-2, ECF No.

70 at PageID.1833-1834. *See also* '720 Patent 10:27-28 (describing a "profile"), 5:20-21 (defining "application"), 5:45-46 (defining "configurable application"), 8:29-30 (defining "business rule"), 7:20-22 (describing an "administrator portal"), 9:22-27 (describing an "administrator"), ECF No. 141-2 at PageID.8727-8729.

At the claim construction stage of this case, among other terms in representative Claim 2, the parties requested that the Court construe the term "configurable link." The Court construed the term to mean "a mechanism by which a user of a web site activates an application, where the mechanism can be modified or configured by the user as permitted by any relevant business rules." *Markman* Order 11-12, ECF No. 97 at PageID.3178-3179. *See also* '720 Patent 5:53-54 (defining "link"), 5:62-64 (defining "configurable link"), ECF No. 141-2 at PageID.8727. As noted above, according to the claim language, the configurable access rule is configurable by an administrator, and the configurable link is generated by the computer based on a user profile and the configurable access rule. Put together with the Court's construction, Zak reads the claim language as reciting that the configurable link can be modified or configured by an administrator by modifying or configuring the configurable access rule.

## IV. ADMISSIBILITY STANDARD

Federal Rule of Evidence 702 sets forth the standard for the admissibility of expert testimony. Rule 702 states:

8

> A witness who is qualified as an expert by
> knowledge, skill, experience, training, or
> education may testify in the form of an opinion or
> otherwise if: (a) the expert's scientific, technical, or
> other specialized knowledge will help the trier of
> fact to understand the evidence or to determine a
> fact in issue; (b) the testimony is based on
> sufficient facts or data; (c) the testimony is the
> product of reliable principles and methods; and (d)
> the expert has reliably applied the principles and
> methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert*, the Supreme Court has held that Rule 702 requires district courts to act as gatekeepers to protect juries from misleading or unreliable expert testimony by assessing the reliability of the underlying reasoning and methodologies. *Daubert*, 509 U.S. at 589, 592-93. In *Kumho Tire*, the Supreme Court has concluded that the *Daubert* gatekeeping role applies to expert testimony based on technical and other specialized knowledge, in addition to scientific knowledge. *Kumho Tire Co., Ltd. v. Charmichael*, 526 U.S. 137, 141 (1999).

The proponent of expert testimony must establish its admissibility by a "preponderance of proof." *Daubert*, 509 U.S. at 592 n.10. When evaluating expert testimony, the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and

appropriate means of attacking shaky but admissible evidence." *Id.* at 596. The Sixth Circuit has held that an expert's opinion "must be supported by more than subjective belief and unsupported speculation and should be supported by good grounds, based on what is known." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800-01 (6th Cir. 2000) (quotation and citation omitted). "An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record." *Id.* at 801 (citation omitted). "However, mere weaknesses in the factual basis of an expert witness' opinion bear on the weight of the evidence rather than on its admissibility." *Id.* (quotation, citation, and alteration omitted).

## V. TECHNICAL EXPERT TESTIMONY

Zak's *Daubert* motion centers on a report from Facebook's technical expert on validity, Ms. Frederiksen-Cross, and Facebook's *Daubert* motion centers on a report from Zak's technical expert on validity, Dr. Mangione-Smith.

### A. Ms. Frederiksen-Cross[3]

Ms. Frederiksen-Cross' report is directed to Facebook's affirmative defense of an on-sale bar. Under this affirmative defense, Facebook

---

[3] Certain of the following citations to the record are to the brief and exhibits from Facebook's opposition to Zak's motion for partial summary judgment dismissing certain of Facebook's affirmative defenses of invalidity, which also deals with Ms. Frederiksen-Cross' testimony. *See* Def.'s Opp'n Pl.'s Mot. Partial Summ. J. Def.'s Invalidity Defenses ("Facebook's On-Sale Bar Opposition"), ECF No. 143.

argues that the invention of the '720 Patent was (1) "the subject of a commercial offer for sale" and (2) "ready for patenting" before the '720 Patent's February 12, 2002 "critical date" (i.e., one year before the original parent application's filing date). *See* 35 U.S.C. § 102(b) (pre-AIA); *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67-68 (1998).

Some rather extensive background is necessary to understand the parties' positions on the exclusion of Ms. Frederiksen-Cross' testimony. The original parent application of the '720 Patent was filed on the 7Ware software product on February 12, 2003. Zak developed 7Ware with input from coinventor Regina Wilson and sells 7Ware through his company EveryWare. Zak maintains that the 7Ware development process began in 2001 and that the first "working prototype" was completed in August 2002.

On the issue of the on-sale bar, the dispute between the parties involves a particular 7Ware application, the "Document Library." As noted above, according to the claim language of representative Claim 2, the configurable link is generated by the computer based on a user profile and the configurable access rule. At the technology tutorial in this case, Zak represented that the links in today's Document Library correspond to the '720 Patent's configurable links. More specifically, Zak represented that the links include "MemID" and "DocHistoryID" parameters, and that by virtue of the MemIDs and DocHistoryIDs, the links are generated based on user profiles and configurable access rules. *See* Facebook's On-

Sale Bar Opp'n Ex. I ("Zak's Presentation"), ECF No. 143-10 at PageID.9271.

In her report, Ms. Frederiksen-Cross concludes that the Document Library was ready for patenting before the critical date. To reach this conclusion, Ms. Frederiksen-Cross studied "deposit materials" that Facebook obtained through discovery from the United States Copyright Office ("Copyright Office").

More specifically, in December 2001, EveryWare applied to register the copyright to 7Ware. Under the Copyright Act, applicants must "deposit" a copy of their "work," which the Copyright Office then publicly "catalogs." 17 U.S.C. §§ 408, 707. For "computer programs" like 7Ware, applicants must deposit the source code. 37 C.F.R. § 202.20(c)(2)(vii). In addition to 7Ware source code (the "deposited source code"), the deposit included a document titled "SevenWare Apps Detailed Design Deliverable" (the "deposited design specification") that describes 7Ware's applications, system architecture, and features. Facebook's On-Sale Bar Opp'n Ex. L ("Deposited Design Specification"), ECF No. 143-13. The parties and their technical experts variously refer to the deposited design specification both by its above title and by its file name, "ReusableApps Spec.Doc." These deposit materials were ultimately cataloged in April 2002.

Ms. Frederiksen-Cross describes that the deposited source code includes a file titled "Document Library.asp" that creates the URLs in

the Document Library. Similar to the links in today's Document Library, the URLs include "MemID" and "DocHistoryID" parameters. Ms. Frederiksen-Cross describes that while the deposited source code "calls" or "invokes" the functions for setting the parameters, the source code for these functions is "missing." Ms. Frederiksen-Cross concludes that because the deposited source code was "designed to use" the parameters and "reference[s]" the missing source code, the missing source code "had already been developed" but was "omitted" from the deposited source code. Facebook's On-Sale Bar Opp'n Br. 9-10 (reproducing sealed report and deposition testimony), ECF No. 143 at PageID.8971-8972.

### B. Dr. Mangione-Smith

Dr. Mangione-Smith's report is a rebuttal to a report from Facebook's technical expert on validity, Dr. Weissman. Dr. Weissman's report is directed in relevant part to Facebook's affirmative defense of obviousness. Under this affirmative defense, Facebook argues that the '720 Patent is invalid as obvious because the "differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a).

On the issue of obviousness, Dr. Weissman analyzes four prior art references, "Rasansky," "Douvikas," "LiveJournal," and "Taylor," and concludes that the asserted claims are obvious in light of two prior art

13

combinations: (1) Rasansky–and–Douvikas and (2) LiveJournal–and–
Taylor. Dr. Mangione-Smith concludes that the asserted claims are not
obvious in light of the Rasansky–and–Douvikas and LiveJournal–and–
Taylor prior art combinations because Rasansky and LiveJournal do not
disclose the '720 Patent's configurable links. *See generally* Facebook's
Mot. Ex. 5 ("Mangione-Smith Report"), ECF No. 127-6.

## VI. EXCLUSION ANALYSIS

Zak moves to exclude Ms. Frederiksen-Cross' testimony on four
grounds. First, Zak argues that exclusion of Ms. Frederiksen-Cross'
testimony that the source code for setting the DocHistoryIDs had already
been developed is warranted because her testimony is unreliable for
failure to investigate when the source code was first written. Second, Zak
argues that exclusion of Ms. Frederiksen-Cross' testimony that the
source code for setting the DocHistoryIDs was "omitted" from the
deposited source code is warranted because her testimony is unreliable
for going to matters of intent. Third, Zak argues that exclusion of Ms.
Frederiksen-Cross' testimony that her conclusions are supported by
other evidence is warranted because her testimony is not based on her
technical knowledge and invades the province of the jury.

Zak's fourth ground for moving to exclude Ms. Frederiksen-Cross'
testimony, and Facebook's only ground for moving to exclude Dr.
Mangione-Smith's testimony, concern their applications of the Court's
construction of the term "configurable link." Zak and Facebook both

14

argue that each other's experts should be excluded because they have "misapplied" the Court's construction.

For the reasons set forth below, the Court finds that neither Zak's requested exclusion of Ms. Frederiksen-Cross' testimony nor Facebook's requested exclusion of Dr. Mangione-Smith's testimony is warranted.

### A. Nature of Investigation

As noted above, among other aspects of her testimony, Ms. Frederiksen-Cross concludes that while it is missing from the source code that was deposited, the source code for setting the DocHistoryIDs had already been developed.

### 1. Arguments

Zak argues that exclusion of Ms. Frederiksen-Cross' testimony is warranted because she did not investigate when the source code for setting the DocHistoryIDs was first written. More specifically, Zak takes issue with Ms. Frederiksen-Cross' testimony because she did not study the current 7Ware source code that was offered for inspection during discovery. According to Zak, the current 7Ware source code includes more files and procedures compared to the deposited source code and is "riddled" with date entries indicating that files were being created and modified after the critical date. Zak argues that because Ms. Frederiksen-Cross did not investigate the "other possible scenario" (i.e., that the source code for setting the DocHistoryIDs was first written after the critical date), exclusion is warranted because her testimony is unreliable

for lack of due diligence, failure to consider alternatives, and willful blindness.

Facebook argues that Ms. Frederiksen-Cross naturally would not have studied the current 7Ware source code because Facebook's burden is to show that the Document Library was ready for patenting before the critical date. Facebook also argues that the current 7Ware source code is unreliable for demonstrating exactly when the source code for setting the DocHistoryIDs was first written. More specifically, Facebook maintains that the 7Ware source code has never been stored in a "version control system" that keeps track of all changes over time. As to the date entries, Facebook maintains that it is not clear if they represent "created" or "last modified" dates.

Facebook also argues exclusion is not warranted because Ms. Frederiksen-Cross' testimony as a whole is reliable. More specifically, Facebook emphasizes that Ms. Frederiksen-Cross describes not just that the source code for setting the DocHistoryIDs is missing from the deposited source code, but the reasons why she nonetheless concludes that it had already been developed. Facebook also emphasizes that Ms. Frederiksen-Cross describes that in addition to the deposit materials, her conclusions are supported by other evidence concerning the functionality of the Document Library before the critical date. Facebook argues that because her testimony as a whole is reliable, Zak's concerns with Ms.

Frederiksen-Cross not having studied the current 7Ware source code are more properly directed to cross-examination.

## 2. Analysis

Initially, while Facebook's burden is to show that the Document Library was ready for patenting before the critical date, the Court disagrees with Facebook's suggestion that it is generally excusable that Ms. Frederiksen-Cross did not study the current 7Ware source code. In accordance with the Supreme Court's teachings in *Pfaff*, the Federal Circuit has held that "the on sale bar does not arise when there is 'additional development after the offer for sale.'" *Space Sys./Loral, Inc. v. Lockheed Martin Corp.*, 271 F.3d 1076, 1080-81 (Fed. Cir. 2001) (quoting *Pfaff*, 525 U.S. at 68 n.14). The Federal Circuit has explained that the Supreme Court made this statement in recognition that "[t]he fact that a concept is eventually shown to be workable does not retrospectively convert the concept into one that was 'ready for patenting' at the time of conception." *Id.* at 1080.

That being said, consistent with Facebook's argument concerning the reliability of the current 7Ware source code, Zak does not suggest that it explicitly demonstrates exactly when the source code for setting the DocHistoryIDs was first written. Rather, Zak takes issue with Ms. Frederiksen-Cross' testimony because she did not "see if the development history of this code could be determined." Zak's Mot. Br. 8, ECF No. 110 at PageID.4110.

Having considered the reliability of Ms. Frederiksen-Cross' testimony as a whole, the Court agrees with Facebook that exclusion is not warranted. Initially, Ms. Frederiksen-Cross describes not just that the source code for setting the DocHistoryIDs is missing from the deposited source code, but the reasons why she nonetheless concludes that it had already been developed. Moreover, Ms. Frederiksen-Cross describes that in addition to the deposit materials, her conclusions are supported by other evidence concerning the functionality of the Document Library before the critical date. For instance, Ms. Frederiksen-Cross cites evidence that EveryWare was marketing the Document Library at the time on the 7Ware web site, including offering full source code licenses, online tours, and online demonstrations. Moreover, Ms. Frederiksen-Cross cites Zak's interrogatory responses where Zak himself maintained that the deposited design specification describes how 7Ware practices the asserted claims. Facebook's Opp'n Br. 11 (reproducing sealed report), ECF No. 141 at PageID.8692.

In its *Daubert* gatekeeping role, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Ms. Frederiksen-Cross' testimony is "supported by more than subjective belief and unsupported speculation," and although she did not study the current 7Ware source code, such "mere weaknesses in the factual basis of an expert witness' opinion bear on the weight of the evidence rather than on its admissibility." *McLean*, 224

18

F.3d at 800-01. Accordingly, the Court finds that Zak's requested exclusion of Ms. Frederiksen-Cross' testimony is not warranted.

### B. Conclusion that Source Code was "Omitted"

As noted above, among other aspects of her testimony, Ms. Frederiksen-Cross concludes that the source code for setting the DocHistoryIDs was "omitted" from the deposited source code.

#### 1. Arguments

Zak argues that exclusion of Ms. Frederiksen-Cross' testimony is warranted because it is unreliable for going to matters of intent. Zak maintains that Ms. Frederiksen-Cross offers opinions that Zak "intentionally omitted" and "made a conscious decision" to "withhold" the source code for setting the DocHistoryIDs from the Copyright Office. Zak's Mot. Br. 13-14, ECF No. 110 at PageID.4115-4116. Facebook argues that exclusion is not warranted, first, because Zak's characterization of Ms. Frederiksen-Cross' testimony is "demonstrably false," and second, because Ms. Frederiksen-Cross' testimony reflects factual observations based on her technical knowledge and experience. Appearing to concede both these points, Zak argues in reply that by using the word "omitted," Ms. Frederiksen-Cross "implies a certain intent or state of mind." Zak's Reply Br. 4, ECF No. 150 at PageID.9417.

#### 2. Analysis

Having considered Ms. Frederiksen-Cross' testimony in context, the Court finds that exclusion is not warranted. Initially, Ms.

Frederiksen-Cross concludes that the source code for setting the DocHistoryIDs was "omitted" from the deposited source code after having first concluded that while the source code is missing, the missing source code had already been developed. Facebook explains that in the context registering copyrights to "computer programs" like 7Ware, it is not unusual for applicants to omit parts of the source code because they need only deposit the first and last twenty-five pages. *See* 37 C.F.R. § 202.20(2)(2)(vii)(A)(1). In her deposition, Ms. Frederiksen-Cross explains the same thing in the context of the deposited source code. Zak's Mot. Ex. 4 ("Frederiksen-Cross Deposition"), ECF No. 110-4. More specifically, Ms. Frederiksen-Cross explains that the deposited source code might not have been the "entire material," "which is not at all uncommon, you know, that's how copyright deposits are, it's a chunk of the copyrighted materials." Frederiksen-Cross Dep. 194:21-25, ECF No. 110-4 at PageID.4182.

In summary, despite her word choice, Ms. Frederiksen-Cross' testimony reflects factual observations based on her technical knowledge and experience. Accordingly, the Court finds that Zak's requested exclusion of Ms. Frederiksen-Cross' testimony is not warranted. To Zak's reply argument that Ms. Frederiksen-Cross' testimony might be prejudicial and leave the jury with a negative impression, the Court denies Zak's *Daubert* motion without prejudice to Zak seeking limiting

instructions at trial. *See* Zak's Reply Br. 4-5, ECF No. 150 at PageID.9417-9418.

## C. Use of Other Evidence

As noted above, among other aspects of her testimony, Ms. Frederiksen-Cross concludes that the Document Library was ready for patenting before the critical date. Moreover, Ms. Frederiksen-Cross describes that in addition to the deposit materials, her conclusions are supported by other evidence concerning the functionality of the Document Library before the critical date.

### 1. Arguments

As to the other evidence, Zak argues that exclusion of Ms. Frederiksen-Cross' testimony is warranted because it is not based on her technical knowledge and invades the province of the jury to decide issues of credibility, relevancy, and weight. Zak maintains that Ms. Frederiksen-Cross offers an opinion that Zak's testimony concerning certain problems with a later version of the Document Library "is irrelevant to the issue of whether the claimed invention was sold, offered for sale, and/or placed in public use" before the critical date. Zak's Mot. Br. 15-16, ECF No. 110 at PageID.4117-4118. Zak also maintains that Ms. Frederiksen-Cross offers opinions "on the credibility and relevancy of Zak's testimony" and "weigh[s]" Zak's testimony against Ms. Wilson's testimony "on the issue of when the Document Library application was first sold, offered for sale, and/or placed in public use." *Id.* 16, ECF No.

110 at PageID.4118. Zak argues that because Ms. Frederiksen-Cross is not a sales and marketing expert, exclusion is warranted because her purported testimony is not based on her technical knowledge and invades the province of the jury to decide issues of credibility, relevancy, and weight.

Facebook, disputing Zak's characterization of Ms. Frederiksen-Cross' testimony, argues that exclusion is not warranted. More specifically, Facebook maintains that as opposed to offering opinions on credibility, relevancy, or weight, Ms. Frederiksen-Cross describes Zak's testimony, Ms. Wilson's testimony, and other evidence, and explains whether they are consistent with, support, or otherwise impact her conclusions.

### 2. Analysis

Having considered Ms. Frederiksen-Cross' testimony in context, the Court finds that exclusion is not warranted. In the passages cited by Zak, Ms. Frederiksen-Cross addresses Zak's testimony, Ms. Wilson's testimony, and other evidence in two contexts. First, Ms. Frederiksen-Cross notes Zak's testimony concerning the problems with a later version of the Document Library. Here, Ms. Frederiksen-Cross does not, as Zak maintains, describe that *Zak's testimony* is irrelevant to whether the Document Library was *offered for sale* before the critical date. Rather, Ms. Frederiksen-Cross describes that the *problems* Zak describes are "irrelevant to the question of whether the earlier version of the Document

Library practices or teaches the '720 invention" (i.e., was *ready for patenting*) because they involved unclaimed functionality. Facebook's Opp'n Br. 14 (reproducing sealed report) (emphasis added), ECF No. 141 at PageID.8695. Second, Ms. Frederiksen-Cross cites Ms. Wilson's testimony and other evidence under the category of offer for sale evidence. Here, while addressing the offer for sale evidence, Ms. Frederiksen-Cross does not offer opinions on either whether the Document Library was offered for sale before the critical date or on credibility, relevancy, or weight. Rather, Ms. Frederiksen-Cross describes why the offer for sale evidence (1) demonstrates the functionality of the Document Library before the critical date and (2) therefore supports her conclusion that the Document Library was ready for patenting before the critical date.

In summary, despite addressing Zak's testimony and the offer for sale evidence, Ms. Frederiksen-Cross does not offer opinions on either whether the Document Library was offered for sale before the critical date or on credibility, relevancy, or weight. Accordingly, the Court finds that Zak's requested exclusion of Ms. Frederiksen-Cross' testimony is not warranted. However, the Court observes that when addressing the offer for sale evidence, Ms. Frederiksen-Cross does at times state as a matter of fact that there is evidence that the Document Library was offered for sale before the critical date. Accordingly, the Court denies Zak's *Daubert* motion without prejudice to Zak seeking limiting instructions at trial.

### D. Application of the Term "Configurable Link"

At the claim construction stage of this case, the Court construed "configurable link" to mean "a mechanism by which a user of a web site activates an application, where the mechanism can be modified or configured by the user as permitted by any relevant business rules." *See supra* Section III(C) (summarizing the constructions of record). As to Ms. Frederiksen-Cross' and Dr. Mangione-Smith's testimony, following the claim construction stage of this case, a number of disputes have emerged between the parties concerning how to read the Court's construction together with the claim language. The parties frame the disputes in terms of whether exclusion of Ms. Frederiksen-Cross' and Dr. Mangione-Smith's testimony is warranted because they have "misapplied" the Court's construction. *See*, *e.g.*, *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (affirming exclusion of expert testimony based on an incorrect claim construction).

Notably, the parties did not raise any issues concerning the claim language at the claim construction stage of this case. Rather, in the context of the term in isolation, the Court adopted stipulated language from the parties' proposed constructions. The Court noted its assumption that the parties merely intended for the stipulated language to incorporate the "link" and "configurable link" definitions from the specification. *Markman* Order 11-13, ECF No. 97 at PageID.3178-3180.

*See also* '720 Patent 5:53-54 (defining "link"), 5:62-64 (defining "configurable link"), ECF No. 141-2 at PageID.8727.

### 1. Arguments

In their *Daubert* motions, Zak and Facebook attribute the following allegedly improper testimony to each other's technical experts:

> <u>Zak's characterization of Facebook's technical expert Ms. Frederiksen-Cross' testimony:</u> a link can be a "configurable link" if it is "generated or not based on user configurable access rights" and is "otherwise configurable by a user in some way," e.g., if it "includes a parameter that can be modified or configured by any user action"

> <u>Facebook's characterization of Zak's technical expert Dr. Mangione-Smith's testimony:</u> a configurable link must "include or incorporate information concerning a user profile and user-configurable business rule" and must "change if the business rule changes"

Zak's Mot. Br. 18-20, ECF No. 110 at PageID.4120-4122; Facebook's Mot. Br. 9 (emphasis omitted), 13 (emphasis omitted), ECF No. 127 at PageID.7159, 7163.

As to Ms. Frederiksen-Cross, Zak argues that exclusion is warranted because her testimony is unreliable for divorcing the stipulated language from the claim language. As to Dr. Mangione-Smith, Facebook argues that exclusion is warranted because his testimony is unreliable for adding limitations, excluding a "static code program"

embodiment from the specification, violating the doctrine of claim differentiation, inconsistency with the specification's description of "configuring" applications, and inconsistency with dictionary definitions of "configure."

However, in their opposition arguments, Facebook and Zak dispute the allegedly improper testimony attributed to their technical experts. In their place, Facebook and Zak attribute the following allegedly proper testimony to their own technical experts:

> Facebook's characterization of its own technical expert Ms. Frederiksen-Cross' testimony: a URL is a "configurable link" if the "URL as a whole is configured as a result of a user taking actions that determine the particular GroupID that will be included in the URL"

> Zak's characterization of its own technical expert Dr. Mangione-Smith's testimony: a link is a "configurable link" if its "alpha-numeric string changes when a user-configurable distribution rule changes" or if "new links with different alpha-numeric strings are created when a user-configurable distribution rule changes," but not if its parameters "are not constructed or modified based at least in part on a user configurable content distribution rule," i.e., if its "make-up does not depend in any way on a user configurable content distribution rule"

Facebook's Opp'n Br. 20, ECF No. 141 at PageID.8701; Zak's Opp'n Br. 5, 9, ECF No. 140 at PageID.8664, 8668.

26

## 2. Analysis

As their positions on the exclusion of Ms. Frederiksen-Cross' and Dr. Mangione-Smith's testimony imply, the parties have raised a number of disputed issues of claim construction. Having considered the written briefs and the intrinsic evidence, the Court finds that resolution of the disputed issues of claim construction is not appropriate on the parties' *Daubert* motions.

At the outset, the stipulated language is not a formal construction by the Court. Accordingly, it does not invite analysis of whether Ms. Frederiksen-Cross and Dr. Mangione-Smith have "misapplied" the Court's construction. To the extent the parties agreed on the stipulated construction language without foreseeing issues concerning how to read it together with the claim language, the disputed issues of claim construction are problems of their own making.

In any event, the Court adopted the stipulated language in the context of the term in isolation. In contrast, in their *Daubert* motions, the parties have raised two types of issues concerning the claim language. First, the parties have raised issues concerning the relationships between the stipulated language and the claim language. Second, the parties have raised issues concerning the differences between variations of the claim language that appear throughout the asserted claims.

For example, the stipulated language, representative Claim 2, dependent Claim 6, and independent Claim 7—each cited by both parties—recite in relevant part:

> Stipulated Language: "where the mechanism can be ***modified*** ***or*** ***configured*** by a user as permitted by ***any relevant business rules***"

> Representative Claim 2: "wherein the at least one configurable link is ***generated*** by the computer ***based*** at least in part ***on*** a profile attributed to at least one user of the system and at least one ***rule that is configurable*** by a user acting in the role of an administrator and which applies user profiles to select what content stored on the computer can be viewed by which of the users of the system"

> Dependent Claim 6: "wherein the at least one configurable link ***includes*** information concerning a user profile and ***information relating to*** which of the users of the system are permitted to view the configurable application to which the configurable link points"

> Independent Claim 7: "wherein the configurable link is ***based on information concerning*** a profile of at least one user of the system and a ***rule that is configurable*** by a user acting in the role of an administrator and that relates to which of the users of the system are permitted to view content of the configurable application to which the configurable link points"

*Markman* Order 11-12 (emphasis added), ECF No. 97 at PageID.3178-3179; '720 Patent 23:14-20 (representative Claim 2) (emphasis added), 23:39-43 (dependent Claim 6) (emphasis added), 24:6-13 (independent Claim 7) (emphasis added), ECF No. 141-2 at PageID.8736.

According to the stipulated language, the configurable link can be not only "configured," but also "modified," as permitted by any "relevant" business rules. On the other hand, according to the language of the individual asserted claims, the configurable link is worded as being "generated . . . based . . . on" (Claim 2), being "based on information concerning" (Claim 7), or as "includ[ing] . . . information relating to" (Claim 6) the configurable access rule.

Summing up their arguments in the written briefs, the parties basically ask the Court to (1) reconcile all of the correlations or relationships between the stipulated language and the claim language and (2) reconcile all of the differences between the variations of the claim language in the different asserted claims. It appears that to resolve the disputed issues of claim construction, the Court must determine whether the stipulated claim construction language accurately construes the claim language in the first place. However, there are significant disagreements between the parties on the proper application of the stipulated language, which cannot be resolved without a more exact claim construction. Turning to the language of the various asserted claims, it appears that the Court must determine the differences in

meaning, if any, between the configurable link being generated based on the configurable access rule (Claim 2), the configurable link being based on information concerning the configurable access rule (Claim 7), and the configurable link including information relating to the configurable access rule (Claim 6).

The parties do not cite, and the Court's review has not identified, any clear guidance in the specification as to either the relationships between the stipulated language and the claim language or the differences between the variations of the claim language. For example, in a section on links, the specification describes that they can include "any necessary parameters and formatting." In the case of configurable links, in addition to providing the "configurable link" definition, the specification describes that they can be a "static code program." '720 Patent 5:51-65, ECF No. 141-2 at PageID.8727. However, the specification does not, in this section or elsewhere, provide any examples of actual configurable links, and does not describe any technical details concerning their parameters, formatting, modification, configuration, or programming.

Moreover, to the extent it describes processes for generating configurable links, the specification does not speak in terms of the configurable access rule. Rather, the specification describes that users enter unspecified "inputs," "content," or "information," and that everything else happens "automatically." *Id.* Abstract (links

"automatically" created "without human intervention"), 2:28-30 (links "created and configured . . . in an automated fashion"), 5:58-59 (links "managed automatically . . . without human intervention"), 9:28-30 (interface system captures "various inputs" used to "automatically create" configurable links), 10:47-50 (interface subsystem captures link "content"), 10:51-55 (applications "automatically" created, modified, or deleted and links to created, modified, or deleted applications "similarly" created, modified, or deleted), 11:1-5 (computer "houses the logic for the automated application and link generation process"), 14:32-33 (users enter link "information"), ECF No. 141-2 at PageID.8711, 8725, 8727, 8729-8731.

The Court also notes that despite asking the Court to resolve the disputed issues of claim construction in their *Daubert* motions, the written briefs do not adequately inform this task. First, as opposed to offering concrete proposed constructions of specific terms, the parties direct their arguments to collections of allegedly improper and proper testimony concerning the stipulated language and/or entire blocks of claim language. Second, as opposed to the '720 Patent's configurable links, the parties direct their arguments to the alleged configurable links in 7Ware and the Rasansky and LiveJournal prior art references.

In summary, resolution of the disputed issues of claim construction is not appropriate on the parties' *Daubert* motions. At oral argument, both parties declined the invitation to obtain formal constructions by the

31

Court. Mot. Hr'g Tr. 105:24-107:15 (responses to questioning by the Court's Technical Advisor Christopher G. Darrow), ECF No. 162 at PageID.10287-10289.

The Court has, however, given carful consideration to the written briefs, the technical expert testimony, and the intrinsic evidence. As opposed to the allegedly improper testimony that Zak and Facebook attribute to each other's technical experts in their *Daubert* motions, the Court generally agrees with the allegedly proper testimony that Facebook and Zak attribute to their own technical experts in their opposition arguments. In other words, for the reasons set forth in their opposition arguments, the Court generally agrees with Facebook's above characterization of its own technical expert Ms. Frederiksen-Cross' testimony, and Zak's above characterization of its own technical expert Dr. Mangione-Smith's testimony. In the absence of formal constructions by the Court, the stipulated claim construction language and the actual claim language invite open-ended interpretations of claim scope, and Facebook's and Zak's above characterizations of Ms. Frederiksen-Cross' and Dr. Mangione-Smith's testimony cannot be said to be facially inconsistent with the intrinsic evidence.

Accordingly, the Court finds that as to their applications of the stipulated language, both Ms. Frederiksen-Cross' and Dr. Mangione-Smith's testimony are reliable. Therefore, neither Zak's requested exclusion of Ms. Frederiksen-Cross' testimony nor Facebook's requested

exclusion of Dr. Mangione-Smith's testimony is warranted. To the extent Ms. Frederiksen-Cross and Dr. Mangione-Smith offer specific testimony before the jury that materially deviates from Facebook's and Zak's above characterizations, the Court denies the parties' *Daubert* motions without prejudice to the parties seeking appropriate relief at trial. Otherwise, since the parties have chosen to move forward in the absence of formal constructions by the Court, any issues as to Ms. Frederiksen-Cross' and Dr. Mangione-Smith's applications of the stipulated language are questions of fact for the jury.

## VII. CONCLUSION

For the reasons stated in this opinion and order, the Court will **DENY** Zak's *Daubert* motion to exclude certain testimony of Ms. Frederiksen-Cross, and **DENY** Facebook's *Daubert* motion to exclude certain testimony of Dr. Mangione-Smith.

**SO ORDERED.**

Dated: September 30, 2021

s/Terrence G. Berg
_____
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on September 30, 2021.

s/A. Chubb
_____
Case Manager

33