UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **BRUCE ZAK,**<br>an individual,<br><br><br>                    Plaintiff,<br><br>     vs.<br><br>**FACEBOOK, INC.,**<br>a Delaware corporation,<br><br>                    Defendant. | **4:15-CV-13437-TGB-MJH**<br><br><br>**OPINION AND ORDER GRANTING IN PART ZAK'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON CERTAIN OF FACEBOOK'S INVALIDITY DEFENSES (AS TO PATENT ELIGIBILITY) (ECF NOS. 111, 143, 148) AND DENYING FACEBOOK'S RENEWED AND AMENDED MOTION FOR RECONSIDERATION OF FACEBOOK'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 101 (ECF NOS. 128, 132, 157)** |

     In this patent infringement case, Plaintiff Bruce Zak ("Zak") alleges that Defendant Facebook, Inc. ("Facebook") infringes a patent on Zak's web site technology, U.S. Patent No. 9,141,720 (the "'720 Patent").

Presently before the Court are the parties' cross-motions for summary judgment regarding patent eligibility.[1,2] The parties have submitted written briefs explaining their positions on patent eligibility.[3] The Court held oral argument on August 13, 2021. *See* Notice of Mot. Hr'g, ECF No. 158; Mot. Hr'g Tr., ECF No. 162. For the reasons stated in this opinion and order, finding that representative Claim 2 of the '720 Patent recites patent eligible subject matter, the Court will **GRANT** in part Zak's motion for partial summary judgment dismissing Facebook's

---

[1] Facebook's Motion is before the Court as a motion for reconsideration under Local Rule 7.1(h)(3). For the reasons set forth below, *see infra* Section III, the Court will treat Facebook's Motion as a new motion for summary judgment of patent ineligibility.

[2] Zak also moves for partial summary judgment dismissing Facebook's affirmative defenses of an on-sale bar and obviousness as to certain prior art combinations. Because both parties have moved for summary judgment regarding patent eligibility, the Court will decide Zak's Motion as to patent eligibility in this opinion and order, and as to the remaining grounds in a separate opinion and order.

[3] Pl.'s Mot. Partial Summ. J. Def.'s Invalidity Defenses ("Zak's Motion"), ECF No. 111; Def.'s Opp'n Pl.'s Mot. Partial Summ. J. Def.'s Invalidity Defenses ("Facebook's Opposition"), ECF No. 143; Pl.'s Reply Supp. Mot. Partial Summ. J. Def.'s Invalidity Defenses ("Zak's Reply"), ECF No. 148; Def.'s Renewed & Am. Mot. Recons. Def.'s Mot. Summ. J. Invalidity Under 35 U.S.C. § 101 ("Facebook's Motion"), ECF No. 128; Pl.'s Opp'n Def.'s Renewed & Am. Mot. Recons. Def.'s Mot. Summ. J. Invalidity Under 35 U.S.C. § 101 ("Zak's Opposition"), ECF No. 132; Def.'s Reply Supp. Renewed & Am. Mot. Recons. Def.'s Mot. Summ. J. Invalidity Under 35 U.S.C. § 101 ("Facebook's Reply"), ECF No. 157.

affirmative defenses as to patent eligibility, and **DENY** Facebook's motion for summary judgment of patent ineligibility.

## I. PROCEDURAL HISTORY

The '720 Patent, entitled "System and Method for Managing Content on a Network Interface," was filed in the United States Patent and Trademark Office ("USPTO") on July 11, 2014 and issued on September 22, 2015. The '720 Patent is a third-generation continuation in a patent "family" whose original "parent" application was filed on February 12, 2003. *See generally* Zak's Mot. Ex. 1 ("'720 Patent"), ECF No. 111-2.

On September 29, 2015, Zak filed this patent infringement case against Facebook, originally alleging that Facebook infringes the '720 Patent and another member of the same patent family, U.S. Patent No. 8,713,134 (the "'134 Patent"). Pl.'s Compl., ECF No. 1. On August 30, 2016, by stipulation of the parties, Zak's infringement claims as to the '134 Patent were dismissed with prejudice. Stipulation, ECF No. 31; Order Granting Stipulation, ECF No. 32. Zak alleges that Facebook infringes Claims 2-13 of the '720 Patent in connection with its ubiquitous Facebook and Instagram web sites and native apps. Facebook answered on November 30, 2015, alleging that the '720 Patent is invalid and denying that it infringes the '720 Patent. Def.'s Answer, ECF No. 9.

On September 12, 2016, the Court denied Facebook's original motion for summary judgment of patent ineligibility, holding that

representative Claim 2 of the '720 Patent recites patent eligible-subject matter. Op. & Order Den. Def.'s Mot. Summ. J. ("Original Order"), ECF No. 36.

In response to this lawsuit, Facebook filed four petitions before the USPTO's Patent Trial and Appeal Board ("PTAB") seeking to challenge the non-obviousness of certain claims of the '720 Patent through a process known as *inter partes review* ("IPR"). On April 4, 2017, the PTAB denied Facebook's IPR petitions, and no IPRs were instituted. *See Facebook, Inc. v. Zak*, Nos. IPR2017-00002, IPR2017-00003, IPR2017-00004, IPR2017-00005 (P.T.A.B. Apr. 4, 2017).

On October 12, 2018, the parties filed a joint stipulation on the constructions of some claim terms within the '720 Patent. Stipulation, ECF No. 70. On February 6, 2020, the Court issued an order construing the disputed claim terms within the '720 Patent that are material to the infringement and validity issues in this case, pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). Order Construing Disputed Claim Limitations ("*Markman* Order"), ECF No. 97.

## II. BACKGROUND

The Court provided an extensive background of the facts of this case in its original summary judgment order and elsewhere. *See* Original Order (reported at *Zak v. Facebook, Inc.*, 206 F. Supp. 3d 1262 (E.D. Mich. 2016)), ECF No. 36; *Markman* Order (reported at *Zak v. Facebook, Inc.*, 2020 WL 589433 (E.D. Mich. Feb. 6, 2020)), ECF No. 97. In summary,

plaintiff Bruce Zak[4] was a skilled computer programmer who left his job at Microsoft in the early 2000s to start a new company in Michigan called EveryWare, Inc. ("EveryWare"). EveryWare was formed around 7Ware, a software product developed by Zak with input from coinventor Regina Wilson (who at the time of the invention was Regina Zak, Bruce Zak's wife). The original parent application of the '720 Patent was filed on 7Ware on February 12, 2003.

## III. RECONSIDERATION

Facebook's Motion is before the Court as a motion for reconsideration under Local Rule 7.1(h)(3). *See* Original Order, ECF No. 36. The Court is not persuaded that Facebook has established grounds for reconsideration. In general, Facebook seeks reconsideration alleging newly available evidence and an intervening change in the controlling law on patent eligibility. As to the first ground, the new evidence is a report from Facebook's technical expert on validity. In the report, Facebook's technical expert describes decades-old web site technology in view of the original parent application's February 12, 2003 filing date. Although this report may be new, its content is not "newly available." Newly researched might be the better way to put it. And, in supporting its position entirely with this newly researched evidence, Facebook cannot be said to be seeking "reconsideration." Accordingly, the Court will treat Facebook's Motion as a new motion for summary judgment of

---

[4] Mr. Zak passed away at the age of 55 on July 14, 2021.

patent ineligibility based on new evidence. As to the second ground—intervening change in the controlling law—the most controlling law on patent eligibility, namely, Supreme Court precedent, has not changed.

But the Court need not address these points in detail because it will decide Facebook's Motion in the exercise of its discretion. *See* E.D. Mich. LR 7.1(h)(3) (setting forth grounds for reconsideration "[g]enerally, and without restricting the court's discretion"). The reasons are simple. First, Zak's Motion is based on the same new evidence as Facebook's Motion. Accordingly, there is little judicial economy to be gained by declining to decide Facebook's Motion for lack of newly available evidence. Second, while the most controlling law on patent eligibility has not changed, the Court is mindful that the Federal Circuit has decided many patent eligibility cases in the five years since the Court's Original Order. Having considered the cases cited by Facebook, it is clear that the Federal Circuit has provided further guidance on applying Supreme Court precedent in an area of patent law that was still under development at the time of the Court's Original Order. Accordingly, Facebook's discussion of these cases and their applicability to this case is helpful to the Court and will be considered.

## IV. '720 PATENT

### A. Patented System

The '720 Patent is directed to a system for managing web site content. The specification contemplates that prior to the '720 Patent,

existing web site technology was focused on creating advanced features. These advanced features required technical personnel with increasingly sophisticated levels of expertise in the information technology used to manage web sites. According to the specification, existing web site technology thus created problems with keeping web sites up to date. Even for large entities with substantial resources, there might be a limited number of technical personnel. Moreover, technical personnel might not be best situated to manage web sites from a content standpoint. Accordingly, even routine content management might require multiple interactions and communications between different personnel in different roles. The specification contemplates that the key to solving these problems is customizable and automated features that would allow non-technical users to control the information technology used to manage web sites. Allowing non-technical users to manage content without the assistance and intervention of technical personnel saves time, resources, and the possibility of errors, and supports the allocation of content responsibilities. '720 Patent 1:13-2:15, ECF No. 111-2 at PageID.4247.

**B. Claims**

The parties have agreed that for purposes of patent eligibility, Claim 2 of the '720 Patent is representative of the asserted claims. Representative Claim 2 recites:

> **2**. A system, including a computer and a web
> site, for managing content displayable on the web

site to multiple users of the system who have profiles stored on the system, comprising:

at least a first configurable application and a second configurable application, wherein each of the first and second configurable applications includes content that is stored on the computer and that is displayable to the users of the web site, and wherein one of the applications is a biography application that is managed by the computer and that displays biographical information that is received from and that is about one of the users of the system;

wherein at least one of the configurable applications is generated by the computer at least in part based on inputs received from multiple users of the system, the inputs including at least one of text, graphics, sounds, documents, and multi-media content;

an administrator portal through which users of the system are permitted to act in the role of an administrator of certain web pages, wherein a user acting in the role of an administrator may manage business rules that utilize profiles of the users of the system to control interaction of the users with the certain web pages, wherein each user of the system is permitted to act in the role of an administrator at least with respect to a subset of web pages on the web site; and

at least one configurable link on the web site that points to at least one of the plurality of configurable applications,

wherein the at least one configurable link is generated by the computer based at least in part on a profile attributed to at least one user of the system and at least one rule that is configurable by a user acting in the role of an administrator and which applies user profiles to select what content

8

> stored on the computer can be viewed by which of
> the users of the system.

*Id.* 22:52-23:20, ECF No. 111-2 at PageID.4257-4258.

Stripped of excess verbiage, representative Claim 2 recites a computer-based system for managing user interaction with web site content. In addition to the computer and the web site, the claim language involves user profiles, configurable applications, configurable business rules, configurable access rules, and configurable links. More specifically, the claim language centers on the relationship between a configurable application whose content is stored on the computer and displayable to users, a configurable access rule that applies user profiles to select what content can be viewed by which users, and a configurable link on the web site that points to the configurable application. According to the claim language, the configurable application is generated by the computer based on user inputs. Zak identifies the configurable link "in particular" as a point of novelty over the prior art. Zak's Mot. Br. 11, ECF No. 111 at PageID.4215. According to the claim language, the configurable access rule is configurable by an administrator via an administrator portal, and the configurable link is generated by the computer based on a user profile and the configurable access rule.

## C. Constructions

With respect to the various terms in representative Claim 2, the constructions of record largely incorporate generic definitions and

descriptions from the specification. By stipulation of the parties, "profile," "user profile," and "profile information" mean "information about a user of the website." "Application" means "a unit of content provided on a web site" and "configurable application" means "an application that can be modified and/or configured by a user of the web site." "Business rule(s)" and "rule" mean "any rule incorporated into a system that controls how the system functions." "Administrator portal" means "interface used to manage applications and/or business rules" and "administrator" means "any user of the web site that has the ability to create, update, delete, and/or schedule a business rule of the web site." Stipulation 1-2, ECF No. 70 at PageID.1833-1834. *See also* '720 Patent 10:27-28 (describing a "profile"), 5:20-21 (defining "application"), 5:45-46 (defining "configurable application"), 8:29-30 (defining "business rule"), 7:20-22 (describing an "administrator portal"), 9:22-27 (describing an "administrator"), ECF No. 111-2 at PageID.4249-4251.

At the claim construction stage of this case, among other terms in representative Claim 2, the parties requested that the Court construe the term "configurable link." The Court construed the term to mean "a mechanism by which a user of a web site activates an application, where the mechanism can be modified or configured by the user as permitted by any relevant business rules." *Markman* Order 11-12, ECF No. 97 at PageID.3178-3179. *See also* '720 Patent 5:53-54 (defining "link"), 5:62-64 (defining "configurable link"), ECF No. 111-2 at PageID.4249. As noted

above, according to the claim language, the configurable access rule is configurable by an administrator, and the configurable link is generated by the computer based on a user profile and the configurable access rule. Put together with the Court's construction, Zak reads the claim language as reciting that the configurable link can be modified or configured by an administrator by modifying or configuring the configurable access rule. Zak's Opp'n Br. 10 n.1, ECF No. 132 at PageID.7526.

## V. LEGAL STANDARDS

"Summary judgment is as available in patent cases as in other areas of litigation." *Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed. Cir. 1991).

### A. Standard for Summary Judgment

Under Rule 56, summary judgment is proper when there is "no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534,

1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

In order to succeed on its motion for summary judgment, the moving party must show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322. The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton*, 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment—the disputed factual issue must be material. "The judge's inquiry, therefore, unavoidably asks

whether reasonable jurors could find . . . that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'" *Id.* at 252 (alteration in original) (citation omitted). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

## B. Patent Eligibility

The Patent Act establishes invalidity as a defense to infringement. 35 U.S.C. § 282(b). Under an invalidity defense, an accused infringer can "attempt to prove that the patent never should have issued in the first place." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 96 (2011). A patent enjoys a statutory presumption of validity, and the party asserting invalidity must prove invalidity by clear and convincing evidence. 35 U.S.C. § 282(a); *Microsoft*, 564 U.S. at 95.

A claim of a patent is invalid if it is not directed to patent eligible subject matter pursuant to 35 U.S.C. § 101. Section 101 provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. But the Supreme Court has held that the statutory definition of patent-eligible subject matter includes an implicit exception for laws of nature, natural phenomena, and abstract

ideas. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The judicial exception is driven by a concern of preemption. *Id.* Laws of nature, natural phenomena, and abstract ideas are not patent-eligible because they are "building blocks of human ingenuity." *Id.* at 217. In determining patent eligibility, courts must distinguish between patents that "claim the building blocks" and those whose claims "integrate the building blocks into something more." *Id.* Courts must "tread carefully" lest the judicial exception "swallow all of patent law." *Id.* It is not enough that the claims "involve" a patent-ineligible concept because "[a]t some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* (quotation, alteration, and citation omitted).

The Supreme Court has articulated a two-step framework for determining patent eligibility. *See id.* at 217-18 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72-73, 77-79 (2012)). At step one, courts must determine whether the claims are "directed to" a patent-ineligible concept, such as an abstract idea. *Id.* at 218. If the claims are directed to a patent-ineligible concept, at step two, courts must consider the claim elements "both individually and as an ordered combination" to determine whether the claims contain "additional elements" that constitute an "inventive concept" sufficient to "transform" the concept into a patent-eligible "application." *Id.* at 217-18 (quotation and citation omitted). These "additional elements" must

14

involve more than performance of "well-understood, routine, conventional activities previously known to the industry." *Id.* at 225 (quotation and citation omitted).

Patent eligibility is a question of law based on underlying factual findings. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). At step two, the determination of whether the claims contain an inventive concept is a question of law that may be informed by factual determinations of whether a claim element or combination of claim elements was well-understood, routine, and conventional. *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (citing *Berkheimer*, 881 F.3d at 1368). Any fact concerning whether a claim element or combination of claim elements was well-understood, routine, and conventional must be proven by clear and convincing evidence. *Berkheimer*, 881 F.3d at 1368 (citing *Microsoft*, 564 U.S. at 95). When there is no genuine dispute as to any material fact concerning whether a claim element or combination of claim elements was well-understood, routine, and conventional, the legal determination of whether the claims contain an inventive concept can be decided on summary judgment as a matter of law. *Id.*

## VI. PATENT ELIGIBILITY ANALYSIS

In their motions for summary judgment, Zak moves for summary judgment dismissing Facebook's affirmative defense of patent

ineligibility, and Facebook moves for summary judgment that the asserted claims are invalid for lack of patent eligibility.

### A. Original Order

In the Original Order, the Court held that representative Claim 2 of the '720 Patent recites patent eligible subject matter. Original Order, ECF No. 36. At step one, the Court determined that representative Claim 2 is directed to the abstract idea of "group collaboration with targeted communication and restricting public access" and "does not clearly improve the functioning of a computer." *Id*. 16, ECF No. 36 at PageID.895. At step two, however, the Court noted that the claim language "does not simply dictate that communication must be targeted and access restricted." *Id*. 21, ECF No. 36 at PageID.900. The Court determined that representative Claim 2 contains an inventive concept because it and its claim elements "recite a specific, discrete implementation of the abstract idea." *Id*. (quoting *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016)).

The parties do not ask the Court to revisit its previous step one determination. The dispute between the parties concerns whether new evidence on the web site technology existing at the time of the invention bears on the Court's previous step two determination that representative Claim 2 contains an inventive concept. As will become clear from the below discussion of their positions on patent eligibility, the parties focus on the configurable link.

16

## B. New Evidence

The new evidence is a report from Facebook's technical expert on validity, Dr. Weissman. Zak's Mot. Ex. 3 ("Weissman Report"), ECF No. 111-4. On the issue of patent eligibility, Dr. Weissman concludes that the asserted claims are not directed to an improvement in web site technology because they "recite no more than functional results using routine and conventional technologies and techniques." Weissman Report ¶¶ 488, 495, ECF No. 111-4 at PageID.4646, 4658. Zak's technical expert on validity, Dr. Mangione-Smith, has not rebutted Dr. Weissman's testimony on patent eligibility. Facebook's Mot. Ex. 3 ("Mangione-Smith Rebuttal Report"), ECF No. 128-4.

Dr. Weissman testifies that the web site technology existing at the time of the invention "enabled users to provide content to a web site and configure rules that used user information to control users' interaction with that site and content" and "provided functionality for receiving and storing content and for retrieving that content to generate web pages." Weissman Report ¶¶ 489-90, ECF No. 111-4 at PageID.4646-4655. Dr. Weissman also describes that "URLs that were configurable or modifiable by a user and that included or were generated based on user action or information were commonplace." *Id.* ¶ 491, ECF No. 111-4 at PageID.4655-4656. For example, Dr. Weissman describes that Yahoo! Calendar allowed users to create and share events, and used URLs that included date, time, and title information input by the users who created

17

the events to identify the events and enable other users to view them. *Id.* ¶¶ 489, 491, ECF No. 111-4 at PageID.4646-4656. Dr. Weissman also describes that shopping web sites used URLs that included unique shopping IDs or user IDs to identify users. *Id.* ¶ 493, ECF No. 111-4 at PageID.4657-4658.

### C. Arguments

Zak does not dispute that Dr. Weissman's testimony is unrebutted. Nor does Zak dispute Dr. Weissman's description of existing web site technology. Put in terms of the claim language, there does not appear to be a genuine dispute that user profiles, configurable applications, configurable business rules, configurable access rules, and configurable links were individually well-understood, routine, and conventional. Moreover, there does not appear to be a genuine dispute that these items were conventionally used to some degree in combination to manage user interaction with web site content.

Zak nonetheless argues that Facebook's patent ineligibility defense fails as a matter of law. As noted above, Zak identifies the configurable link "in particular" as a point of novelty over the prior art. Zak's Mot. Br. 11, ECF No. 111 at PageID.4215. Zak emphasizes that according to the claim language, the configurable link is generated by the computer based on a user profile and the configurable access rule. While appearing to accept that the URLs described by Dr. Weissman are generated based on user profiles, Zak argues that they are not generated based on

18

configurable access rules. Zak takes issue with Dr. Weissman's testimony for addressing the configurable link's claim elements "individually" because the "decision to include particular information" in the configurable link "is itself an ordered combination." *Id*. 14, ECF No. 111 at PageID.4218.

It follows, Zak argues, that Facebook's patent ineligibility defense fails as a matter of law for lack of evidence that the ordered combination of the configurable link's claim elements was well-understood, routine, and conventional. *See id*. 14-15 (arguing that the lack of evidence on "this particular ordered combination" is "fatal to Facebook's § 101 defense"), ECF No. 111 at PageID.4218-4219. Zak also argues that, in any event, Facebook cannot prevail on summary judgment because the PTAB's non-obviousness findings create a genuine dispute on this point. *See* Zak's Opp'n Br. 21-23 (arguing that the PTAB's non-obviousness findings are "compelling evidence" that the ordered combination of the configurable link's claim elements was not well-understood, routine, and conventional), ECF No. 132 at PageID.7537-7539.

Facebook does not dispute that the URLs described by Dr. Weissman are not generated based on configurable access rules. Likewise, Facebook does not dispute the lack of evidence that the ordered

combination of the configurable link's claim elements was well-understood, routine, and conventional.[5]

However, as to Zak's argument that its patent ineligibility defense therefore fails as a matter of law, Facebook argues that Zak misstates the law on the step two determination. The Court agrees. The Federal Circuit has explained that whether the ordered combination of the configurable link's claim elements was well-understood, routine, and conventional is not the "appropriate question." *See Chamberlain Grp., Inc. v. Techtronic Indus.*, 935 F.3d 1341, 1348-49 (Fed. Cir. 2019). Rather, there are "two distinct questions": (1) the underlying factual determination of whether the configurable link's claim elements were individually well-understood, routine, and conventional, and (2) the legal determination of whether the configurable link's claim elements as an ordered combination constitute an inventive concept or instead add

---

[5] It is more accurate to say that the Court is not persuaded that Facebook *genuinely* disputes these points. In response to the Court's questioning at oral argument, Facebook argued that the date and time information in the Yahoo! Calendar URLs is "enough" because "the claims . . . just say use a business rule" and "the patent that tells us that a business rule is any rule incorporated into the system that controls how the system functions." Mot. Hr'g Tr. 39:13-40:10, ECF No. 162 at PageID.10221-10222. However, as opposed to a configurable business rule in general, the claim language specifically involves the configurable access rule—i.e., that "which applies user profiles to select what content stored on the computer can be viewed by which of the users of the system." '720 Patent 23:14-20, ECF No. 111-2 at PageID.4258.

nothing to the abstract idea not already present when they are considered separately. *See id.* (citing *Mayo*, 566 U.S. at 73, 79).

Facebook argues that as opposed to improperly addressing the legal determination, Dr. Weissman's testimony properly addresses the underlying factual determination. The Court agrees. As Facebook explains, Dr. Weissman's testimony demonstrates that user profiles, configurable access rules, and configurable links were individually well-understood, routine, and conventional, and conventionally used to some degree in combination. *See* Facebook's Opp'n Br. 15 (arguing that "Dr. Weissman not only showed that the claimed features were well-known individually, but explained how those feature [*sic*, features] were actually conventionally used in combination with each other through well-known systems and technologies"), ECF No. 143 at PageID.8977.

With respect to the PTAB's non-obviousness findings, Facebook argues that they are irrelevant because novelty and non-obviousness are distinct from patent eligibility. If Zak was relying on the PTAB's non-obviousness findings to imply that the configurable link's claim elements as an ordered combination constitute an inventive concept, the Court would agree that they are irrelevant. This is the very point the Federal Circuit was illustrating in *Chamberlain*. *Chamberlain*, 935 F.3d at 1348-49; *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (explaining that it is not "enough for subject-matter eligibility that claimed techniques be novel and nonobvious in light of prior art,

passing muster under 35 U.S.C. §§ 102 and 103") (collecting cases). But Zak relies on the PTAB's non-obviousness findings for the stated purpose of creating a genuine dispute concerning whether the ordered combination of the configurable link's claim elements was well-understood, routine, and conventional. Although Facebook does not address Zak's reason for relying on the PTAB's non-obviousness findings, the Court nonetheless agrees that they are irrelevant. The PTAB's non-obviousness findings do not create a genuine dispute for the simple reason that they were not made in light of Dr. Weissman's references. *Compare* Zak's Mot. Br. 11-12 n.2 (noting that Facebook's IPR petitions were based on "Boyce," "Weiss," and "Bezos" references), ECF No. 111 at PageID.4215-4216, *with* Weissman Report ¶¶ 489-90, 493 (describing "Hill," "Neibauer," and "Morgan" references), ECF No. 111-4 at PageID.4646-4655, 4657-4658.

### D. Step Two Determination

For the reasons set forth below, the Court finds that the new evidence does not raise any genuine dispute as to any material fact. Moreover, the Court finds that representative Claim 2 contains an inventive concept as a matter of law and therefore recites patent eligible subject matter. Zak is therefore entitled to summary judgment dismissing Facebook's affirmative defense of patent ineligibility.

Given Dr. Weissman's unrebutted testimony, the Court accepts that user profiles, configurable access rules, and configurable links were

individually well-understood, routine, and conventional. As well, the Court accepts that these items were conventionally used to some degree in combination to manage user interaction with web site content. At the same time, given that Facebook does not genuinely dispute the lack of evidence on this point, the Court accepts that the ordered combination of the configurable link's claim elements—i.e., that the configurable link is generated by the computer based on a user profile and the configurable access rule—was not well-understood, routine, and conventional. This last factual determination does not, as Zak appears to assume, resolve the issue of patent eligibility. But it is nonetheless important because the overall step two determination can proceed to the legal determination of whether the configurable link's claim elements as an ordered combination constitute an inventive concept or instead add nothing to the abstract idea not already present when they are considered separately. *Berkheimer*, 881 F.3d at 1368; *Chamberlain*, 935 F.3d at 1348-49.

It follows that, despite Dr. Weissman's testimony, and despite the Court agreeing with Facebook on procedural aspects of the law on the step two determination, the record simply sets the stage for the Court to make the step two legal determination in much the same way it did before. Put in context of the Court's previous step one determination that the claim is directed to the abstract idea of group collaboration with targeted communication and restricting public access, representative Claim 2 contains "additional elements" that as an "ordered combination"

constitute an "inventive concept" sufficient to "transform" the concept into a patent-eligible "application." *Alice*, 573 U.S. at 217-18 (quotations and citations omitted).

The Supreme Court has instructed courts that patent eligibility is "only a threshold test" that precedes consideration of whether the claimed invention satisfies the Patent Act's novelty, non-obviousness, enablement, and written description requirements. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (citing 35 U.S.C. §§ 101, 102, 103, and 112 (pre-AIA). The Supreme Court has also instructed courts to "tread carefully" lest the judicial exception "swallow all of patent law." *Alice*, 573 U.S. at 217. The Court therefore finds it instructive to start at first principles.

In the context of the '720 Patent, representative Claim 2 does not purport to preempt all use of the abstract idea, but instead, seeks to improve existing web site technology the same way that "[a]t some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* at 216-17 (quotation, alteration, and citation omitted). The Court observes that the specification seems to write against a blank slate where customizable and automated features that would allow non-technical users to control the information technology used to manage web sites simply did not exist. While Dr. Weissman's testimony demonstrates that the patented system may not have been as innovative as the specification contemplates, neither is representative Claim 2 drawn to "wholly generic computer

24

implementation" of any "longstanding" or "fundamental" method of organizing human activity. *Id.* at 220, 224-25. Rather, in its application of the abstract idea, representative Claim 2 requires "doing something *to*" a web site, "not simply doing something *on*" a web site, "a difference that the [Federal Circuit in *DDR Holdings*] regarded as important to the issue of patent eligibility." *See Affinity Labs of Tex., LLC v. DirecTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (summarizing *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257-59 (Fed. Cir. 2014)).

Similarly, the Federal Circuit has held that "[s]oftware can make non-abstract improvements to computer technology just as hardware improvements can." *Enfish, LLC v. Microsoft Corporation*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Although Facebook uses Dr. Weissman's testimony to undermine the innovativeness of the patented system, the complex, technical nature of Dr. Weissman's description of existing web site technology demonstrates that representative Claim 2 is firmly in the realm of non-abstract, technical application of the abstract idea. *See SAP*, 898 F.3d at 1169 ("What is needed is an inventive concept in the non-abstract application realm.").

Turning to the issue of whether representative Claim 2 contains an inventive concept, the Court, like the parties, focuses on the configurable link. At the outset, the Court notes that representative Claim 2 is a "system" claim whose claim language involves generating, but not necessarily using, the configurable link. More specifically, the claim

language at issue appears in a "wherein" clause at the end of the claim. For reference, the asserted "method" claims, whose claim language similarly involves generating the configurable link, include further claim language that involves using the configurable link. For example, according to the claim language of independent Claim 7 and dependent Claim 10, when a user permitted to view the configurable application selects the configurable link, the computer "selectively" displays content of the configurable application, which includes applying the configurable access rule to their user profile to select what content they can view. '720 Patent 23:14-20 (representative Claim 2 "wherein" clause), 23:44-24:19 (independent Claim 7), 24:36-41 (dependent Claim 10), ECF No. 111-2 at PageID.4258.

Zak has maintained throughout this case that as opposed to being generic features of the patented system, the configurable links together with the configurable access rules implement a solution to a problem that arose during the 7Ware development process. *See generally* Pl.'s Opp'n Def.'s Mot. Summ. J. Invalidity Under 35 U.S.C. § 101 ("Zak's Original Opposition"), ECF No. 21. Zak maintains that because non-technical users were allowed to freely manage web site content broadly available to other users, for privacy reasons, it became desirable to enable them to control what content can be viewed by which users. Zak explains that the privacy function was achieved by allowing users to configure the configurable access rules, and by programming the computer to

automatically generate the configurable links based on the configurable access rules. Zak's Original Opp'n Br. 4-5, ECF No. 21 at PageID.397-398. In response to the Court's questioning at oral argument, Zak further explained that by generating the configurable links based on the configurable access rules, the computer "associates" the configurable access rules with the configurable links, thus enabling it to easily retrieve and apply the configurable access rules when the configurable links are selected. Mot. Hr'g Tr. 29:18-32:8, ECF No. 162 at PageID.10211-10214.

In light of this background, the Court once again finds the Federal Circuit's *BASCOM* decision instructive. In *BASCOM*, the Federal Circuit held that an inventive concept exists when claims "recite a specific, discrete implementation of the abstract idea" where the "particular arrangement of elements is a technical improvement over prior art ways" of applying the abstract idea. *BASCOM*, 827 F.3d at 1350. In accordance with these principles, representative Claim 2 does not generically recite any way of using user profiles, configurable access rules, and configurable links in combination to manage user interaction with web site content. Instead, representative Claim 2 contains an inventive concept because as an ordered combination, the configurable link's claim elements recite that the configurable link is generated by the computer in a specific way, namely, based on a user profile and the configurable access rule, and the specific way the configurable link is generated is an

improvement to web site technology that pertains to solving the problem of enabling users to control what content can be viewed by which users.

In an effort to show that representative Claim 2 does not contain an inventive concept, Facebook cites Federal Circuit cases invalidating claims that "recite only functional results without specifying *how* to achieve those results." Facebook's Mot. Br. 10-11, ECF No. 128 at PageID.7384-7385. *See, e.g., Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) (holding at step one that claims are directed to an abstract idea where they have a "purely functional nature" and "do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem"); *id.* at 1271 (holding that an inventive concept does not exist when claims thus "do not go beyond 'stating [the relevant] functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology'") (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016)) (alteration in original); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1341-42 (Fed. Cir. 2017) (holding that an inventive concept does not exist when claims "merely describe the functions of the abstract idea itself, without particularity" in connection with "generic data structures"); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (holding at step one

that claims are directed to an abstract idea where they recite "functional results" but do not "sufficiently describe how to achieve these results in a non-abstract way"); *id.* at 1339 (holding that an inventive concept does not exist when claims thus "merely recit[e] an abstract idea performed on a set of generic computer components").

In reliance on these principles, Facebook argues that representative Claim 2 does not contain an inventive concept because it does not specify how to generate the configurable link. Facebook's Reply Br. 5 (arguing that "Zak never explains how its claims specify *how* to create . . . [configurable] links"), ECF No. 157 at PageID.10041. But according to the claim language, the configurable link is generated by the computer based on a user profile and the configurable access rule.[6] Because the configurable link is generated in a specific way, representative Claim 2 does not recite the type of "pure" functionality or "mere" results as the claims at issue in the cases cited by Facebook. The Federal Circuit has explained that cases invalidating result-oriented claims "hearken back to a foundational patent law principle: that a result,

---

[6] While the Court paraphrases the claim language for brevity, it notes that the actual claim language at issue is: "wherein the at least one configurable link is generated by the computer based at least in part on a profile attributed to at least one user of the system and at least one rule that is configurable by a user acting in the role of an administrator and which applies user profiles to select what content stored on the computer can be viewed by which of the users of the system." '720 Patent 23:14-20, ECF No. 111-2 at PageID.4258.

even an innovative result, is not itself patentable." *Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018). On the other hand, the Federal Circuit has explained that such cases are distinguishable when claims recite "more than a mere result" in the form of "specific steps . . . that accomplish the desired result." *Id.* (holding at step one that the challenged claims were patent eligible). To the extent the result is, as Facebook argues, generating the configurable link, representative Claim 2 recites more than the mere result in the form of the specific way the configurable link is generated.

Facebook also argues that representative Claim 2 does not contain an inventive concept because it does not specify how the configurable link is used in connection with enabling users to control what content can be viewed by which users. Facebook's Reply Br. 5 (arguing that "Zak never explains how its claims specify *how* to . . . use [configurable] links or *how* to achieve their functional results"), ECF No. 157 at PageID.10041. As noted above, representative Claim 2 is a "system" claim whose claim language involves generating, but not necessarily using, the configurable link. Facebook's argument thus refers, not to a functional result recited without specifying how to achieve it, but to a result that representative Claim 2 does not purport to recite at all.

The Federal Circuit has held that when a tool is part of an overall system, "[a] claim that is directed to improving the functionality of [that] tool does not necessarily need to recite how that tool is applied in the

overall system in order to constitute a technological improvement that is patent-eligible." *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1151 (Fed. Cir. 2019) ("*KPN*") (internal parentheticals omitted).[7] In *KPN*, the Federal Circuit addressed claims drawn to an error checking device for generating "check data" used by error detection systems to perform error detection in data transmissions. *Id.* The challenged claims recited a new way of generating check data that enabled error detection systems to detect previously undetectable systematic errors. *Id.* Similar to Facebook's argument here, the accused infringer argued that the challenged claims were "doomed to abstraction" because they did not recite a "last application step" of using check data generated by the error checking device to perform error detection. *Id.* The Federal Circuit rejected this argument because the challenged claims recited a "sufficiently specific implementation" of the error checking device that "improves the functioning of the overall technological process." *Id.* "Importantly," the Federal Circuit explained, as opposed to the "mere desired result" of detecting previously undetectable systematic errors, the challenged claims recited a "specific solution for accomplishing that goal." *Id.*

---

[7] Although the Federal Circuit in *KPN* held at step one that the challenged claims were patent eligible, its holding arose in the same context of distinguishing cases invalidating result-oriented claims. *See id.* at 1150-53.

In accordance with these principles, representative Claim 2 does not generically recite using the configurable link in connection with enabling users to control what content can be viewed by which users. Instead, representative Claim 2 recites an improvement to web site technology that pertains to solving that problem in the form of the specific way the configurable link is generated. More specifically, the configurable link is generated by the computer based on a user profile and the configurable access rule, thus enabling it to easily retrieve and apply the configurable access rule when the configurable link is selected. Accordingly, while representative Claim 2 does not include further claim language that involves using the configurable link, this does not preclude the existence of an inventive concept with respect to the specific way the configurable link is generated.

Facebook also argues that representative Claim 2 does not contain an inventive concept because user profiles, configurable access rules, and configurable links are abstract ideas. On this point, Facebook urged the Court at oral argument to consider, in particular, the Federal Circuit's *PersonalWeb* and *Two-Way Media* decisions. Mot. Hr'g Tr. 22:13-23:2, ECF No. 162 at PageID.10204-10205 (arguing that "they are on all fours with what we have here").

In *PersonalWeb*, the Federal Circuit addressed claims drawn to using a "content-based identifier" to perform the data-management functions of controlling access to data items, retrieving data items, and

marking data items for deletion. *PersonalWeb Techs. LLC v. Google LLC*, 2021 U.S. App. LEXIS 23980, at *3-4 (Fed. Cir. Aug. 12, 2021). The Federal Circuit held at step one that the challenged claims were directed to an abstract idea because they recited a combination of "mental processes" (i.e., using the content-based identifier, comparing the content-based identifier against other values, and performing the data-management functions) that were each an abstract idea and were "clearly focused" on the "combination" of the abstract ideas. *Id.* at *9-14 (quoting *Elec. Power*, 830 F.3d at 1354). "Stringing together the claimed steps by adding one abstract idea to another," the Federal Circuit explained, "amounts merely to the abstract idea of using a content-based identifier to perform an abstract data-management function." *Id.* at *14 (quotation, alteration, and citation omitted). At step two, the Federal Circuit held that an inventive concept did not exist because, to the extent the challenged claims recited "inventive use" of the content-based identifier, they "just restate the abstract ideas." *Id.* at *16-17.

In *Two-Way Media*, the Federal Circuit addressed a claim drawn to routing data over a communications network. *Two-Way Media*, 874 F.3d at 1334-35. The Federal Circuit held at step one that the challenged claim was directed to an abstract idea because it recited a series of "functional results" (i.e., converting, routing, controlling, monitoring, and accumulating records) but did not "sufficiently describe how to achieve these results in a non-abstract way." *Id.* at 1337. At step two, the Federal

Circuit noted that the challenged claim recited data "complying with the specifications of a network communication protocol" and routing data "in response to selection signals received from the users." *Id.* at 1339. But, the Federal Circuit explained, the challenged claim did not specify the "rules forming the communication protocol" or the "parameters for the user signals," thus "precluding their contribution to the inventive concept determination." *Id.*

Having given these cases careful consideration, the Court is not persuaded that representative Claim 2 does not contain an inventive concept. At bottom, what Facebook cannot overcome at step two of the "threshold" patent eligibility test is that representative Claim 2 does not generically recite any way of using user profiles, configurable access rules, and configurable links in combination to manage user interaction with web site content. Instead, representative Claim 2 contains an inventive concept because it recites that the configurable link is generated by the computer in a specific way, and the specific way the configurable link is generated is an improvement to web site technology that pertains to solving the problem of enabling users to control what content can be viewed by which users.

For this reason, the Court finds that the Federal Circuit's *PersonalWeb* and *Two-Way Media* decisions are distinguishable. For instance, with respect to user profiles, configurable access rules, and configurable links, an inventive concept exists irrespective of whether

these items are abstract ideas. More specifically, an inventive concept exists because the specific way that these items are used in "combination" and put to "inventive use" to manage user interaction with web site content goes further than merely amounting to or restating the abstract idea. *Cf. PersonalWeb*, 2021 U.S. App. LEXIS 23980, at *14, *16-17. And, while the Court has emphasized that the configurable link is generated in a specific way, the point is not that a user profile and the configurable access rule are sufficiently specific to independently supply an inventive concept. Rather, the point is that these items are sufficiently specified to "contribut[e] to the inventive concept determination" with respect to the specific way the configurable link is generated. *Cf. Two-Way Media*, 874 F.3d at 1339.

Having considered the written briefs, relevant caselaw, and the evidence of record, the Court must again conclude that representative Claim 2 contains an inventive concept as a matter of law because the configurable link's claim elements as an ordered combination add significantly more to the abstract idea that is not already present when they are considered separately. Accordingly, the Court finds that representative Claim 2 recites patent eligible subject matter, and that Zak is therefore entitled to summary judgment dismissing Facebook's affirmative defense of patent ineligibility.

## VII. CONCLUSION

For the reasons stated in this opinion and order, finding that representative Claim 2 of the '720 Patent recites patent eligible subject matter, the Court will **GRANT** in part Zak's motion for partial summary judgment dismissing Facebook's affirmative defenses as to patent eligibility, and **DENY** Facebook's motion for summary judgment of patent ineligibility.

**SO ORDERED.**

Dated: September 30, 2021

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on September 30, 2021.

s/A. Chubb
Case Manager