UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| **BRUCE ZAK,** an individual, | **4:15-CV-13437-TGB-MJH** |
| Plaintiff, | **OPINION AND ORDER DENYING ZAK'S MOTION FOR RECONSIDERATION (ECF NO. 168)** |
| vs. | |
| **FACEBOOK, INC.,** a Delaware corporation, | |
| Defendant. | |

In this patent infringement case, Plaintiff Bruce Zak ("Zak") alleges that Defendant Facebook, Inc. ("Facebook") infringes a patent on Zak's web site technology, U.S. Patent No. 9,141,720 (the "'720 Patent").

Presently before the Court is Zak's motion for reconsideration concerning the portion of the Court's September 30, 2021 opinion and order granting in part Facebook's motion for partial summary judgment of non-infringement.[1] Pursuant to E.D. Mich. LR 7.1(f)(2), the Court will decide Zak's motion for reconsideration without a hearing. For the

---

[1] Op. & Order Granting In Part & Den. In Part Facebook's Mot. Partial Summ. J. Non-Infringement (ECF Nos. 124, 133, 152) ("Order"), ECF No. 166; Pl.'s Br. Supp. Mot. Reh'g or Recons. Order [ECF No. 166] Granting-In-Part Def.'s Mot. Partial Summ. J. Non-Infringement ("Zak's Motion"), ECF No. 168.

reasons stated in this opinion and order, the Court will **DENY** Zak's motion for reconsideration.

## I. RECONSIDERATION

In addition to the Order, the Court assumes familiarity with the '720 Patent as well as the procedural history and the underlying facts of this patent infringement case.[2]

In the Order, the Court granted in part Facebook's motion for partial summary judgment of non-infringement. Users of Facebook may access Facebook content through a traditional web site or through a native mobile software application (a.k.a. a "native app"). Zak has alleged that both Facebook's web sites and native apps infringe the asserted claims of the '720 Patent. While Facebook did not move for summary judgment as to the accused web sites, it argued that summary judgment was appropriate as to the accused native apps because the allegedly infringing features are not on web sites. For the first time on summary judgment, the parties raised a disputed issue of claim construction concerning the term "web site." The disputed issue of claim construction

---

[2] In this opinion and order, the citations to the record are largely to the exhibits from Facebook's motion for partial summary judgment of non-infringement. *See* Def.'s Mot. Partial Summ. J. Non-Infringement ("Facebook's Motion"), ECF No. 124; Pl.'s Opp'n Def.'s Mot. Partial Summ. J. Non-Infringement ("Zak's Opposition"), ECF No. 133; Def.'s Reply Supp. Mot. Partial Summ. J. Non-Infringement ("Facebook's Reply"), ECF No. 152. *See also* Facebook's Mot. Ex. 1 ("'720 Patent"), ECF No. 124-2.

is whether the term should be given a special definition set forth in the written description section of the '720 Patent or whether the term should be given its ordinary meaning. As stated in the Order:

> . . . To summarize the written briefs, Facebook moves for summary judgment on the assumption that "web site" should be given its ordinary meaning, Zak argues in opposition that the term should be given a special definition from the specification, and Facebook argues in reply that Zak disavowed broad coverage under the special definition of the term during an IPR proceeding. . . .

Order 14, ECF No. 166 at PageID.10401.

The Court accepted Zak's position that the term "web site" has a special definition of "any form of network interface" and Facebook's position that the term has an ordinary meaning involving web pages, web browsers, and Hypertext Markup Language (HTML). The deciding factor in resolving the disputed issue of claim construction was Zak's statements during the IPR proceeding. Finding that the doctrine of prosecution disclaimer applies to Zak's statements, the Court resolved the disputed issue of claim construction in Facebook's favor and found that the term "web site" should be given its ordinary meaning. After considering the evidence of record concerning the differences between native applications and web sites, the Court found that Facebook was

entitled to summary judgment of non-infringement as to the accused native apps.

In the Order, the Court noted that Facebook ideally would have raised Zak's disavowal in its opening brief when moving for summary judgment instead of in its reply brief. In requesting reconsideration, Zak challenges the Court's finding that the doctrine of prosecution disclaimer applies to Zak's statements during the IPR proceeding. But as a more general matter, Zak argues that reconsideration is appropriate to give Zak an opportunity to submit a written brief on the issue.

The Court agrees and will decide Zak's motion for reconsideration in the exercise of its discretion. *See* E.D. Mich. LR 7.1(h)(3) (setting forth grounds for reconsideration "[g]enerally, and without restricting the court's discretion"). In general, after considering Zak's arguments, the Court is not persuaded that the doctrine of prosecution disclaimer does not apply to Zak's statements during the IPR proceeding. However, a decision on Zak's motion for reconsideration is appropriate to give the Court an opportunity to clarify two points concerning its reliance on Zak's statements to resolve the disputed issue of claim construction. First, the Court's underlying finding is that the term "web site" is ambiguous. More specifically, the term is ambiguously susceptible to either its special definition or its ordinary meaning. Second, a finding that the doctrine of prosecution disclaimer applies to Zak's statements is not necessary to support a finding that the term should be given its ordinary meaning.

Not only is the term ambiguously susceptible to either its special definition or its ordinary meaning, but the claim language suggests that it uses the term consistently with its ordinary meaning. Accordingly, even if the doctrine of prosecution disclaimer does not apply to Zak's statements in the IPR proceeding, it does not follow that the term must be given its special definition. Rather, Zak's statements in the IPR proceeding still support a finding that the term should be given its ordinary meaning as a matter of ordinary claim construction. *See Shire Dev., LLC v. Watson Pharms., Inc.*, 787 F.3d 1359, 1366 (Fed. Cir. 2015) ("Although the prosecution history statements do not rise to the level of unmistakable disavowal, they do inform the claim construction.").

## II. CLAIM CONSTRUCTION ANALYSIS

As noted above, the disputed issue of claim construction is whether the term "web site" should be given a special definition from the written description section of the '720 Patent or whether it should be given its ordinary meaning.

For the reasons set forth below, the Court finds that rather than its special definition, "web site" should be given its ordinary meaning.

### A. Claims

The parties have agreed that Claim 2 of the '720 Patent is representative of the asserted claims. Not only the term "web site," but also the related term "web pages," appear together throughout representative Claim 2:

**2**. A system, including a computer and a **web site**, for managing content displayable on the **web site** to multiple users of the system who have profiles stored on the system, comprising:

at least a first configurable application and a second configurable application, wherein each of the first and second configurable applications includes content that is stored on the computer and that is displayable to the users of the **web site**, and wherein one of the applications is a biography application that is managed by the computer and that displays biographical information that is received from and that is about one of the users of the system;

wherein at least one of the configurable applications is generated by the computer at least in part based on inputs received from multiple users of the system, the inputs including at least one of text, graphics, sounds, documents, and multi-media content;

an administrator portal through which users of the system are permitted to act in the role of an administrator of certain **web pages**, wherein a user acting in the role of an administrator may manage business rules that utilize profiles of the users of the system to control interaction of the users with the certain **web pages**, wherein each user of the system is permitted to act in the role of an administrator at least with respect to a subset of **web pages** on the **web site**; and

at least one configurable link on the **web site** that points to at least one of the plurality of configurable applications,

wherein the at least one configurable link is generated by the computer based at least in part on a profile attributed to at least one user of the system and at least one rule that is configurable

6

by a user acting in the role of an administrator and
which applies user profiles to select what content
stored on the computer can be viewed by which of
the users of the system.

'720 Patent 22:52-23:20 (emphasis added), ECF No. 124-2 at
PageID.7029-7030.

### B. Specification

The '720 Patent is entitled "System and Method for Managing
Content on a Network Interface." While using "web" terminology to
associate the system with web sites, the written description section of
the '720 Patent makes it a point to avoid limiting the system to web sites
by establishing more general "network" terminology.

The written description introduces the invention with reference to
a "network interface" and describes the embodiment with reference to a
"network site." *See generally id.* Abstract and 1:1-3:34 (invention), 3:36-
22:21 (embodiment), ECF No. 124-2 at PageID.7005, 7019-7029. In the
context of the invention, the written description contains multiple
listings of network interface examples. In addition to a "web page on the
World Wide Web" or a "web site on the World Wide Web," the network
interface can be an "intranet location" (or "intranet site"), an "extranet
location" (or "extranet site"), or an "Internet location" (or "Internet site").
Similarly, in the context of the embodiment, the written description
contains a listing of network examples associated with the network site.
In addition to the "World Wide Web," the network associated with the

7

network site can be an "intranet," an "extranet," or the "Internet," as well as a "local area network (LAN)" or a "wide area network (WAN)." *Id.* Abstract, 1:17-26, 2:21-24, 3:28-34 (network interface), 6:6-9 (network), ECF No. 124-2 at PageID.7005, 7019-7021.

As to the special definition of the term "web site," the written description defines "web site" in connection with each of the listings. After introducing the network interface or the network, listing "web" terminology among the examples, and adding any "other form" of network interface or network, the written description parenthetically refers to everything "collectively" as a "web site." While the written description contains five such "web site" definitions, the one cited by Zak is representative:

> The invention is a system and method (collectively the "system") for automatically creating, updating, scheduling, removing, and otherwise managing content accessible from a network interface, such as an Internet location ("Internet site"), an intranet location ("intranet site"), an extranet location ("extranet site"), a web page on the World Wide Web, or any other form of network interface (collectively "web site").

*Id.* 3:28-34, ECF No. 124-2 at PageID.7020.

The Federal Circuit has held that when the specification reveals a special definition for a term different from its ordinary meaning, the patentee's lexicography governs. *Phillips v. AWH Corp.*, 415 F.3d 1303,

1316 (Fed. Cir. 2005) (*en banc*). The Federal Circuit has "repeatedly encouraged claim drafters who choose to act as their own lexicographers to clearly define terms used in the claims in the specification." *Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1136 (Fed. Cir. 2007) (citing, *e.g.*, *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("[A] claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in . . . the specification . . . ."); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.")). "When the specification explains and defines a term used in the claims, without ambiguity or incompleteness, there is no need to search further for the meaning of the term." *Id.* at 1138 (quoting *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998)).

In accordance with these principles, the Court has accepted that in the context of the '720 Patent, "web site" has a special definition of "any form of network interface." However, the Court has noted that this written description *circularly* defines the term to include both true web sites (i.e., a "web page on the World Wide Web" or a "web site on the World Wide Web") and "any other form of network interface" or "any

other form of network." Order 18-19, ECF No. 166 at PageID.10405-10406.

In connection with more general "network" terminology, the written description does not always use "web" terminology consistently with the special definition of the term. In the listings of example network interfaces and example networks underlying the "web site" definitions, the written description recognizes that not all network interfaces, network sites, and networks are true web sites. Rather, like the other examples, true web sites are just one "form" of network interface or network. Correspondingly, the written description elsewhere distinguishes between network sites and networks in general and ordinary web sites and web pages in particular. Consistent with the ordinary meaning of the term, the written description states that the network site and its locations are merely analogous to a web site and its web pages. "Just as a web site can include a wide variety of different web pages and areas on those pages," the written description explains, "there can be a wide variety of different types of locations on a single network site." Similarly, "[i]n a preferred embodiment, the network is a web site or some form of web page." '720 Patent 6:12-15 (network site) (numbering omitted), 7:4-5 (network) (numbering omitted), ECF No. 124-2 at PageID.7021-7022.

Accordingly, the written description reveals that, as it appears in representative Claim 2, the term "web site" is ambiguous. Even giving

due regard to its special definition, the term is nonetheless susceptible to either its special definition or its ordinary meaning. On the one hand, the claim language could be relying on the special definition of the term for broad coverage of network interfaces, network sites, and networks. On the other hand, consistent with the ordinary meaning of the term, the claim language could be expressing the intention for narrow coverage of web sites.

As well, the patent family as a whole is instructive on the application of the special definition of "web site" to the claim language. Compared to using "web" terminology and relying on the special definition of the term, the written description contemplates avoiding narrow coverage of web sites by using more general "network" terminology. The claim language of the '720 Patent thus stands in contrast to the claim language of an earlier member of the patent family, U.S. Patent No. 8,713,134 (the "'134 Patent").[3] Pl.'s Compl. Ex. A ("134 Patent"), ECF No. 1-2. More specifically, independent Claim 1 of the '134 Patent claims the system with reference to a "network interface." Dependent Claim 7 then specifies that in addition to examples of a "Web site," the network interface can include "another form of network

---

[3] Zak originally alleged that Facebook infringes both the '134 Patent and the '720 Patent. Pl.'s Compl., ECF No. 1. By stipulation of the parties, Zak's infringement claims as to the '134 Patent were dismissed with prejudice. Stipulation, ECF No. 31; Order Granting Stipulation, ECF No. 32.

interface other than a Web site." '134 Patent 21:57-22:13 (independent
Claim 1), 22:27-30 (dependent Claim 7), ECF No. 1-2 at PageID.42. In
contrast, and therefore seemingly expressing the intention for narrow
coverage of web sites, representative Claim 2 of the '720 Patent claims
the system with reference to not only a "web site," but also "web
pages." '720 Patent 22:52-23:20, ECF No. 124-2 at PageID.7029-7030.

### C. IPR Proceeding

In summary, the intrinsic evidence raises the question of whether
the term "web site" should be given its special definition or its ordinary
meaning. The question is whether, as opposed to relying on the special
definition of the term for broad coverage of network interfaces, network
sites, and networks, the claim language expresses the intention for
narrow coverage of web sites.

Zak clearly and unmistakably answered this question during the
IPR proceeding. As stated in the Order:

> Turning to the IPR proceeding, Facebook
> submits Zak's preliminary response to one of
> Facebook's IPR petitions and the PTAB's
> corresponding institution decision. Facebook's
> Reply Ex. 7 ("Preliminary Response"), ECF No.
> 152-2; Ex. 8 ("Institution Decision"), ECF No. 152-
> 3. During the IPR proceeding, Facebook argued
> that "application" should be construed to mean a
> "unit of content on a network site" and that "link"
> should be construed to mean a "mechanism to
> activate an application on a network site." Zak
> acknowledged       that    Facebook's     proposed

constructions adopted "application" and "link" definitions from the specification. However, compared to Facebook's proposed constructions, Zak's proposed constructions substituted "network site" with "web site."

Citing the preamble of representative Claim 2, Zak argued that Facebook's proposed constructions were "unreasonably broad" because the challenged claims "are all directed to managing content on a web site." A "web site," Zak maintained, is "a particular type of network site" and is "narrower than a network site." Preliminary Response 6-8 (emphasis omitted), ECF No. 152-2 at PageID.9579-9581. While finding "no reason to limit the scope of [each term] itself," the PTAB, citing the preambles of the challenged claims, accepted that "additional limitations narrow the scope of the claims to a 'web site.'" Institution Decision 6-7 (construing "application"), 9-11 (construing "link"), ECF No. 152-3 at PageID.9612-9613, 9615-9617.

The Court finds that the doctrine of prosecution disclaimer applies to Zak's statements during the IPR proceeding. In urging the PTAB not to institute an IPR, Zak unequivocally disavowed "unreasonably broad" coverage of network sites in favor of "particular" and "narrower" coverage of web sites. Notably, Zak's distinction between network sites and web sites is irreconcilable with the special definition of the term, including the underlying circular "web site" definition in the specification. At first glance, the irreconcilability could be read as making Zak's statements too vague or ambiguous to qualify as disavowing. But because the intention to disavow broad coverage of network sites is clear and

13

> unmistakable, any vagueness or ambiguity merely goes to the underlying motivation. The irreconcilability, instead, makes it clear that Zak had abandoned the special definition of the term. And because not only the term "web site," but also the related term "web pages," appear together throughout the challenged claims, Zak's abandonment of "any form of network interface" can only be read to have been in favor of true web sites. Accordingly, given Zak's statements during the IPR proceeding, the Court finds that rather than its special definition, "web site" should be given its ordinary meaning.

Order 20-22, ECF No. 166 at PageID.10407-10409. *See also id.* 19-20 (summarizing doctrine of prosecution disclaimer), ECF No. 166 at PageID.10406-10407.

The Federal Circuit has held that "statements made by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer." *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017).

In requesting reconsideration, Zak, challenging the Court's finding that the doctrine of prosecution disclaimer applies to Zak's statements, argues that the special definition of the term should govern. As noted in the Order, normally, that is true. Order 19, ECF No. 166 at PageID.10406. Here, however, the term is ambiguously susceptible to either its special definition or its ordinary meaning. The question raised by the intrinsic

evidence is whether the term *should* be given its special definition. The Court emphasizes that the written description and the claim language raise this question independently of the record in the IPR proceeding. Moreover, in the context of the patent family as a whole, the drafter's use of the term "web site" in the '720 Patent as opposed to the broad "network interface" term used in the earlier '134 Patent in the same patent family seemingly expresses the intention for narrow coverage of web sites consistent with its ordinary meaning.

Accordingly, this is not a case where despite its special definition, the Court is relying on prosecution statements to narrow the scope of an unambiguous term. Rather, this is a case where with due regard to its special definition, the Court is relying on prosecution statements to inform the proper construction of an ambiguous term, which remove all doubt by disavowing the alternative construction. Whether under the doctrine of prosecution disclaimer or as a matter of ordinary claim construction, Zak's statements in the IPR proceeding confirm that "web site" should be given its ordinary meaning rather than the special definition.

### D. Zak's Reconsideration Arguments

In requesting reconsideration, Zak challenges the Court's finding that the doctrine of prosecution disclaimer applies to Zak's statements during the IPR proceeding. Zak requests reconsideration on two grounds. First, Zak argues that the doctrine of prosecution disclaimer cannot apply

because Zak's statements arose in the context of claim construction and the PTAB rejected Zak's proposed constructions. Second, Zak argues that Zak's statements in the IPR are too vague or ambiguous to qualify as disavowing because Zak's IPR statements concerning "web sites" were made in the context of "network sites," not "network interfaces." Zak does not explain how any difference in "network interface" and "network site" would affect the meaning of "web site."

In general, the Court is not persuaded that the doctrine of prosecution disclaimer does not apply to Zak's statements during the IPR proceeding. However, both of Zak's grounds for reconsideration generally concern whether it is proper to rely on Zak's statements to resolve the disputed issue of claim construction. For the reasons set forth below, the Court finds that, whether under the doctrine of prosecution disclaimer or as a matter of ordinary claim construction, it is proper to rely on Zak's statements in the IPR proceeding.

As to Zak's first ground for reconsideration, Zak cites the Federal Circuit's *Galderma* decision for the "rule" that "the doctrine of prosecution disclaimer does not apply to unsuccessful claim construction positions taken by a patent owner during an IPR proceeding." Zak's Mot. Br. 1 (emphasis omitted), ECF No. 168 at PageID.10466.

In *Galderma*, the Federal Circuit addressed a term whose proper construction was undisputed but for the patent owner's statements during an IPR proceeding. *Galderma Labs., L.P. v. Amneal Pharm., LLC,*

806 Fed. Appx. 1007 (Fed. Cir. 2020). During the IPR proceeding, the patent owner relied on a narrow construction to distinguish the prior art. *Id.* at 1009. However, the PTAB rejected the patent owner's attempt to narrow the meaning of the term as plainly inconsistent with its broader usage in the written description section of the patent. *Id.* The Federal Circuit held that the doctrine of prosecution disclaimer did not apply to the patent owner's statements. *Id.* at 1011. "While clear and limiting statements made by the patent owner can give rise to disclaimer," the Federal Circuit explained, "they do not in this case where those statements were clearly and expressly rejected by the Patent Office." *Id.* at 1010-11. "Because the record makes clear to a skilled artisan that Patent Owner's arguments were rejected, those arguments do not impact claim scope." *Id.* at 1011.

The Court finds that the Federal Circuit's *Galderma* decision is distinguishable for three reasons.

First, *Galderma* is a case about a claim term whose construction was undisputed, while in this case the parties disagree as to the construction of the disputed claim term "web site." In *Galderma*, the proper construction of the term was undisputed but the question was whether statements in an IPR rose to the level to limit the doctrine of equivalents. *Id.* ("Here, in contrast, the claim construction is undisputed and the only question is whether a clear and unmistakable disclaimer bars a finding of infringement under the doctrine of equivalents."). The

Federal Circuit found that the statements made by the patent owner in the IPR that were clearly rejected by the PTAB did not rise to a level of a disclaimer barring a finding of infringement under the doctrine of equivalents. Here, in contrast, the parties have raised a disputed issue of claim construction concerning the ambiguous term "web site."

Second, the Federal Circuit in *Galderma* did not, as Zak suggests, establish a rule precluding reliance on every IPR statement associated with a rejected proposed construction. *See* Zak's Mot. Br. 8 (arguing that "the proposed claim constructions *and associated arguments* that Zak advanced in the IPRs do not operate to narrow the scope of the asserted claims") (emphasis added), ECF No. 168 at PageID.10473. Rather, the Federal Circuit applied the principle that prosecution statements "are not considered in a vacuum" because "the skilled artisan would look at the record as a whole in assessing claim scope." *Galderma*, 806 Fed. Appx. at 1010 (citing *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 867 (Fed. Cir. 1993) ("The prosecution history must be examined as a whole in determining whether estoppel applies.")). *See also Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1336 (Fed. Cir. 2011) (explaining that "regardless of whether the examiner agreed with [the patentee's] arguments concerning [the term], its statements still inform the proper construction of the term.").

Third, in contrast to *Galderma* where the PTAB rejected the patent owner's attempt to narrow the meaning of the claim term as plainly

18

inconsistent with its broader usage in the written description section of the patent, in this case, the PTAB actually agreed with Zak's statements that the claims are not directed broadly to "network sites" but more narrowly to "web sites." To be more specific, in this case, Zak put forth constructions for the terms "application" and "link" in the IPR. Zak proposed constructions consistent with language from the written description section of the '720 Patent, but replaced the word "network site" with "web site." The PTAB disagreed with substituting the word "web site" for "network site" in the constructions for "application" and "link," but agreed that the claims were limited to web sites because the challenged claims expressly used the term "web site." More specifically, referring to Zak's distinction between network sites and web sites, the PTAB stated that the challenged claims contain "additional *limitations* that "*narrow the scope* of the claims to a 'web site.'" The PTAB found "no reason to limit the scope of [each term] *itself*." In the PTAB's words, "we agree with Patent Owner that the challenged claims are directed towards the management of a 'web site.'" Institution Decision 6-7 (construing "application") (emphasis added), 9-11 (construing "link") (emphasis added), ECF No. 152-3 at PageID.9612-9613, 9615-9617.

In summary, the Court disagrees with Zak's arguments in reliance on *Galderma*. Considered as a whole, the record in the IPR proceeding makes it clear that the PTAB agreed with Zak's statements concerning

the term "web site." Accordingly, the Court finds that it is proper to rely on Zak's statements to resolve the disputed issue of claim construction.

As to Zak's second ground for reconsideration, Zak acknowledges his statements in the IPR that a "web site" is "a particular type of network site" and is "narrower than a network site." However, Zak points out that the special definition of the term "web site" refers to a "network *interface*," while Zak's statements refer to a "network *site*." In reliance on a purported, but unexplained, difference between network interfaces and network sites, Zak argues that his statements are too vague or ambiguous to qualify as disavowing with respect to coverage of "any form of network interface." According to Zak, "network interface" and "network site" are "separate and distinct" and the '720 Patent "uses [them] differently in the specification." Zak's Mot. Br. 2, 11, ECF No. 168 at PageID.10467, 10476. "In other words," Zak argues, "nothing in Zak's IPR statements . . . precludes reading the term 'web site' as including a 'network interface.'" *Id.* 11 (emphasis omitted), ECF No. 168 at PageID.10476.

The Court disagrees with Zak's second ground for reconsideration for three reasons.

First, although Zak argues that the network interface and network site are separate and distinct concepts, Zak does not explain what the difference is between a network interface and a network site. Zak does

20

not identify any support in the written description for the purported, but unexplained, difference between network interfaces and network sites.

Second, the Court finds that the "network interface" and "network site" are used interchangeably in the written description section of the '720 Patent. As noted above, the written description introduces the invention with reference to a "network interface" and describes the embodiment with reference to a "network site." More specifically, in the abstract, background, summary, and first paragraph of the detailed description, the written description states that the "invention" is a system for "automated management of content on a network interface" or "automatically . . . managing content accessible from a network interface." But starting with the second paragraph of the detailed description, the written description describes that in addition to a computer, the system and its "embodiment(s)" are based on the "network site" shown in Figure 1 and the associated "network" shown in Figure 2. *See generally* '720 Patent Abstract and 1:1-3:34 (invention), 3:36-22:21 (embodiment), ECF No. 124-2 at PageID.7005, 7019-7029.

While the written description uses *both* terms, the written description does not reveal that it uses "network interface" and "network site" *differently*. Rather, its use of parallel phrasing across the contexts of the invention and the embodiment reveals that the written description uses "network interface" and "network site" interchangeably. For example, the invention involves "content on a network interface" and the

embodiment involves "content on the network site" in the form of an "application on the network site" and "links on the network site." *Id.* 2:19-21 (invention), 4:50-54, 5:8-10, 5:16-18 (embodiment) (numbering omitted), ECF No. 124-2 at PageID.7019-7021. Similarly, among other examples, the network interface can be a "web site on the World Wide Web," an "intranet site," an "extranet site," or an "Internet site," and the network associated with the network site can be the "World Wide Web," an "intranet," an "extranet," or the "Internet." *Id.* Abstract, 1:17-26, 2:21-24, 3:28-34 (network interface), 6:6-9 (network), ECF No. 124-2 at PageID.7005, 7019-7021.

The written description also reveals why the special definition of the term refers to a "network interface" and Zak's statements refer to a "network site." On the one hand, the special definition of the term arises from Zak's cited "web site" definition. The special definition of the term, in turn, refers to a "network interface" because Zak's cited "web site" definition appears in the section of the written description discussing the invention, where the written description defines the term in connection with the network interface. On the other hand, Zak's statements were directed to the "application" and "link" definitions. Zak's statements, in turn, refer to a "network site" because the "application" and "link" definitions appear in the section of the written description discussing the embodiment, where the written description defines the terms in connection with the network site. *Id.* 3:28-34 (Zak's cited "web site"

22

definition), 5:20-21 (defining "application"), 5:53-54 (defining "link"), ECF No. 124-2 at PageID.7020-7021.

Third, even if there is a difference in meaning or scope between "network interface" and "network site," the Courts finds that Zak's statements in the IPR support the conclusion that he abandoned the special definition of "web site." The Court has explained that Zak's distinction between network sites and web sites is irreconcilable with the special definition of the term, that the irreconcilability makes it clear that Zak had abandoned the special definition of the term, and that Zak's abandonment can only be read to have been in favor of true web sites. Order 21-22, ECF No. 166 at PageID.10408-10409.[4] However, Zak does not counter these points by offering a reasonable alternative reading of Zak's statements. Most notably, Zak does not attempt to reconcile Zak's distinction between network sites and web sites with the special definition of the term. For example, with respect to the listings of

---

[4] Zak emphasizes the lack of statements that "the special definition for 'web site' . . . should not apply" or that "the term 'web site' does not cover 'a network interface.'" Zak's Mot. Br. 10, ECF No. 168 at PageID.10475. However, it is only natural that Zak did not disclaim "the special definition of the term" or "any form of network interface" in so many words. Despite the specification containing five "web site" definitions, Zak did not cite any of them to the PTAB. *See generally* Preliminary Response, ECF No. 152-2. Just as Zak's distinction between network sites and web sites speaks directly to an understanding that the claim language uses the term "web site" consistently with its ordinary meaning, Zak's silence on the "web site" definitions speaks directly to an abandonment of the special definition of the term.

example network interfaces underlying the "web site" definitions, Zak does not explain how any of the examples besides true web sites could be the "particular type of network site" to which Zak was referring.

The Court also notes that Zak took a different position at oral argument. While seeking to limit Zak's disavowal to coverage of expressly distinguished prior art network interfaces, Zak's counsel conceded that "any form of network interface" did not survive Zak's statements:

> THE COURT: Didn't you though say that you were not attempting to use the broader definition that one has in your patent that refers to any network interface? I thought that you did narrow that down.
>
> [ZAK'S COUNSEL]: That's correct, Your Honor. But what we're—what we're arguing now is not that website means network interface, any network interface. What we're arguing is that the term "website" covers a mobile application that displays web content, which was not expressly disclaimed during the IPRs. . . .

Mot. Hr'g Tr. 76:10-19, ECF No. 162 at PageID.10258.

In summary, Zak does not meaningfully demonstrate any vagueness or ambiguity between the special definition of the term and Zak's statements. Because the written description uses "network interface" and "network site" interchangeably, Zak's distinction between network sites and web sites applies equally to network interfaces and web sites. In any event, any perceived vagueness or ambiguity is a result

of the drafting of the written description and its seemingly arbitrary use of "network interface" and "network site" in different sections. Accordingly, the Court finds that it is proper to rely on Zak's statements to resolve the disputed issue of claim construction.

### III. CONCLUSION

For the reasons stated in this opinion and order, the Court will **DENY** Zak's motion for reconsideration.

**SO ORDERED.**

Dated: August 16, 2022       s/Terrence G. Berg
                             TERRENCE G. BERG
                             UNITED STATES DISTRICT JUDGE